UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
        v.                        )          Cr. No. 01-10384-MLW
                                  )
GARY LEE SAMPSON                  )


MEMORANDUM AND ORDER


WOLF, D.J.                                            May 10, 2012

I.  SUMMARY

        In December, 2003, a jury unanimously found that defendant
Gary Sampson should be sentenced to death for the two carjackings
resulting in death to which he had pled guilty.  Under the Federal
Death Penalty Act, if even one juror had found that the death
penalty was not justified, Sampson could not be executed.  After
denying Sampson's motion for a new sentencing hearing, in January,
2004, the court sentenced Sampson to be executed.  The First
Circuit denied Sampson's appeal and the Supreme Court declined to
review his case.

        Sampson subsequently timely exercised his right to seek a new
sentencing hearing in this 28 U.S.C. §2255 proceeding.  He alleged,
among other things, that his constitutional right to an impartial
jury had been violated.  After substantial briefing and three
evidentiary hearings, this court found that Sampson's contention
was correct.  See United States v. Sampson, 820 F. Supp. 2d 151 (D.
Mass. 2011) (Memorandum and Order on Jury Claim).  In essence, the
court concluded that during the jury selection process a juror had

persistently committed perjury concerning important questions relating to her ability to be impartial in deciding whether Sampson should be executed, and if she had answered those questions honestly and accurately, she would have been excused for cause. Therefore, the court found that pursuant to the Supreme Court's decision in <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 554 (1984), Sampson's death sentence must be vacated and a second hearing to determine his sentence must be conducted.

Sampson asserts that, as the Third and Fourth Circuits have found, an order in a §2255 proceeding requiring a new hearing to determine whether the death penalty is justified is not a final order and, therefore, is not appealable until after that hearing is concluded. <u>See</u> <u>United States v. Hammer</u>, 564 F.3d 628, 632-36 (3rd Cir. 2006); <u>United States v. Stitt</u>, 459 F.3d 483, 484-86 (4th Cir. 2006). The government disagrees and intends to seek immediate review by the First Circuit of the jury claim decision as a final order pursuant to 28 U.S.C. §1291.

The government also asks that this court certify questions concerning its decision for possible immediate review under 28 U.S.C. §1292(b), which authorizes interlocutory appeals of orders in civil cases in limited circumstances. Sampson contends that the instant §2255 proceeding is not a civil case eligible for interlocutory appeal under §1292(b) and, in any event, that the standards for certification under §1292(b) have not been met.

As explained in this Memorandum, this court is not required to decide whether this §2255 proceeding is a civil case within the meaning of §1292(b) and has not done so. However, in the unique circumstances of this case, the court finds that if §1292(b) applies, its requirements are satisfied and that the court should exercise its discretion to allow the First Circuit to consider the full range of issues that the government wishes to present.

Among other things, a second hearing to determine whether Sampson should live or die will be lengthy, expensive, and anguishing for the families of Sampson's victims. It is, therefore, appropriate to give the First Circuit the opportunity to decide whether the decision that a second sentencing hearing is legally required is now appealable; if it is, whether the First Circuit wishes to exercise its discretion to decide the merits of the government's claims now; and, if it does, whether this court correctly stated the McDonough test in finding that Sampson's death sentence must be vacated and a second sentencing hearing must be conducted.

Accordingly, the two questions defined in §IV of this Memorandum and Order are being certified for possible interlocutory appeal pursuant to 28 U.S.C. §1292(b) and proceedings before this court are being stayed until the First Circuit resolves the government's appeal.

II.  HISTORY OF THE CASE

In October, 2001, Sampson was charged with two counts of carjacking resulting in the deaths of Philip McCloskey and Jonathan Rizzo.  The government exercised its discretion to seek the death penalty.  Sampson pled guilty to the charges against him.  Nevertheless, he was entitled to have a jury decide whether he should be sentenced to death.

In 2003, hundreds of potential jurors answered, in writing and under oath, seventy-seven questions designed to elicit information about whether they could be impartial and decide whether Sampson should be executed based solely on the evidence presented in court.  About 140 potential jurors not disqualified based on their written responses were individually questioned over fifteen days by the court and the parties for this purpose.  Twelve jurors, including one who has been publicly identified as "C," were empaneled, with six alternates.  Two of the original jurors were excused during trial when it was discovered that they had not answered voir dire questions truthfully.

The jury heard evidence for about six weeks.  It then unanimously found that the death penalty was justified.  Accordingly, in January, 2004, the court sentenced Sampson to be executed.  <u>See</u> <u>United States v. Sampson</u>, 300 F. Supp. 2d 278, 284 (D. Mass. 2004); <u>United States v. Sampson</u>, 300 F. Supp. 2d 275 (D. Mass. 2004).

The First Circuit affirmed the death sentence on May 7, 2007. See United States v. Sampson, 486 F.3d 13, 52 (1st Cir.), reh'g and reh'g on banc denied, 497 F.3d 55 (1st Cir. 2007). On May 12, 2008, the Supreme Court denied Sampson's petition for a writ of certiorari. See Sampson v. United States, 553 U.S. 1035 (2008).

On May 11, 2009, Sampson filed a Motion for a New Trial and to Vacate, Set Aside, and Correct Conviction and Death Sentence Made Pursuant to 28 U.S.C. §2255 and/or Rule 33 of the Federal Rules of Criminal Procedure, seeking relief from his conviction and sentence. A First Amended Motion under §2255 and Rule 33 was filed on March 29, 2010 (the "Motion"). The 250-page Motion raised eight distinct claims for relief (referred to here and in the October 20, 2011 Memorandum and Order on Summary Dismissal as Claims III-X), several of which had multiple subclaims. The Motion included claims that Sampson's counsel had been ineffective in their advice to Sampson about his guilty plea, in their investigation of mitigating evidence, and during the sentencing hearing; a claim that the inaccurate answers of three jurors during voir dire deprived Sampson of his constitutional right to an impartial jury; and a claim that Sampson cannot constitutionally be executed because he is severely mentally impaired, as well as several other claims. The government requested summary dismissal of all of Sampson's claims.

