UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 01-10384-MLW |
| | ) | |
| GARY LEE SAMPSON | ) | |

ORDER

WOLF, D.J.                                                    January 23, 2014

Attached is a copy of the September 2, 1994 Memorandum and Order in <u>United States v. Sawyer</u>, Cr. No. 94-10168-MLW, concerning recusal, which the court referenced at the hearing on January 21, 2014.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Cr. No. 94-10168-MLW |
| | ) |
| F. WILLIAM SAWYER | ) |

MEMORANDUM AND ORDER

WOLF, D.J.                                                September 2, 1994

In my August 5, 1994 Memorandum and Order, I described my relationship with government and defense counsel in this case, and requested statements from the parties concerning whether they believed that I should recuse myself pursuant to 28 U.S.C. § 455(a), which requires disqualification of a judge "in any proceeding in which his impartiality might reasonably be questioned." The defendant F. William Sawyer has expressed the view that my recusal is appropriate to avoid an appearance of impropriety, based on the circumstances I described concerning Assistant United States Attorney Michael Kendall, one of the prosecutors in this case. The government has expressed the view that my disqualification is neither necessary nor appropriate. The government suggests, however, that if I find that presiding in this case would present an appearance of impropriety because of Mr. Kendall's participation, he would withdraw in order to permit me to continue to perform my judicial duties.

As set forth below, this is a case in which reasonable judges could properly disagree on whether a reasonable person would question my impartiality. See In re: Allied Signal, 891 F.2d 967,

970 (1st Cir. 1989), cert. denied, ACW Airwall, Inc. v. United States District Court for the District of Puerto Rico, 495 U.S. 957 (1990). The decision regarding recusal is, therefore, within the "range of discretion" the Court of Appeals for the First Circuit has recognized that district judges have in deciding issues of recusal arising under 28 U.S.C. § 455(a). Id. While the defendant is mistaken with regard to certain facts and arguments on which he relies, I have decided that it is most appropriate that I exercise my discretion to disqualify myself. This case will, therefore, be randomly reassigned to another member of the District Court.

I.  The Applicable Standards

At the outset, it should be recognized that there is no question of whether I could and would provide the defendant, as well as the government, a fair trial in this case. The defendant does not suggest otherwise. In the affidavit submitted by the defendant, Robert F. Drinan, S.J. expressly emphasized that he "intend[ed] no adverse reflection on [my] actual impartiality in this or any other case." August 24, 1994 Affidavit of Robert F. Drinan, ¶ 7 (emphasis added). Consistent with this, the defendant limits his analysis to the question of whether my recusal is appropriate pursuant to 28 U.S.C. § 455(a), which relates solely to the reasonable appearance of partiality.

"The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." Liljeberg v. Health Services Acquisition Corporation,

2

486 U.S. 847, 865 (1988). As the Court of Appeals for the Seventh Circuit has elaborated:

> The statute requiring recusal when the judge's impartiality might reasonably be questioned vindicates interests of the judicial system as a whole. It is important to the administration of justice that judges both be and appear to be impartial. When a question about impartiality reasonably arises, the judge must stand aside in order to preserve public confidence in the courts. But this does not imply that a judge who is a close friend of counsel will provide an unjust disposition; if it implied that, the question would be one of actual impropriety rather than the "appearance" of impropriety.

United States v. Murphy, 768 F.2d 1518, 1539-40 (7th Cir.), cert. denied, 475 U.S. 1012 (1986).

The Court of Appeals for the First Circuit has recognized that there are competing considerations to be weighed by a district judge in deciding whether to recuse himself. More specifically:

> [W]hen considering disqualification, the district court is _not_ to use the standard of "Caesar's wife," the standard of mere suspicion (citation omitted). That is because the disqualification decision must reflect _not only_ the need to secure public confidence through proceedings that appear impartial, _but also_ the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.
>
> * * *
>
> [Therefore,] the judge must . . . tread cautiously, recognizing, on the one hand, the great importance to the judicial institution of avoiding any appearance of partiality, while simultaneously remaining aware of the potential injustices that may arise out of unwarranted disqualification.

