UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 01-10384-MLW |
| | ) | |
| GARY LEE SAMPSON | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                        March 17, 2014

This Memorandum is based on the part of the transcript of
the January 21, 2014 hearing in which the court explained its
preliminary view that its recusal is not required under 28
U.S.C. §455(a) on the basis of its association with Assistant
United States Attorney Zachary Hafer. This Memorandum adds
headings and citations, clarifies and amplifies some language,
and, in footnotes, addresses some subsequent events.

\* \* \* \* \* \*

I.    INTRODUCTION

As suggested by the government in its December 20, 2013
submission, I have seriously considered whether I should now
recuse myself sua sponte pursuant to 28 U.S.C. §455(a), which
requires a judge's disqualification if his impartiality might
reasonably be questioned, unless the parties waive the ground
for disqualification under 28 U.S.C. §455(e). Based on the

facts, which I will describe in detail, and the applicable legal standards, I now believe that my recusal is not permissible or, if permissible, appropriate. However, this view has necessarily been developed without the benefit of briefing by the parties. Therefore, I am directing the parties to order the transcript of this part of the proceeding on an expedited basis and, after considering my analysis, file, by January 28, 2014, either a motion for recusal or a statement that the party does not request my disqualification.

More specifically, in response to the invitation in the November 29, 2013 Order to raise issues to be addressed at the January 21, 2014 hearing, the government stated that the court should address whether its recusal is necessary and appropriate because Assistant United States Attorney Zachary Hafer, who did not begin participating in this case until 2010, is now lead counsel for the government, and because of the First Circuit's reasoning in In re Bulger, 710 F.3d 42 (1st Cir. 2013).

When Mr. Hafer first appeared, as the fourth prosecutor in this case, in 2010, I promptly disclosed the facts regarding our relationship in an August 23, 2010 written Memorandum and Order. The government and Sampson each twice agreed that: (1) I was not actually biased and, therefore, there was no issue of my possible recusal under 28 U.S.C. §455(b)(1); (2) a reasonable

person could not question my impartiality and, therefore, there was no basis for my recusal under §455(a); and (3) in any event, the government and Sampson waived any objection to my participation under §455(a) pursuant to §455(e). See Gov't's Resp. to Court's Aug. 23, 2010 Order; Sampson's Resp. to This Court's Order of Aug. 23, 2010; Aug. 30, 2010 Tr. at 4.

The government, and implicitly the defendant, reiterated at the January 21, 2014 hearing that there is no contention that I am actually biased or prejudiced, which would, if true, require recusal under §455(b)(1). Nevertheless, the government states that Mr. Hafer's new status and In re Bulger are "significant" developments that necessitate the court revisiting its 2010 decision concerning recusal.

For the reasons I will describe, In re Bulger does not establish a new, substantially expanded legal standard for recusal under §455(a). Without the benefit of a motion to recuse and briefing by the parties, I do not find that recusal sua sponte is either permissible or appropriate. I will, as I said, provide the parties an opportunity to consider my reasoning and to move for my recusal if either perceives a proper basis for doing so. If a motion is filed, I will carefully consider and decide it.

II. LEGAL STANDARD

It is important to start with the applicable standard and to explain why the In re Bulger decision does not alter the jurisprudence of the First Circuit concerning §455(a), which is consistent with the jurisprudence throughout the United States.

In In re Bulger, the First Circuit began its analysis of the standard that controls recusal decisions by quoting the applicable statute. It wrote: "The governing statute, 28 U.S.C. §455(a), provides that a judge shall disqualify himself from any proceeding in which his impartiality might reasonably be questioned." 710 F.3d at 45. The phrase "might reasonably be questioned" recognizes that reasonable people might differ in their views as to whether a judge's impartiality should be questioned in a particular set of circumstances.

In addition to using the statutory language "might reasonably be questioned," the First Circuit in In re Bulger also, essentially interchangeably, employed the standard of whether a reasonable person "would" question the judge's impartiality. See id. at 43, 46.

In In re Bulger, quoting its earlier decision in In re Allied-Signal, the First Circuit emphasized that:

> The disqualification decision must reflect not only
> the need to secure public confidence in proceedings

4

> that appear impartial, but also the need to prevent
> parties from too easily obtaining the disqualification
> of a judge, thereby potentially manipulating the
> system for strategic reasons, perhaps to obtain a
> judge more to their liking.