The court received hundreds of pages of briefing and held

three days of hearings on the request for summary dismissal in
August and September, 2010.  In addition, after concluding that
Sampson's claim that he was deprived of his right to an impartial
jury (Claim IV) could not be summarily dismissed, the court held an
evidentiary hearing on November 18, 2010, at which three jurors
implicated in Sampson's claim testified about their answers during
the jury selection process.  One of these jurors, C, testified
further at evidentiary hearings held on March 18, 2011, and August
8, 2011.

On October 20, 2011, the court issued the Memorandum and Order
on Jury Claim.  See Sampson, 820 F. Supp. 2d 151.  The court held
that Sampson was entitled to a new hearing to determine whether he
should be sentenced to death because repeated perjury by C during
jury selection deprived the court of important information that
would have prompted it to excuse her for cause and, therefore,
Sampson had been deprived of his Sixth Amendment right to have the
question of whether he would live or die decided by twelve
impartial jurors – jurors "'capable and willing to decide the case
solely on the evidence before [them].'"  Id. at 159, 188 (quoting
McDonough, 464 U.S. at 554).

In summarizing some of its extensive factual findings, the
court wrote that:

> [A]s explained in detail in this Memorandum, the court
> . . . finds that C intentionally and repeatedly answered
> a series of questions dishonestly in an effort to avoid
> disclosing or discussing painful experiences she had

endured concerning her daughter J and her former husband
P. Her dishonesty began when she filled out her
questionnaire in September, 2003, continued when she
returned for individual voir dire in October, 2003, and
was repeated when she was required to testify in these
§2255 proceedings.

More specifically, C intentionally lied during the jury
selection process in response to questions that should
have elicited the facts that: in 2000 her husband P had
a rifle or shotgun and threatened to shoot her; C had
feared that P would kill her; as a result, C obtained an
Abuse Prevention Order against P; P was later arrested in
her presence and prosecuted for violating that Order; C's
marriage to P ended because of his substance abuse; J
also had a drug problem; and J's drug abuse resulted in
her serving time in prison, where C visited her. As
information concerning these experiences involving J and
P emerged slowly in the course of three hearings in these
§2255 proceedings, C repeatedly characterized each of
those experiences as "horrible" and a "nightmare." She
often cried when required to think about these matters.
She was frequently unable to discuss them candidly or
coherently.

Sampson, 820 F. Supp. 2d at 158.

The court also analyzed the Supreme Court's decision in

McDonough and subsequent cases applying that decision. See id. at

170-181. It summarized as follows the holding of McDonough and its

understanding of what Sampson had to prove in order to show that

C's perjury entitled him to a new trial pursuant to McDonough:

In McDonough, the Supreme Court described the
circumstances in which inaccurate responses to voir dire
questions would deny a party his right to an impartial
jury and, therefore, require a new trial. See 464 U.S. at
556. It stated:

We hold that to obtain a new trial in such a
situation, a party must first demonstrate that
a juror failed to answer honestly a material
question on voir dire, and then further show
that a correct response would have provided a

7

valid basis for a challenge for cause. The
motives for concealing information may vary,
but only those reasons that affect a juror's
impartiality can truly be said to affect the
fairness of a trial.

Id.

Accordingly . . . to obtain relief under McDonough,
Sampson was required to prove by a preponderance of the
evidence that: (1) C was asked a question during voir
dire that should have elicited particular information;
(2) the question was material; (3) C's response was
dishonest, meaning deliberately false, rather than the
result of a good faith misunderstanding or mistake; (4)
her motive for answering dishonestly relates to her
ability to decide the case solely on the evidence and,
therefore, calls her impartiality into question; and (5)
the concealed information, when considered along with the
motive for concealment, the manner of its discovery, and
C's demeanor when required to discuss J and P, would have
required or resulted in her excusal for cause for either
actual bias, implied bias, or what the Second Circuit
characterizes as "inferable bias."

Sampson, 820 F. Supp. 2d at 158-59.

This formulation of the McDonough test does not require proof
of either of the two types of bias that were recognized before
McDonough – "actual bias," meaning bias in fact, or "implied bias,"
meaning bias which is presumed as a matter of law. See id. at 162-
64, 169-70, 174-75. Instead, the court concluded that it is
sufficient to obtain relief under McDonough to prove that a juror
intentionally provided a false answer to a material question, the
motive for the juror's dishonesty related to the juror's ability to
be impartial, and discovery of the deliberately concealed
information before trial would have actually resulted in the
juror's excusal for cause based on a third type of bias that the

8

Second Circuit has characterized as "inferable" or "inferred" bias.
See id. at 165-66, 180-81 (quoting <u>United States v. Torres</u>, 128
F.3d 38, 46-47 (2d Cir. 1997) and <u>United States v. Greer</u>, 285 F.3d
158, 171 (2d Cir. 2000)). "'Inferable' or 'inferred' bias exists
'when a juror discloses a fact that bespeaks a risk of partiality
sufficiently significant to warrant granting the trial judge
discretion to excuse the juror for cause, but not so great as to
make mandatory a presumption of bias.'" <u>Sampson</u>, 820 F. Supp. 2d
at 165 (quoting <u>Greer</u>, 285 F.3d at 171 (quoting <u>Torres</u>, 128 F.3d at
47)). This court found that the <u>McDonough</u> test would be met if
Sampson proved inferable bias that would have provided the court
the discretion to excuse C for cause prior to trial, and that the
court would in fact have done so. <u>See</u> <u>Sampson</u>, 820 F. Supp. 2d at
159, 175 (citing <u>Dall v. Coffin</u>, 970 F.2d 964, 970 (1st Cir.
1992)).