In re: Allied Signal, 891 F.2d at 970 (emphasis in original). Accordingly, "'disqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would

3

find to be a <u>reasonable</u> basis for doubting the judge's impartiality . . . .'" Id. (quoting <u>In re United States</u>, 666 F.2d 690 695 (1st Cir. 1981) (emphasis in original)).

"The task of applying the objective standard to the facts grants the judge a degree of discretion in disqualification decisions under section 455(a) that is not present in section 455(b) decisions [addressing compulsory disqualification based on five specified interests or relationships]." S. Hoekema, <u>Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges Under 28 U.S.C. § 455(a)</u>, 60 Temp. L.Q. 697, 727 (1987)(footnotes omitted). Accordingly, the Court of Appeals for the First Circuit allows the district judge "a range of discretion" in deciding whether a reasonable, objective person would question his impartiality and reviews that decision only for abuse of discretion. <u>In re: Allied Signal</u>, 891 F.2d at 970; <u>United States v. Giorgi</u>, 840 F.2d 1022, 1034 (1st Cir. 1988).

II. <u>Analysis</u>

As stated earlier, this is a case in which reasonable judges could properly differ on whether a reasonable person would question my impartiality. I have resolved this question in favor of recusal because of the coincidence of several unusual, perhaps unique, circumstances. Before addressing them, however, it is important to identify some of the defendant's claims which are factually mistaken or legally without merit.

First, contrary to defendant's contention, I never supervised

4

Mr. Kendall in his capacity as a government attorney prosecuting public corruption cases. See Defendant's Statement in Support of Recusal at 6. As described in the August 5, 1994 Memorandum and Order, Mr. Kendall worked with me part-time while he attended law school, from 1981 to 1984.[1] I became a judge in 1985. Mr. Kendall became an Assistant United States Attorney in 1989.

Second, my relationship with Mr. Kendall prior to his becoming an Assistant United States Attorney does not provide a legitimate basis for my recusal. I did preside at Mr. Kendall's admission to the bar of the United States District Court; spoke favorably of him on that occasion; saw Mr. Kendall from time to time; and undoubtedly discussed the progress of his career. This relationship was similar to that which many judges maintain with their former law clerks. The appearance of a former law clerk before a judge, however, does not ordinarily require recusal. The United States Supreme Court prohibits former law clerks from participating in any case before it within two years of the termination of their employment. See Rule 7.2, Rules of the Supreme Court of the United States. The Court of Appeals for the First Circuit prohibits former law clerks from practicing or

---

[1] Because I did not participate in any matter relating to this case while in the Office of the United States Attorney more than nine years ago, my prior employment does not cause or contribute to my recusal. See 28 U.S.C. § 455(b)(3) (A judge shall disqualify himself "where he has served in government employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy.").

5

appearing before it for one year following their separation. See Rule 46, Local Rules of the First Circuit. A one or two-year disqualification of the former clerk, rather than the judge he or she served, is the practice of many federal courts. See United States v. Hollister, 746 F.2d 420, 425 (1st Cir. 1984) (quoting A. DiLeo and A. Rubin, Law Clerk Handbook at 57 (1977)). Mr. Kendall last worked with me more than ten years ago. He is not generally prohibited from appearing before me by virtue of that association.

Third, the fact that I recommended Mr. Kendall for employment as an Assistant United States Attorney in 1989 is not a reason for my recusal. "When a judge is personally aware of facts or circumstances which would facilitate an accurate assessment of the individual under consideration, a judge may properly communicate that knowledge, and his opinions based thereon, to those responsible for making decisions concerning the applicant." Advisory Committee on Codes of Conduct, Advisory Opinion No. 73 (August 26, 1983). Accordingly, judicial officers have long been advised that "there is no impropriety in a judge's answering a proper inquiry from an appointing officer with respect to his knowledge concerning the character and fitness of a candidate for appointment to any public office . . . ." Advisory Committee on Judicial Activities, Advisory Opinion No. 54 (August 15, 1977). Judges have also been advised that they may properly suggest individuals for appointment, at least for judgeships, if the names of possible appointees are being solicited. Advisory Committee on Judicial Activities, Advisory Opinion No. 59 (April 16, 1979). It

is common for judges to be consulted in connection with the possible appointment of former colleagues to public office. Indeed, responding to a request, I recommended defendant's counsel, Thomas Kiley, for such an appointment.