In re Bulger, 710 F.3d at 47 (quoting In re Allied-Signal Inc.,
891 F.2d 967, 970 (1st Cir. 1989)[1]). "Hence," the First Circuit
wrote, "a district judge asked to recuse is not to use the
standard of Caesar's wife, the standard of mere suspicion." Id.
(quoting In re Allied-Signal, 891 F.2d at 970).

I discussed In re Allied-Signal in two decisions in United
States v. Salemme, another case involving Bulger. See United
States v. Salemme, 164 F. Supp. 2d 49 (D. Mass. 1998) ("Salemme
I"); United States v. Salemme, 164 F. Supp. 2d 86 (D. Mass.
1998) ("Salemme II"). In Salemme, the government attempted to
prompt my recusal based, in part, on grounds it had previously
waived. To the extent that they involve issues concerning a
prior waiver, Salemme and the instant case are analogous.

In Salemme I, relying substantially on In re Allied-Signal,
I wrote:

> [A] judge must "disqualify himself in any proceeding
> in which his impartiality might reasonably be
> questioned." §455(a). "'Disqualification [under

---

[1]    Recusal was sought in In re Allied Signal on the
ground that the brothers of two of the judge's law clerks were
members of law firms that represented parties in that case. See
In re Allied-Signal, 891 F.2d at 969.

§455(a)] is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a <u>reasonable basis</u> for doubting the judge's impartiality.'" <u>In re Allied-Signal</u>[, 891 F.2d at 970] (quoting <u>In re United States</u>, 666 F.2d 690, 695 (1st Cir. 1981)) (emphasis in original).

> [Section] 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have a reasonable grounds to question the neutral and objective character of the judge's rulings or findings . . . a high threshold is required to satisfy this standard. Thus, under §455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility, or disposition of a kind that a fair-minded person could not set aside when judging the dispute.

<u>Liteky v. United States</u>, 510 U.S. 540, 557-58 (1994) (Kennedy, J., concurring).

"The task of applying the objective standard to the facts grants a judge a degree of discretion in disqualification decisions under section 455(a) that is not present in section 455(b) decisions." [Susan B.] Hoekema, <u>Questioning the Impartiality of Judges: Disqualifying Federal District Court Judges Under 28 U.S.C. §455(a)</u>, 60 Temp. L.Q. 697, 727 (1987) (footnotes omitted).[2] Accordingly, the Court of Appeals for the First Circuit allows the district judge "a range of discretion" in deciding whether a reasonable, objective person would question his impartiality and reviews that decision only for abuse of discretion. <u>In re Allied-Signal</u>, 891 F.2d at 970.

There are competing considerations which at times must be weighed by a presiding judge in deciding whether to recuse himself under §455(a). As the Court of Appeals for the First Circuit has stated:

> [W]hen considering disqualification, the district court is <u>not</u> to use the standard of "Caesar's wife," the standard of mere suspicion (citation

---

[2]     Ms. Hoekema's article is also quoted in <u>In re Bulger</u>, 710 F.3d at 45.

omitted). That is because the disqualification decision must reflect _not_ _only_ the need to secure public confidence through proceedings that appear impartial, _but_ _also_ the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

* * * * * *

[Therefore,] the judge must . . . tread cautiously, recognizing, on the one hand, the great importance to the judicial institution of avoiding any appearance of partiality, while simultaneously remaining aware of the potential injustices that may arise out of unwarranted disqualification.

In re Allied-Signal, 891 F.2d at 970 (emphasis in original).[3]

Salemme I, 164 F. Supp. 2d at 51-52 (alterations in original).

This framework is essentially reiterated in In re Bulger, 710 F.3d at 45, 47. Therefore, it has been recently reaffirmed.

In In re Allied-Signal, the First Circuit also made two points of particular significance in the instant case, both of which were also discussed in Salemme I. First, the court noted that "the more common the potentially biasing circumstances and the less easily avoidable it seems, the less that circumstance will appear to a knowledgeable observer as a sign of partiality." In re Allied-Signal, 891 F.2d at 971, discussed in Salemme I, 164 F. Supp. 2d at 82. As the Seventh Circuit has

---

[3]     The First Circuit also quoted this language from In re Allied Signal in In re Bulger, 710 F.3d at 47.

observed, "[i]n today's legal culture friendships among judges and lawyers are common. They are more than common; they are desirable." United States v. Murphy, 768 F.2d 1518, 1537-38 (7th Cir. 1985).