As fully explained in the Memorandum and Order on Jury Claim,
the <u>McDonough</u> test recognizes the unique connection between
deliberately dishonest answers and the likely partiality of a
potential juror. <u>Sampson</u>, 820 F. Supp. 2d at 171. <u>McDonough</u>
creates a special test that applies when it is proven that a
potential juror has deliberately answered a material question
falsely. "If the <u>McDonough</u> test required a showing of actual or
implied bias in addition to a showing of dishonesty, the test
Justice Rehnquist stated for the majority would be superfluous."

Sampson, 820 F. Supp. 2d at 176.  The court noted that in Amirault
v. Fair, 968 F.3d 1404, 1405-06 & n.2 (1st Cir. 1992), the First
Circuit held that if relief under McDonough is unavailable, a court
must still consider whether a juror has been shown to be actually
or impliedly biased.  Sampson, 820 F. Supp. 2d at 176.  In doing
so, the First Circuit implicitly recognized that there are three
distinct tests for determining whether a party is entitled to a new
trial because of juror bias  – actual bias, implied bias, and the
McDonough test.  See id.  As the court also explained, its
conclusion that actual and implied bias are not required is
supported by Dall, 970 F.2d at 970, in which the First Circuit
stated that relief under McDonough would be available where correct
responses to the voir dire questions would have "required or
resulted in" the juror's disqualification for cause.  Id.  This
language is significant because while actual and implied bias
require a juror's disqualification, inferable bias does not require
disqualification, but provides the judge the discretion to excuse
a juror for cause.  See id. at 176-77.

The court applied the facts it had found to this understanding
of McDonough and summarized its analysis as follows:

> The court finds that Sampson has satisfied his burden of
> proving every element of the McDonough test. C did not
> falsely answer any question as part of a conscious effort
> to become a juror and punish Sampson for the abuse
> inflicted on her by P. However, it has been proven that
> during the jury selection process C dishonestly answered
> all material questions that should have revealed
> important events concerning J and P because C was deeply

10

ashamed, and became distraught when required to think
about them. She repeatedly lied because the events
concerning J and P were too painful for her to disclose
or discuss. C's decision to lie rather than reveal these
events demonstrates the tremendous emotional impact that
they had on C at the time of the voir dire and calls her
impartiality into question.

The matters about which C repeatedly lied under oath were
comparable to matters presented by the evidence in
Sampson's case. C dishonestly did not disclose prior to
the empanelment that, among other things, she had been
threatened with being shot and killed, had ended a
marriage due to her husband's substance abuse, and felt
deeply ashamed of her daughter's criminal activity, drug
abuse, and incarceration. If these matters had been
revealed, the court would have found that there was a
high risk that after being exposed to the evidence at
trial C's decision on whether Sampson should be executed
would be influenced by her own life experiences and,
therefore, a high risk that she would be substantially
impaired in her ability to decide whether Sampson should
be executed based solely on the evidence. Like other
potential jurors, C would have been excused for cause
solely for that reason. The decision to excuse her for
cause would have been reinforced by her demonstrated
dishonesty, which was alone a reason that other potential
jurors were excused for cause.

As the requirements of <u>McDonough</u> have been satisfied, the
court is compelled to vacate Sampson's death sentence and
grant him a new trial to determine his sentence. In
essence, despite dedicated efforts by the parties and the
court to assure that the trial would be fair and the
verdict final, it has now been proven that perjury by a
juror resulted in a violation of Sampson's constitutional
right to have the issue of whether he should live or die
decided by twelve women and men who were each capable of
deciding that most consequential question impartially.

<u>Id.</u> at 159.[1]

_____

[1] The court also found that Sampson was not entitled to a
new sentencing hearing because two other jurors inadvertently
provided inaccurate answers during the voir dire process. <u>Id.</u> at
198-99, 201. In addition, the court concluded that Sampson was
not entitled to a new sentencing proceeding because the

In his submissions relating to his jury claim, Sampson asserted that an order requiring a new hearing to determine whether the death penalty is justified would not be appealable until after that hearing was concluded. See Hammer, 564 F.3d at 632-36; Stitt, 459 F.3d at 484-86; see also Andrews v. United States, 373 U.S. 334, 339-40 (1963). The government had not addressed this issue. Therefore, the court deferred entering an order implementing its decision on the jury claim until the parties had an opportunity to confer and brief the issue of whether that decision is immediately appealable. See United States v. Sampson, 820 F. Supp. 2d 249 (D. Mass. 2011) (Memorandum and Procedural Order).

In a separate order also issued on October 20, 2011, the court decided that the government was entitled to summary dismissal of many, but not all, of Sampson's claims that did not relate to the jury. See United States v. Sampson, 820 F. Supp. 2d 202, 213 (D. Mass. 2011) (Memorandum and Order on Summary Dismissal). The court summarized the surviving non-jury claims as follows:

> [Certain] claims cannot be conclusively resolved based on the motion and the record before the court. For example, Sampson alleges that his trial counsel failed to give his medical experts certain medical records that, if considered, would have led to additional investigation and, in turn, would have led to substantial additional evidence of brain abnormality, an important mitigating factor to be considered by the sentencing jury in a capital case (Claim III(C)). See, e.g., Porter v.

---

inaccurate responses by C and the two other jurors deprived him of his right to exercise his peremptory challenges on a properly informed basis. Id. at 201-02.

McCollum, 130 S.Ct. 447, 454 (2009) (per curiam). On the
present record, the court cannot conclude that Sampson's
characterization of these events is inaccurate. Nor can
it conclude that Sampson was not prejudiced at trial by
the absence of this information. Similarly, the court
cannot conclude that Sampson is not entitled to relief
based on his claims that his counsel were ineffective
because their investigation and presentation of
mitigating evidence was inadequate in other respects,
because their investigation and impeachment of a
government witness was inadequate, because they did not
present evidence to the jury that Sampson's demeanor in
court was caused by medication, or because they did not
raise a question with the court about Sampson's
competency (Claims III(B),(D)-(F), (I)-(L) and (N)). Nor
can the court conclude that Sampson is not entitled to
relief based on the cumulative effect of some or all of
these alleged errors (Claim X).