Fourth, following Mr. Kendall's appointment as an Assistant United States Attorney in 1989, our contacts were restricted in order to minimize any possible question of my recusal in cases in which he was involved. I did preside at his swearing-in as an Assistant United States Attorney, as I understand many of my colleagues have done for former associates and law clerks joining the Office of the United States Attorney. Following that event, I had no social contact with Mr. Kendall except for his occasional attendance, when he did not have matters pending before me, at the gathering I have hosted annually around Christmas for some of my former colleagues from the United States Attorney's Office, most of whom are now in private practice. I have also hosted a party around Christmas for members of the criminal defense bar who served on the committee I chaired to review and revise the District Court's Criminal Justice Act Plan.

I have not understood such limited contacts with Mr. Kendall, or other attorneys, to be improper. As the Court of Appeals for the Seventh Circuit has observed:

> In today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable. A judge need not cut himself off from the rest of the legal community. Social as well as official communications among the judges and lawyers may improve the quality of legal decisions. Social interactions also make service on the bench, quite isolated as a rule, more tolerable to judges. Many well-qualified people would

7

> hesitate to become judges if they knew that wearing the robe meant either discharging one's friends or risking disqualification in substantial numbers of cases. Many courts therefore have held that a judge need not disqualify himself just because a friend -- even a close friend -- appears as a lawyer. <u>E.g.</u> <u>In re: United States</u>, 660 F.2d 690 (1st Cir. 1981); <u>Parrish v. Board of Commissioners</u>, 524 F.2d 98 (5th Cir. 1975)(en banc). <u>Cf.</u> <u>Merit Insurance Co. v. Leatherby Insurance Co.</u>, 714 F.2d, 673, 680 (7th Cir.), <u>cert.</u> <u>denied</u>, 464 U.S. 1009 (1983).

<u>Murphy</u>, 768 F.2d at 1537-38.

In 1993, when he did not have any matters pending before me, Mr. Kendall asked if I would officiate at his wedding in June 1994. In connection with this request, Mr. Kendall told me that he planned to leave the Office of the United States Attorney before his marriage. Knowing that my colleagues had officiated at the weddings of attorneys who were former associates, partners, and law clerks, I agreed to perform the ceremony. As the wedding date approached, I realized that Mr. Kendall had not left the Office of the United States Attorney. I did not, however, feel that it was necessary, or in the circumstances appropriate, for me to decline to officiate.

As described in my August 5, 1994 Memorandum and Order, I did, in the course of speaking about the meaning of marriage and the qualities of the bride and groom, say that Mr. Kendall had impressed me with his dedication to justice and equality, as exhibited in part by his efforts to prosecute public corruption in Massachusetts. Contrary to defendant's suggestion, I did not receive or read the March 22, 1994 press release issued by the United States Attorney in connection with the settlement of the civil matter concerning the defendant's employer, the John Hancock

Mutual Life Insurance Company, in which the defendant says Mr. Kendall was mentioned. See Defendant's Statement in Support of Recusal at 14. If Mr. Kendall's involvement in that matter was reported in the media, I do not recall reading or hearing about it. In any event, contrary to defendant's suggestion, id. at 7, I do not believe a reasonable, objective observer would regard my general remarks at Mr. Kendall's wedding as a comment on the facts of this -- then unindicted -- case.

Several weeks after the wedding, the grand jury indicted the defendant and this case was, in accordance with the standard procedures of the District Court, randomly assigned to me. Recognizing that it was essential to disclose the relevant facts and obtain the views of the parties on my possible recusal, I issued the August 5, 1994 Memorandum and Order.

As described previously, several of the grounds on which defendant relies in suggesting my recusal are mistaken or without merit. There is, however, a confluence of several factors which have caused me to decide to disqualify myself.