The second particularly significant point for purposes of this case made by In re Allied-Signal is that "the greater the extent to which the potentially disqualifying circumstance facilitates the just and efficient resolution of the case, the less likely a knowledgeable observer will consider it a sign of judicial partiality." In re Allied-Signal, 891 F.2d at 972; see also Salemme I, 164 F. Supp. 2d at 83.

In the two Salemme decisions, I also discussed the effect of waivers given by the parties under §455(e). See Salemme I, 164 F. Supp. 2d at 52; Salemme II, 164 F. Supp. 2d at 94-96. Section 455(e) provides that where, as here, the only basis for recusal is an appearance of partiality under §455(a), the parties may, after "full disclosure on the record of the basis for any disqualification," waive this ground for recusal. See also Summers v. Singletary, 119 F.3d 917, 920 (11th Cir. 1997); Salemme I, 164 F. Supp. 2d at 52.

"The law is well settled that one seeking the disqualification of the judge must do so at the earliest moment after knowledge of the facts demonstrating the basis for such

disqualification." United States v. Kelly, 519 F. Supp. 1029, 1050 (D. Mass. 1981) (citing United States v. Patrick, 542 F.2d 381, 390 (7th Cir. 1976), cert. denied, 430 U.S. 931 (1977)). Accordingly, a waiver of grounds for recusal generally cannot be withdrawn at a later date. In United States v. Rogers, 119 F.3d 1377, 1382 (9th Cir. 1997), the defendant "approved of the district judge's continued service" after the pertinent facts were disclosed. Because of this "effective waiver under §455(e)," the Ninth Circuit rejected the defendant's subsequent motion to disqualify as untimely. See id. at 1383 (citing United States v. Branco, 798 F.2d 1302, 1304 (9th Cir. 1986)). Similarly, potential grounds for recusal that have been waived are not revived even when other potential grounds for recusal are discovered. See United States v. Conforte, 624 F.2d 869, 879-80 (9th Cir. 1980) (Kennedy, J.) (considering new possible grounds for bias or prejudice, but declining to consider grounds to which no objection was made previously), cert. denied, 449 U.S. 1012 (1980).

The First Circuit reiterated and applied the standard defined in In re Allied-Signal in many cases prior to In re Bulger. For example, in United States v. Snyder, 235 F.3d 42 (1st Cir. 2000), the First Circuit held that "under §455(a) a judge has a duty to recuse himself if his impartiality can

9

reasonably be questioned; but otherwise he has a duty to sit."
Id. at 46. The First Circuit also stated that "an erroneous
recusal may be prejudicial in some circumstances," and that even
when no prejudice occurs, "the unnecessary transfer of a case
from one judge to another is inherently inefficient and delays
the administration of justice." Id. (citing United States v.
Arache, 946 F.2d 129, 140 (1st Cir. 1991)). In In re Boston's
Children First, 244 F.3d 164 (1st Cir. 2001), the First Circuit
reiterated that the issue of recusal must be analyzed from the
perspective of "an objective, knowledgeable member of the
public," and that the district court must remain aware of the
potential injustice that may arise from unwarranted
disqualification. See Id. at 167.

III. THE RELEVANT FACTS

The facts that an objective, knowledgeable member of the
public would know in this case include the following.

The indictment was filed on October 24, 2001. The case was
assigned to me on the same day.

My pretrial orders included two lengthy decisions denying
Sampson's challenges to the constitutionality of the Federal
Death Penalty Act, 18 U.S.C. §3591. One, a 13-page published
decision, rejected a challenge based on Ring v. Arizona, 536
U.S. 584 (2002), and additional related arguments. See United

10

States v. Sampson, 245 F. Supp. 2d 327 (D. Mass. 2003). The second, a 59-page published decision, denied a wide range of constitutional arguments, including one based on the significant risk of executing innocent individuals. See United States v. Sampson, 275 F. Supp. 2d 49 (D. Mass. 2003).

Sampson pled guilty on September 9, 2003.

Voir dire began September 18, 2003, and was conducted over 16 days.