Id. In addition, the court deferred decision on Sampson's claim

that he is so severely brain damaged that his execution would be

unconstitutional. See id. at 249. Pursuant to the Memorandum and

Order on Summary Dismissal, all of the claims which challenged the

validity of Sampson's guilty plea are subject to summary

dismissal.[2]

It was not clear to the court whether the claims that survived

summary dismissal would be moot if a new hearing to determine

Sampson's sentence was conducted. Nor was it clear whether the

court should decide whether to issue a certificate of appealability

_____

[2] In its Memorandum and Order on Summary Dismissal, the
court addressed the possibility that Sampson's claim of
ineffectiveness of counsel for failure to raise a question of
competency could relate to the validity of the plea, not merely
the validity of the sentence. Id. at 249. However, the parties
have since communicated to the court their shared understanding
that this claim challenged only the validity of the sentence, not
the plea. See Feb. 1, 2012 Joint Report at 3-4.

on any of the dismissed claims before a new sentencing proceeding was conducted, and whether Sampson would request a stay to pursue an appeal concerning any of the dismissed claims. See Sampson, 820 F. Supp. 2d at 250-51 (Memorandum and Procedural Order). The court ordered the parties to confer and address these issues too. See id.

On February 1, 2012, the parties responded in a joint report. The report notified the court of the government's intention to seek review of the court's decision on the jury claim as soon as an order was entered requiring a new sentencing proceeding, and the defendant's position that no appeal could now be taken. More specifically, the government asserted that an order implementing the court's decision on the jury claim and requiring a new sentencing hearing would be final and automatically appealable under 28 U.S.C. §1291, which gives courts of appeals jurisdiction over appeals "from all final decisions of the district courts of the United States." The government stated that it would pursue such an appeal as soon as the court entered an order directing that a new sentencing hearing be conducted. However, acknowledging the decisions holding that an order requiring a resentencing in a §2255 proceeding is interlocutory rather than final, the government also stated its intention to seek certification from this court for an interlocutory appeal under 28 U.S.C. §1292(b), which permits such appeals in civil cases that meet certain standards. Sampson

reported his position that an order granting the defendant a new sentencing hearing would not now be appealable under either §1291 or §1292(b).

Both parties agreed that a stay of proceedings before this court pending resolution of any appeal by the government would be appropriate. They proposed a briefing schedule relating to the government's request that this court make the findings necessary to authorize an interlocutory appeal under §1292(b).

The parties also reported their agreement that the decision to dismiss summarily certain of Sampson's claims would not now be appealable, and that Sampson's remaining claims challenging the validity of his death sentence would be moot if a new hearing to determine his sentence were conducted.

The court adopted the parties' proposed briefing schedule and stayed the remainder of the case. The parties have now submitted memoranda addressing the questions: (1) whether an interlocutory appeal of the court's decision on the jury claim is authorized by §1292(b); and (2) if so, whether the requirements for an interlocutory appeal under §1292(b) have been met.

III. ANALYSIS

The parties dispute whether it is permissible to use §1292(b) to obtain interlocutory appeal of an order vacating a death sentence and ordering a new sentencing hearing in a §2255 proceeding. Arguing that the government cannot now appeal this

court's grant of a new sentencing hearing, Sampson relies on
Andrews, in which the Supreme Court found that in a §2255
proceeding, a district court's order mandating a new sentencing was
"interlocutory not final," and that it was "obvious that there
could be no final disposition of the §2255 proceedings until the
petitioners were resentenced." 373 U.S. at 339-40. In Andrews,
the Court concluded that the government did not have the right to
appeal the order requiring resentencing, and the Court of Appeals
lacked jurisdiction to review it, until the resentencing had
occurred. Id. at 337, 339. Although Andrews was not a capital
case and, therefore, did not involve a resentencing before a jury,
two circuits have concluded that an appellate court does not have
jurisdiction over the government's appeal of a district court's
order vacating a death sentence but denying relief as to all claims
concerning guilt. See Hammer, 564 F.3d at 634 (3d Cir.); Stitt,
459 F.3d at 485-86 (4th Cir.). Applying Andrews, the Third and
Fourth Circuits held that a §2255 proceeding is not final until
after a new sentencing hearing occurs and, therefore, an order
requiring such a hearing is not subject to appeal. See Hammer, 564
F.3d at 634; Stitt, 459 F.3d at 485-86. Andrews, Hammer, and Stitt
did not, however, address the possibility of interlocutory appeal
pursuant to §1292(b).

Although recognizing that the Supreme Court's decision in
Andrews has been interpreted by the Third and Fourth Circuits to

16

mean that an order requiring a new sentencing hearing in a capital case is not final or appealable prior to the resentencing, the government intends to appeal this court's decision immediately to the First Circuit on the theory that the decision is final and appealable as of right under §1291. As requested by the parties, this court will stay the proceedings until that appeal is resolved. Therefore, an appeal to the First Circuit will be taken and there will be an associated delay in the proceedings before this court.

The issue now being decided is whether this court should make the findings necessary to allow the government to present to the First Circuit the additional questions of whether its decision on the jury claim is eligible for interlocutory appeal under §1292(b); if so, whether the requirements of §1292(b) have been met; and, if so, whether the First Circuit should exercise its discretion to decide the merits of the jury claim decision before a new sentencing hearing is conducted.