The indictment in this case closely followed Mr. Kendall's wedding. Therefore, Mr. Kendall and I had a recent association in an event of importance to Mr. Kendall. The coincidental, temporal relationship between Mr. Kendall's wedding and the indictment in this case tends to magnify any possible concern regarding my impartiality.

More significant, however, is the nature of the charges in this case. In essence, the defendant, a former lobbyist, is

9

charged with violating several federal laws by conspiring with members of the legislature of the Commonwealth of Massachusetts to illegally provide them with things of substantial value, to illegally fail to reveal those matters publicly on Financial Disclosure Statements, and to deprive the citizens of Massachusetts of the honest services of some of their elected representatives. The defense says it will argue that the relationships between the defendant and the legislators in question were merely legally permissible social interactions between friends, which included attendance at weddings and similar family events. Defendant's Statement in Support of Recusal at 11-12. Regardless of the outcome, it appears that this case will inevitably cause the public to question the integrity of the legislative process in the Commonwealth of Massachusetts.

It is, therefore, particularly important that the conduct of this case not raise any fair question concerning the integrity of the judicial process, which is, as described earlier, the interest which § 455(a) was enacted to protect. See Liljeberg, 486 U.S. at 865; Murphy, 768 F.2d at 1539-40. I expect that those who teach legal ethics, as well as reasonable district judges, would disagree concerning whether an objective, reasonable person would question my impartiality in this case. However, the affidavit of Robert F. Drinan, S.J. indicates that at least one such teacher believes my impartiality would be questioned.

In these circumstances, the advice the United States Attorney for the District of Massachusetts gave to one of my colleagues

10

concerning another case involving alleged public corruption is also persuasive here. In successfully suggesting that the district judge recuse himself in <u>United States v. Nicholas Mavroules</u>, the United States Attorney wrote:

> Whatever the outcome [of the case], there will be ample opportunity for criticism and second-guessing of the participants in this litigation. The contacts identified by the court leave the court, and the litigative process, open to questioning (particularly in hindsight) as to whether the playing field was a level one or not, whether or not the identified contacts and relationships amount to a legal basis for recusal. It is precisely this kind of second-guessing that the court is already taking steps to avoid by bringing this issue to a head at the earliest possible time. If there are other judges on this court who do not have the kind of contacts identified here, as a pragmatic matter, this court and the litigants can avoid creation of even a shadow of a doubt as to the fairness and rectitude of this process by reassigning this case now.

798 F. Supp. 61, 62 (D. Mass. 1992).

The United States District Court for the District of Massachusetts now has a full complement of judges. <u>Compare Mavroules</u>, 798 F. Supp. at 61 (judge vacancy rate then about forty percent). Although every case involves the exercise of discretionary judgment, any member of this court to whom this case is assigned will be interpreting and applying the same law; if the defendant is convicted, any judge will be interpreting and applying the same legally-binding Guidelines in imposing sentence. This case can be readily and randomly reassigned to another member of the District Court. I have decided it is most appropriate that it be reassigned.

In reaching this decision, I have concluded that it is in the best interest of the administration of justice that I, rather than

11

Mr. Kendall, withdraw. The United States Attorney's offer to reassign Mr. Kendall's role as one of the prosecutors in this case, if necessary to avoid any reasonable appearance of impropriety I might find, may be a permissible means of resolving the issue of recusal. See Murphy, 768 F.2d at 1540 (If the issue of recusal based on relationship between judge and prosecutor had been raised, the United States Attorney "might have stepped aside and allowed the case to be tried by a member of his office."). It is not, however, the most appropriate means of doing so in this case.

Cases in this District Court are randomly assigned in order to prevent judge-shopping and thus promote public confidence in the administration of justice. See Mavroules, 798 F. Supp. at 61. Permitting Mr. Kendall to withdraw to prevent my disqualification might abet the mistaken public perception that the government can in the District of Massachusetts influence who will preside in a particular case. Therefore, in the present circumstances, it is preferable that I disqualify myself and allow this case to be randomly reassigned.