The trial to determine Sampson's sentence began on November 5, 2003. Evidence was presented on 20 trial days over six weeks, concluding on December 18, 2003. I made numerous rulings on issues not addressed by the First Circuit precedent or, in some instances, by any other jurisprudence. Some of these decisions are memorialized in an 83-page published decision. See United States v. Sampson, 335 F. Supp. 2d 166 (D. Mass. 2004).

The jury deliberated for three days. It returned special findings and jury verdicts on December 23, 2003. The jury found unanimously that Sampson should be sentenced to death.

On January 26, 2004, I denied Sampson's post-trial motions for a new trial, among other things. A Memorandum and Order based on the transcript of that proceeding was issued on August 26, 2004. See United States v. Sampson, 332 F. Supp. 2d 325 (D. Mass. 2004). The law concerning the motion for a new trial

11

required me to consider the credibility of the witnesses and to express my evaluation of their testimony. On the subject of whether Sampson suffered from a mental illness, I stated:

> Where, as here, the court is deciding a Rule 33 motion for a new trial, it may, and indeed must, consider its own evaluation of the credibility of the evidence and it may, in certain limited circumstances, grant a new trial if it disagrees with the jury's judgment. In this case, if the decision were to be made by the court rather than the jury, the court would have found that Sampson at least had a mental illness, bipolar disorder.

332 F. Supp. 2d at 330-31 (citations omitted). Nevertheless, for the reasons I explained, I denied the motion for a new trial.

On January 29, 2004, after hearing statements from members of the victims' families, I sentenced Sampson to be executed in New Hampshire, in part so the victims' families could more easily attend. See United States v. Sampson, 300 F. Supp. 2d 275 (D. Mass. 2004); United States v. Sampson, 300 F. Supp. 2d 278 (D. Mass. 2004).

Sampson filed a notice of appeal on January 29, 2004. The First Circuit heard argument on October 4, 2006.

On May 7, 2007, the First Circuit affirmed the decision that Sampson be executed. See United States v. Sampson, 486 F.3d 13 (1st Cir. 2007). Among other things, the First Circuit stated that: "Although this was an emotion-laden trial, the district court appears to have gone the extra mile to ensure the jury

12

remained focused on the evidence and free from extraneous influences." Id. at 47. The First Circuit also wrote: "The district court handled the case patiently and sensitively." Id. at 51. The First Circuit concluded that: "We are persuaded that the sentencing proceedings in this case were conducted fairly and with scrupulous attention to the process required by law." Id. at 52.

On June 25, 2008, as required by 28 U.S.C. §2255 and 18 U.S.C. §3599, I appointed new counsel to represent Sampson in post-conviction proceedings. Sampson filed a motion under §2255 on May 11, 2009, and that motion was amended on March 29, 2010.

Mr. Hafer entered an appearance for the government on April 30, 2010. On August 23, 2010, I issued a Memorandum and Order describing my relationship with him, discussing the standards for disqualification if a judge's impartiality might reasonably be questioned under 28 U.S.C. §455(a), expressing the tentative view that my recusal was not required, and requesting the parties' responses. As I wrote:

> Mr. Hafer is married to [NAME REDACTED]. [HIS WIFE'S] father, [NAME REDACTED], and I practiced law together in the firm of Sullivan and Worcester from 1977 to 1981. We have remained friends. I met Mr. Hafer in 2002, when I spoke at a class at the University of Virginia Law School in which [HIS WIFE] and he were enrolled. In about 2003 or 2004, at the invitation of the [WIFE'S] family, I attended Mr. Hafer's wedding, and my wife and I undoubtedly gave the couple a gift.

13

> I have also occasionally given [HIS WIFE] and Mr.
> Hafer, among many others, career advice, including
> concerning their respective interests in becoming
> prosecutors. In response to a question from the United
> States Attorney and/or one of his Assistants, I
> recommended Mr. Hafer's appointment as an Assistant
> United States Attorney. Pursuant to my usual practice
> as Chief Judge, I presided at the ceremony at which
> Mr. Hafer was sworn-in as an Assistant United States
> Attorney. I may have also supported [HIS WIFE'S]
> appointment as an Assistant District Attorney [IN
> MASSACHUSETTS], following her service as a prosecutor
> in Manhattan. In addition, in about June, 2010, I
> recommended [MR. HAFER'S WIFE] for a part-time
> teaching position at [A LOCAL LAW SCHOOL] and am
> informed that she has been given that position.