Section 1292 provides courts of appeals with jurisdiction to review certain interlocutory orders, including orders granting or refusing to grant injunctions, and orders appointing receivers. See 28 U.S.C. §1292(a). As relevant here, §1292 also provides courts of appeals with the discretion to permit interlocutory appeals in certain other circumstances, with the agreement of the district court. Specifically, §1292(b) states that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall

be of the opinion that such order involves a controlling
question of law as to which there is substantial ground
for difference of opinion and that an immediate appeal
from the order may materially advance the ultimate
termination of the litigation, he shall so state in
writing in such order.  The Court of Appeals which would
have jurisdiction of an appeal of such action may
thereupon, in its discretion, permit an appeal to be
taken from such order, if application is made to it
within ten days after the entry of the order.

(Emphasis added).

By its terms, §1292(b) applies only to civil cases.  To obtain

certification from the district court, the moving party must show

that the matter involves: (1) a "controlling question of law;" (2)

"as to which there is substantial ground for difference of

opinion;" and (3) "an immediate appeal from the order may

materially advance the ultimate termination of the litigation."

§1292(b); see Caraballo-Seda v. Municipality Of Hormigueros, 395

F.3d 7, 9 (1st Cir. 2005); see also Bank of New York v. Hoyt, 108

F.R.D. 184, 190 (D.R.I. 1985) (Selya, J.) ("[t]he movant has the

obligation of showing that the §1292(b) criteria are met" (citing

Fisons Ltd. v. United States, 458 F.2d 1241, 1248 (7th Cir.), cert.

denied, 405 U.S. 1041 (1972))).  If it makes these findings in a

civil case, the district court is permitted, but not required, to

authorize an interlocutory appeal.   See Swint v. Chambers County

Comm'n, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on

district courts first line discretion to allow interlocutory

appeals."); Nat'l Asbestos Workers Med. Fund v. Philip Morris,

Inc., 71 F. Supp. 2d 139, 145-46 (E.D.N.Y. 1999) (Weinstein, J.).

Therefore, "[d]istrict courts . . . have independent and 'unreviewable' authority to deny certification even where the three statutory criteria are met." <u>Nat'l Asbestos</u>, 71 F. Supp. 2d at 146 (quoting <u>Executive Software N. Am., Inc. v. U.S. Dist. Court</u>, 24 F.3d 1545, 1550 (9th Cir. 1994)); <u>see also</u> <u>Hoyt</u>, 108 F.R.D. at 190 ("As the legislative history indicates, 'the appeal is discretionary rather than a matter of right. It is discretionary in the first instance with the district judge.'" (quoting S. Rep. 2434, 85th Cong., 2d Sess., 1958, reprinted in 1958 U.S. Code Cong. & Admin. News 5255, 5257)).

If this court makes the necessary findings and certifies its decision on Sampson's jury claim for interlocutory appeal, the First Circuit may have to decide three questions. First, it will have to resolve the dispute as to whether a §2255 proceeding is a "civil action" from which an interlocutory appeal can be taken under §1292(b). <u>See</u> <u>Francisco Sanchez v. Esso Standard Oil Co.</u>, 572 F.3d 1, 9 (1st Cir. 2009) (court of appeals has duty to inquire into its own jurisdiction). If the First Circuit finds that §1292(b) applies, it will have to decide independently whether the three §1292(b) criteria are satisfied. <u>See</u> <u>Caraballo-Seda</u>, 395 F.3d at 9 (analyzing §1292(b) requirements and concluding two were not satisfied); <u>In re Heddendorf</u>, 263 F.2d 887, 889 (1st Cir. 1959) (in evaluating whether §1292(b) requirements are satisfied, court of appeals should "weigh the asserted need for the proposed

interlocutory appeal with the policy in the ordinary case of discouraging 'piecemeal' appeals"); <u>White v. Nix</u>, 43 F.3d 374, 376-78 (8th Cir. 1994). The issue of whether §1292(b) applies is a pure matter of law and will determine the First Circuit's jurisdiction if the jury claim decision is not appealable under §1291 or some other statutory provision. Whether the requirements of §1292(b) have been met has at times been characterized as jurisdictional as well. See <u>Couch v. Telescope, Inc.</u>, 611 F.3d 629, 633 (9th Cir. 2010) ("the requirements of §1292(b) are jurisdictional" (internal quotations omitted)). If §1292(b) applies and its requirements are met, the First Circuit will have "to decide whether, in the exercise of discretion granted . . . by the statute, [it] want[s] to accept jurisdiction." <u>In re Cement Antitrust Litig.</u>, 673 F.2d 1020, 1026 (9th Cir. 1982), <u>aff'd</u>, 459 U.S. 1990 (1983).

Therefore, this court is, in effect, a gatekeeper. If it declines to make the findings necessary to permit interlocutory review under §1292(b), the First Circuit will only decide if the jury claim decision can be appealed as a final order under §1291. See <u>Rivera-Jimenez v. Pierluisi</u>, 362 F.3d 87, 92 (1st Cir. 2004). If the court does make the required findings, the First Circuit will have the opportunity to decide the full range of §1292(b) issues presented to this court. For the reasons described below, in the unique circumstances of this case, it is appropriate to

provide the First Circuit that opportunity.

Whether a §2255 proceeding is a "civil action" for the purpose of §1292(b) is a challenging question. The Supreme Court has recently noted that in some contexts "there has been some confusion over whether §2255 proceedings are civil or criminal in nature." Wall v. Kholi, 131 S.Ct. 1278, 1289 n.7 (2011). However, the Court did not clarify that question. See id.

Sampson asserts that the decision on the jury claim is not an order in a "civil action" eligible for a possible interlocutory appeal under §1292(b). He argues that the Advisory Committee Notes to the Rules Governing Section 2255 Proceedings for the United States District Courts (the "Notes") characterize proceedings under §2255 as a "continuation of the criminal case." See Note to Rule 1 ("a motion under §2255 is a further step in the movant's criminal case and not a separate civil action"); Note to Rule 11 ("a §2255 action is a continuation of the criminal case").[3] Sampson observes

---

[3] If Sampson is correct in his contention that §2255 proceedings are criminal rather than civil, a question could be raised regarding whether 18 U.S.C. §3731, concerning appeals by the government in criminal cases, applies to the instant case. Section 3731 permits appeals by the government in criminal cases for orders "granting a new trial after verdict or judgment." In addressing a decision to grant a new sentencing hearing in a capital case, the Sixth Circuit has held that the order would not have been appealable if entered in a §2255 proceeding, but was appealable under §3731 because the order granted a motion brought under Rule 33(b)(2) of the Federal Rules of Criminal Procedure. See United States v. Lawrence, 555 F.3d 254, 258-60 (6th Cir. 2009).