Aug. 23, 2010 Mem. & Order 1-2. In August, 2010 I analyzed the

recusal issues under In re Allied-Signal, the foundation for the

First Circuit's decision in In re Bulger. See In re Bulger, 710

F.3d at 47 (citing In re Allied-Signal, 891 F.2d at 970).

As Mr. Hafer has noted, there has been no material change

in our association since 2010. We have not since that time, I

believe, seen each other, been in each other's presence, or

spoken to each other outside the courthouse.[4]

---

[4] At the January 21, 2014 hearing, Mr. Hafer reminded
the court of another relevant fact, which was reiterated in the
government's January 30, 2014 Response to Court's Order
Regarding Recusal: "[T]here was a meeting at the Court's
residence between the Court, [Mr. Hafer], and [Mr. Hafer's] wife
in approximately the winter of 2008 to discuss in general terms
various career opportunities for [Mr. Hafer's] wife." Id. at 3
n.1. I considered this information as part of my analysis
concerning whether my recusal, sua sponte, is required or
appropriate.

The same day I issued my Memorandum and Order concerning Mr. Hafer, August 23, 2010, the government filed a written response, stating that: it did not believe that my recusal for actual bias or prejudice was required; it did not believe that a reasonable person could question my impartiality, and, therefore, it did not believe that recusal was justified under 28 U.S.C. §455(a); and, in any event, it waived any objection under §455(e). Sampson responded, taking the same positions, on August 25, 2010.

At the hearing on August 30, 2010, I offered the parties an opportunity to question me further about my relationship with Mr. Hafer. They declined. Both parties confirmed the positions stated in their written responses.

Evidentiary hearings on Sampson's §2255 claim that he had been deprived of his right to 12 impartial jurors were held on November 18, 2010, March 18, 2011, and August 8, 2011. On October 20, 2011, I issued a decision on that claim, finding that Sampson was entitled to a new sentencing proceeding, essentially because of persistent perjury by a juror in answering important questions during jury selection. See United States v. Sampson, 820 F. Supp. 2d 151 (D. Mass. 2011). In another decision issued on the same day, I summarily denied some, but not all, of the other claims asserted in Sampson's

§2255 motion. See United States v. Sampson, 820 F. Supp. 2d 202 (D. Mass. 2011).

The government filed a motion asking me to certify an interlocutory appeal under 28 U.S.C. §1292(b). I had the authority not to certify the matter for appeal. See United States v. Sampson, Cr. No. 01-10384-MLW, 2012 WL 1633296, at *9 (D. Mass. May 10, 2012) (citing Swint v. Chambers County Comm'n, 514 U.S. 35, 47 (1995); Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 145-46 (E.D.N.Y. 1999) (Weinstein, J.)). However, over Sampson's opposition, I exercised my discretion to allow the government to pursue the appeal and allowed the motion to certify the questions on May 10, 2012. See id. at *15.

On July 25, 2013, the First Circuit affirmed my decision ordering a new sentencing proceeding. See United States v. Sampson, 724 F.3d 150 (1st Cir. 2013). The First Circuit clarified the applicable legal standard, and wrote that: It was "manifest" that the juror in question failed to answer material voir dire questions honestly; the materiality of the pertinent questions was "nose-on-the-face plain"; and "if fully informed of [the relevant factors], any reasonable judge would have found that the cumulative effect of those factors demonstrated bias (and, thus, a valid basis for excusal for cause)." Id. at 166,

168. Therefore, the First Circuit agreed that Sampson's death sentence must be vacated and that a new sentencing proceeding is required.

Mandate issued on November 15, 2013. On November 29, 2013, I scheduled a status conference and ordered reports from the parties on various issues, including whether there are any other matters that should be addressed at the status conference.

On December 2, 2013, Assistant United States Attorney John A. Wortmann, Jr., who was one of the original three prosecutors in this case, filed an Assented-to Motion for Leave to Withdraw because of family health issues. As I understand it, the other two original prosecutors have left the office. I would like to grant Mr. Wortmann's motion, but I am going to defer deciding it until the question of my possible recusal is resolved.[5]

The government's Memorandum in Response to the November 29, 2013 Order stated that the government "believes the court should address the issues it raised in its August 23, 2010 Memorandum" concerning recusal in light of two developments: the fact that Mr. Hafer will now be the lead Assistant United States Attorney assigned to the case, and the First Circuit's decision in In re Bulger. See Mem. of U.S. in Resp. to the Court's Nov. 29, 2013 &

---

[5] Mr. Wortmann's Motion for Leave to Withdraw was subsequently allowed. See Jan. 30, 2014 Order ¶3.