Rule 33(b)(1) requires that "[a]ny motion for a new trial

that there is a strong policy against piecemeal appeals.  See Abney
v. United States, 431 U.S. 651, 656 (1977) ("[S]ince appeals of
right have been authorized by Congress in criminal cases, as in
civil cases, there has been a firm congressional policy against
interlocutory or 'piecemeal' appeals and courts have consistently
given effect to that policy.").  Section 2255(d) states only that
"[a]n appeal may be taken to the court of appeals from the order
entered on the motion as from a final judgment on application for
write of habeas corpus."; see also 28 U.S.C. §2253(a) ("In a habeas

_____

grounded on newly discovered evidence must be filed within 3
years after the verdict or finding of guilty."  Sampson pled
guilty in 2003.  The Motion was not filed in this case until
2009.  Therefore, in contrast to Lawrence, it does not appear
that a timely Rule 33 motion has been presented to this court.

    Nevertheless, §3731 may deserve some consideration.  This
court recognizes that in Andrews the Supreme Court stated that
the Criminal Appeals Act "has no applicability" to a §2255
proceeding.  373 U.S. at 338.  However, Andrews relied at least
in part on the Court's understanding that "[a]n action under 28
U.S.C. §2255 is a separate proceeding, independent of the
original criminal case."  Id.  This reasoning may have been
eroded by the revision of the §2255 Rules which now provide that
"a motion under §2255 is a further step in the movant's criminal
case and not a separate civil action."  Note to Rule 1.
Furthermore, Andrews relied on a "long-established rule against
piecemeal appeals," 383 U.S. at 340, but §3731 was amended after
Andrews to increase the government's opportunity to obtain review
of certain non-final orders, and it expressly states that its
provisions "shall be liberally construed to effectuate its
purposes."  §3731; see Lawrence, 555 F.3d at 258; see also United
States v. Wilson, 420 U.S. 332, 337 (1975); United States v.
Kane, 646 F.2d 4, 7 (1st Cir. 1981).

    The government has not argued that the jury claim decision
is appealable pursuant to §3731, Sampson has not addressed the
question, and this court is not deciding it.  However, the First
Circuit may wish to consider the issue.

corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held."). Sampson contends, therefore, that §2255 occupies the field and makes no provision for extraordinary, interlocutory appeals. Sampson asserts that in <u>Hammer</u> and <u>Stitt</u>, the government implicitly recognized this by not contending that §1292(b) was a vehicle for obtaining review. Indeed, it appears that the government has never made such a claim in any §2255 case.

However, there are factors that favor the government's position that decisions in §2255 proceedings are eligible for interlocutory review under §1292(b). Arguably, §2255 proceedings are hybrids, which in some contexts should be considered criminal actions and in other contexts should be considered civil actions. In certain contexts the First Circuit has characterized §2255 proceedings as civil in nature. <u>See</u> <u>Trenkler v. United States</u>, 536 F.3d 85, 94 (1st Cir. 2008) ("Section 2255 proceedings, like classic petitions for habeas corpus, are generally treated as civil in nature."); <u>Rogers v. United States</u>, 180 F.3d 349, 352 n.3 (1st Cir. 1999) ("Motions under §2255 have often been construed as civil actions, much like habeas corpus proceedings."). Sections 2253(a) and 2255(d) directly address how a final order in such a proceeding may be appealed, but do not state that interlocutory appeals are prohibited. The Supreme Court has held that "appeals from orders

denying motions under Section 2255 are governed by the civil rules applicable to appeals from final judgment in habeas corpus actions." United States v. Hayman, 342 U.S. 205, 209 n.4 (1952). Moreover, Rule 11(b) of the Rules Governing §2255 Proceedings provides that Rule 4(a) of the Federal Rules of Appellate Procedure, which establishes the time to appeal in civil cases, "governs the time to appeal an order entered under these rules." In addition, although without discussion of the implications of Andrews or any other analysis, courts have occasionally allowed interlocutory appeals under §1292(b) in §2255 actions. See United States v. Pelullo, 399 F.3d 197, 202 (3d Cir. 2005); United States v. Barron, 127 F.3d 890, 892 (9th Cir. 1997), rev'd on other grounds on rehearing on banc, 172 F.3d 1153 (9th Cir. 1999) (en banc).

In view of the foregoing, reasonable judges might differ on whether §1292(b) applies to the decision on the jury claim in this case. While §1292(b) requires that this court state its opinion on certain issues, it does not require that this court decide whether a §2255 proceeding is a "civil action" for the purpose of §1292(b). For the reasons described below, the court concludes that the requirements of §1292(b) are satisfied and it is in the interest of justice to give the First Circuit the opportunity to decide the full range of issues raised by the government. Therefore, the court is not deciding whether or not §1292(b) applies to its

decision on the jury claim, but is making the findings necessary to provide the First Circuit the opportunity to decide that issue, and others if it determines that it has jurisdiction.