17

Dec. 5, 2013 Orders 7-9. Sampson, in his January 15, 2014 Supplemental Response to this Court's Order of Nov. 29, 2013, reiterated his original position that recusal is not appropriate, and maintained that In re Bulger does not alter the applicable legal standard.

The docket in this case reflects at least 230 orders that I have issued, some of which decided multiple matters. In addition, I have made hundreds, if not more, oral rulings.

There are now approximately 83 Assistant United States Attorneys in the Criminal Division of the office of the United States Attorney for the District of Massachusetts, according to its website. See http://www.justice.gov/usao/ma/divisions.html. They include, in addition to Mr. Wortmann, Assistant United States Attorney Mark Quinlivan, who had a leading role in responding to the §2555 motion and the appeal of my decision vacating Sampson's death sentence.

An indictment in United States v. Alvarez-Bastidas et al., Cr. No. 09-10216-MLW, was filed on July 22, 2009. That case involved eight defendants extradited from Colombia on charges of conspiracy to import cocaine into the United States. Mr. Hafer was the lead prosecutor in the case from its inception. A jury trial on the charges against defendant Gustavo Castro-Caicedo was conducted by me in September, 2012. According to my

examination of the record, neither the United States Attorney's Office, particularly Mr. Hafer, nor the court thought the issue of the relationship between Mr. Hafer and the court was sufficiently substantial to require disclosure or discussion of possible recusal in that case.

In 1994, the United States Attorney's Office took the position in United States v. Sawyer, Cr. No. 94-10168-MLW, that my disqualification under 28 U.S.C. §455(a) was neither necessary nor appropriate, where the prosecutor had been my part-time personal assistant in the United States Attorney's Office, I later successfully recommended him for employment in that office, and I had recently officiated his wedding. In Sawyer, the government offered to replace the lead prosecutor, if necessary, to keep me as the judge in the case.

In a September 2, 1994 Memorandum and Order, I ruled that, under In re Allied-Signal, it would be permissible for me to preside in the Sawyer case. However, in view of the confluence of several unique factors, I recused myself. Among those factors was my desire not to encourage the public perception that the United States Attorney could influence which judge would preside in a criminal case by its selection of a particular person to prosecute it. See United States v. Sawyer, Cr. No. 94-10168-MLW, slip op. at 12 (D. Mass. Sept. 2, 1994). In Sawyer, the

19

prosecutor had a long history with the case and I had none. In Sampson, the situation is essentially the reverse.

IV.  CONCLUSION

As I wrote in Salemme I, and as remains true: "When I am faced with a discretionary decision at the outset of a case, absent some countervailing consideration, I usually recuse myself because the case can be easily reassigned and proceed efficiently before some judge as to whom no legitimate issue has been raised." Salemme I, 164 F. Supp. 2d at 83. The instant case, however, is not one in which I, at this time, find I have the legitimate discretion to recuse, or that the case could proceed as easily before another judge without my long history with it.

In the circumstances I have described, I do not find that any reasonable observer might or could question my impartiality.

It is disheartening that despite the industrious best efforts of the prosecutors, the defense lawyers, and the court, another trial must be conducted to determine whether Sampson should be sentenced to death. However, at this time, without the benefit of a motion and briefing by the parties, I perceive no valid reason for my recusal.

"In enacting §455(a), Congress stated that its standards 'should not be used by judges to avoid sitting on difficult or

20

controversial cases.'" <u>Salemme II</u>, 164 F. Supp. 2d at 94 (quoting H.R. Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355). It appears to me at this point that my recusal would be an abdication of my responsibility and an imposition on my colleagues. It would also delay the progress of this case and, rightly or wrongly, encourage the injurious perception that the government can, by its selection of a prosecutor, "manipulate[e] the system for strategic reasons, perhaps to obtain a judge more to their liking." <u>In re Allied-Signal</u>, 819 F.2d at 970.