In finding that the requirements of §1292(b) have been met, the court understands that interlocutory certification "should be used sparingly and only in exceptional circumstances, and where the proposed immediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." Caraballo-Seda, 395 F.3d at 9 (internal quotations omitted); see McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984). Certification under §1292(b) must be rare because appellate review is generally limited to final decisions precisely in order to "avoid piecemeal litigation, promote judicial efficiency, reduce the cost of litigation, and eliminate the delays caused by interlocutory appeals." Appeal of Licht & Semonoff, 796 F.2d 564, 569 (1st Cir. 1986); see also In re Clark-Franklin-Kingston Press, Inc., C.A. 90-11231-WF, 1993 WL 160580, *2 (D. Mass. 1993) ("appeals of interlocutory orders result in piecemeal litigation, causing delay"). Therefore, "the party seeking interlocutory appeal under §1292(b) bears the heavy burden of persuading the court that exceptional circumstances warrant 'departure from the basic policy of postponing appellate review until after entry of final judgment.'" Clark-Franklin-Kingston, 1993 WL 160580 at *2 (quoting Hoyt, 108 F.R.D. at 190); see also Vimar Seguros Y

25

<u>Reaseguros, S.A. v. M/V Sky Reefer</u>, C.A. 91-13345-WF, 1993 WL

137483, *6 (D. Mass. 1993), <u>aff'd</u>, 29 F.3d 727 (1st Cir. 1994),

<u>aff'd</u>, 515 U.S. 528 (1995).

However, as Professors Wright, Miller, and Cooper have
written:

> [T]he three factors that justify interlocutory appeal
> should be treated as guiding criteria rather than
> jurisdictional requisites. Section 1292(b) is best used
> to inject an element of flexibility into the technical
> rules of appellate jurisdiction established for final
> judgment appeals under §1291 and for interlocutory
> appeals under §1292(a). The three factors should be
> viewed together as the statutory language equivalent of
> a direction to consider the probable gains and losses of
> immediate appeal.

16 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure

§3930 (2d ed. 1996), at 415.[4] In the instant case, the §1292(b)

factors, viewed together, indicate that it is permissible and

appropriate that this court authorize an interlocutory appeal of

its decision on Sampson's jury claim.

The court's decision on the jury claim involves a "controlling

question of law" within the meaning of §1292(b). That issue is the

question of whether a litigant seeking to obtain relief under

<u>McDonough</u> is required to prove, among other things, actual or

implied bias. As explained earlier, this court found that actual

---

[4] This court has regularly employed this understanding in
deciding whether to certify decisions for interlocutory appeal
under §1292(b). <u>See</u> <u>Clark-Franklin-Kingston</u>, 1993 WL 160580 at
*3; <u>Vimar Seguros</u>, 1993 WL 137483 at *6; <u>United States ex rel.</u>
<u>LaValley v. First Nat. Bank of Boston</u>, C.A. 86-236-WF, 1990 WL
112285, *3-4 (D. Mass. 1990).

and implied bias are not required to be proven to obtain relief under McDonough, see Sampson, 820 F. Supp. 2d at 174-75, and that neither was proven with regard to C. Id. at 188, 192. If this court is found to be incorrect in its holding that McDonough provides a third basis for obtaining relief – distinct from actual bias and implied bias – or incorrect in some material respect concerning its statement of the McDonough test, then its decision that a new hearing to determine Sampson's sentence is required will be reversed or remanded. Therefore, a "controlling question of law" is implicated in the proposed interlocutory appeal. See In re Heddendorf, 263 F.2d at 890.

With regard to the second §1292(b) factor, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." 16 Wright, Miller & Cooper, Federal Practice and Procedure §3930, at 422. In certain circumstances, "certification may be justified at a relatively low threshold of doubt." Id.

This court continues to find that it has correctly interpreted McDonough. As indicated earlier, "if the McDonough test required a showing of actual or implied bias in addition to a showing of dishonesty," as the government contends, "the test Justice Rehnquist stated for the majority would be superfluous." Sampson, 820 F. Supp. 2d at 176. Moreover, this court's interpretation of

McDonough is consistent with the First Circuit's most relevant decisions, Amirault and Dall. See Sampson, 820 F. Supp. 2d at 176-77.

However, in McDonough two Justices concurred only in the judgment because they had "difficulty understanding the import of the legal standard adopted by the Court." 464 U.S. at 557 (Brennan, J., concurring). In addition, "[a]s the Sixth Circuit has noted, the case law reflects some confusion concerning the meaning of McDonough." Sampson, 820 F. Supp. 2d at 177 (citing Zerka v. Green, 49 F.3d 1181, 1185 (6th Cir. 1995)). This confusion is manifest in certain cases from other jurisdictions that are inconsistent with this court's interpretation of McDonough and incorrect for the reasons explained in the Memorandum and Order on Jury Claim. See Sampson, 820 F. Supp. 2d at 179-80 nn.16-18. Moreover, as this court wrote, its:

> statement of the McDonough test has been developed without the benefit of extensive discussion by the First Circuit. The lack of extensive discussion is, in part, the result of the fact that the First Circuit has never decided a case in which the party seeking a new trial proved that a juror had been dishonest at voir dire and it has not, therefore, been required to analyze the remaining prongs of the McDonough test.

Id. at 177.

In essence, the court believes that in reaching its conclusions, the court harmonized the three opinions in McDonough, well-reasoned decisions from several Courts of Appeals, and language in several First Circuit cases whose analysis was less

28

extensive. However, in recognition of the lack of binding First Circuit authority concerning the meaning of <u>McDonough</u> and the confusion that is manifest in some decisions in other circuits, the court finds that there is a "substantial ground for difference of opinion" regarding its conclusion that <u>McDonough</u> is satisfied without proof of actual or implied bias if the trial judge would have had the discretion to excuse for cause a juror who answered a material question dishonestly, and would in fact have excused her. See <u>Sampson</u>, 820 F. Supp. 2d at 159.

Finally, "immediate appeal from the [jury claim] order may materially advance the ultimate termination of the litigation." §1292(b). If the court's decision on Sampson's jury claim is reversed on interlocutory appeal, it is possible that a new sentencing hearing will not be necessary. The court will still have to decide the claims not involving the jury that have not been summarily dismissed. Discovery will be necessary and evidentiary hearings may be required. It is not now possible to predict whether any of Sampson's remaining claims will prove to be meritorious. However, it is possible that they will not justify a new sentencing hearing.