If the United States Attorney's Office is concerned that participation by both Mr. Hafer and me will threaten the finality of a death sentence imposed after retrial, Mr. Hafer may move to withdraw. That is entirely up to the United States Attorney.[6] However, at this time, I do not find that my recusal <u>sua sponte</u> is required, appropriate, or indeed permissible.

As indicated earlier, the parties are ordered to obtain the transcript of my present analysis of the recusal question on an expedited basis. By January 28, 2014, the parties shall file either a motion seeking my disqualification with a supporting

---

[6] The government subsequently reported that Mr. Hafer will continue to represent it in these proceedings. <u>See</u> Gov't's Response to Court's Order Regarding Recusal at 11.

memorandum, or state that no such motion will be filed. A response to any such motion shall be filed by February 4, 2014.

We have all had considerable time to think about this issue. This schedule will permit the question of whether or not I will continue to participate in this case to be resolved as promptly as possible. That is important because any question about which judge will preside will impede the progress of this case.[7]

---

[7]    On January 28, 2014, Sampson reported that he does not intend to file a motion for recusal based on the court's association with Mr. Hafer. See Sampson's Resp. to This Ct.'s Order of Jan. 22, 2014 Regarding Recusal.

The government, after being given an extension of time to respond, stated that it "does not seek the Court's recusal based on its association with . . . Assistant U.S. Attorney" Hafer. Gov't's Response to Court's Order Regarding Recusal at 1. However, the government objected to what it characterized as an "insinuation" that Mr. Hafer was chosen as lead counsel in bad faith to cause my disqualification. Id. at 2. It asked that I clarify that the decision not to recuse is based solely on the fact, with which the government agrees, that a reasonable person could not question my impartiality. See id. at 2, 6-7.

As described earlier, §455(a) requires a judge to decide if a fully informed, reasonable person might question his impartiality. See In re Allied-Signal, 891 F.2d at 970; In re Bulger, 710 F.3d at 45; Snyder, 235 F.3d at 46; Salemme I, 164 F. Supp. 2d at 51-52. That test has governed my decision concerning whether to recuse sua sponte.

Section 455(a) is premised on the principle that reasonable appearances are important to public confidence in the integrity of the administration of justice. As also explained earlier, a judge has a duty to not encourage the perception that litigants can manipulate who will preside in a case for strategic reasons. See In re Allied-Signal, 891 F.2d at 970; In re Bulger, 710 F.3d

V.   ORDER

It is hereby ORDERED that this Memorandum shall be served on the parties and made part of the record in this case.

_Mark P. Wolf_
UNITED STATES DISTRICT JUDGE

---

at 47; Sawyer, Cr. No. 94-10168-MLW, slip op. at 12. Therefore, for example, in In re Cargill, the First Circuit denied a request to consider issuing a writ of mandamus in a §455(a) case because of its concern that doing so after a waiver by the moving party and subsequent decisions adverse to it would "run a risk of eroding public confidence in the courts by seeming to reward a litigant for its gamesmanship." 66 F.3d 1256, 1263 (1st Cir. 1995). Events leading up to a request for recusal, including a prior waiver by a party and later decisions adverse to it, are part of the information that a fully informed, reasonable person would have in deciding whether he or she questions the judge's impartiality. Accordingly, the evolution of Mr. Hafer's role in this case is relevant to the required analysis.

Just as the judge's actual state of mind is not the focus for deciding whether a reasonable person might question his or her impartiality, see In re Bulger, 710 F.3d at 46, the actual motives of the litigants may not be relevant. Cf. In re Cargill, 66 F.3d at 1264. At the January 21, 2014 hearing, and in this Memorandum, the court has not, explicitly or implicitly, decided the reason for the government's suggestion that the issue of recusal be revisited. Rather, as stated at the January 21, 2014 hearing, if this was a case in which I had the legitimate discretion to disqualify myself, I would be obligated to consider, among other things, whether doing so would, "rightly or wrongly, encourage the injurious perception that the government can by its selection of a prosecutor . . . 'manipulate the system [for strategic reasons,] perhaps to obtain a judge more to their liking.'" Jan. 21, 2014 Tr. at 30 (quoting In re Allied-Signal, 891 F.2d at 970).

Although the court has not revised its analysis to remove relevant facts, the Government's Response to the January 22, 2014 Order provides its explanation for the evolution of Mr. Hafer's role in this case.