If this court's decision on the jury claim is affirmed, the issues concerning Sampson's other claims that were not summarily dismissed will be moot. The government will then have to decide whether it is now possible and appropriate to conduct another long,

expensive, and exhausting sentencing hearing. An affirmance may cause the government to conclude that it is in the interests of justice to try to reach an agreement to resolve this matter with Sampson, who previously offered to accept a sentence of life in prison without possibility of parole rather than face possible execution. Such an agreement would expedite the termination of this case. See Clark-Franklin-Kingston, 1993 WL 160580 at *3 ("interlocutory appeals should be granted where resolution of the issues on appeal might lead to settlement"). Therefore, while inherently uncertain, the conclusion of this §2255 proceeding before this court "may" be facilitated by an interlocutory appeal. See §1292(b).

While the court is of the opinion that each of the §1292(b) factors has been adequately established, it still must decide whether to exercise its discretion to allow the First Circuit to consider whether interlocutory appeal of the jury claim decision is legally permissible and, if so, justified. See Swint, 514 U.S. at 47; Nat'l Asbestos, 71 F. Supp. 2d at 145-46; Hoyt, 108 F.R.D. at 190. It is, at this point, particularly appropriate "to consider the probable gains and losses of immediate appeal." 16 Wright, Miller & Cooper, Federal Practice and Procedure §3930, at 416.

The instant case is truly an "exceptional" case. See Caraballo-Seda, 395 F.3d at 9 (internal quotations omitted). It is the only case in the First Circuit in which a person has been

sentenced to be executed under the Federal Death Penalty Act. A resentencing hearing in this case will be far more complicated and consume far more resources than a resentencing in a non-capital case such as Andrews. See Stitt, 459 F.3d at 487 (Williams, J., concurring). It will also be agonizing for the families of the victims. If meritorious, an immediate appeal of the jury claim decision may keep these costs from being incurred.

Interlocutory review of the jury claim decision may also promote confidence in the administration of justice. If there is not an immediate appeal and a second jury finds that Sampson should be sentenced to death, this court's jury claim decision will probably never be reviewed and there will be no appellate determination of whether the second capital sentencing proceeding was necessary. If the jury at a second sentencing hearing finds that Sampson should not be executed, the court's decision on Sampson's jury claim will be final and ripe for appellate review. The First Circuit will then be required to decide whether Sampson should be executed despite a more recent jury determination that the death penalty is not justified. This situation may raise additional, unprecedented appellate issues. In any event, a decision to allow Sampson to be executed despite a more recent finding that the death sentence is not justified would forseeably prompt public confusion and controversy. An interlocutory appeal and determination of the merits of the jury claim decision would

reduce these risks and also assure that the expense and anguish of any second sentencing hearing is, as this court has found, legally required to provide Sampson "the fair process that the Constitution guarantees every man no matter how despicable his conduct." Sampson, 820 F. Supp. 2d at 160.

As described earlier, the instant case will be stayed pending the government's attempt to appeal the decision vacating Sampson's death sentence as a final order under §1291. Therefore, there will be some piecemeal litigation and delay in any event. Certification of an interlocutory appeal will only provide the First Circuit the opportunity to consider a fuller range of issues concerning the jury claim decision. Thus, the delay caused by authorizing an interlocutory appeal in this case is not as significant a factor weighing against certification as delay is in the usual case. Cf. Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 866-67 (2d Cir. 1996) (certification under §1292(b) was improvidently granted where appeal would delay rather than advance termination of litigation); Nat'l Asbestos, 71 F. Supp. 2d at 167 ("The lengthy delay of trial court proceedings pending the appeal, the probability that an interlocutory appeal will require lengthy appellate consideration on an incomplete record, and the likelihood that continued district court proceedings might moot the issues now sought to be appealed, . . . counsel against interlocutory review at this stage."); Clark-Franklin-Kingston, 1993 WL 160580 at *3 (denying leave to bring

interlocutory appeal of order of Bankruptcy Court where appeal would delay the action's progress towards a trial).

In view of the foregoing, the court concludes that it is permissible and most appropriate to certify for interlocutory review, pursuant to §1292(b), the questions of: (1) whether McDonough requires proof of actual bias or implied bias to obtain relief; and, if not, (2) whether this court correctly stated the McDonough test in its Memorandum and Order on Jury Claim.

As explained earlier, the First Circuit may decide as a matter of law that an interlocutory appeal is not permissible or may conclude that this is not one of the rare cases in which an interlocutory appeal should be granted as an exercise of its discretion. However, it serves the interests of justice for this court to allow the First Circuit to make those decisions.

IV. ORDER

Therefore, for the reasons explained in this Memorandum and in the October 20, 2011 Memorandum and Order on Jury Claim, it is hereby ORDERED that:

1. Claim IV of the Motion (Docket No. 1035) is ALLOWED and Sampson's death sentence is VACATED.

2. The Government's Request for Summary Dismissal of the First Amended 2255 Petition (Docket No. 1055) is DENIED as to Claim IV, the jury claim.

3. Assuming, without finding, that 28 U.S.C. §1292(b) is

33

applicable, the government's Motion to Certify Interlocutory Appeal Under 28 U.S.C. §1292(b) and for Stay (Docket No. 1235) is ALLOWED as to the questions of: (1) whether McDonough requires proof of actual bias or implied bias to obtain relief; and, if not, (2) whether this court correctly stated the McDonough test in its Memorandum and Order on Jury Claim.

4. A separate Order concerning the claims to be dismissed pursuant to the October 20, 2011 Memorandum and Order on Summary Dismissal shall enter.

5. This case shall continue to be STAYED pending a resolution of the government's appeal by the First Circuit.

 

 

          /s/ Mark L. Wolf
    UNITED STATES DISTRICT JUDGE