UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
        v.                    )      Cr. No. 01-10384-MLW
                              )
GARY LEE SAMPSON              )

ORDER

WOLF, D.J.                                          March 17, 2014

It is hereby ORDERED that the parties shall, before the March 18, 2014 hearing, review the attached 2003 pretrial Orders, and materials concerning jury selection, which relate to matters that will be addressed at that hearing.

UNITED STATES DISTRICT JUDGE

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 01-10384-MLW |
| | ) | |
| GARY LEE SAMPSON | ) | |

ORDER DOCKETED

WOLF, D.J.                                          November 20, 2002

On November 19, 2002, the government filed a Notice of Intent to Seek the Death Penalty in this case. Accordingly, it is hereby ORDERED that:

1. A scheduling conference shall be held on December 6, 2002, at 10:00 a.m.

2. Counsel shall, by 12:00 noon on November 26, 2002, confer and file, jointly if possible, a statement of the issues that they propose be addressed at the scheduling conference, including but not limited to a list of the pending motions that they request be scheduled for hearing and the order in which they request that they be resolved.

UNITED STATES DISTRICT JUDGE

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 01-10384-MLW |
| | ) | |
| GARY LEE SAMPSON | ) | |

ORDER

WOLF, D.J.                                        January 21, 2003

Defendant Gary Sampson was arraigned on the Second Superseding Indictment on January 17, 2003. As stated following his arraignment, it is hereby ORDERED that:

1. The government shall, by February 14, 2003, provide to the defendant the discovery described in Rules 116.1(C)(1) and 116.2(B)(1) of the Local Rules of the United States District Court for the District of Massachusetts (the "Local Rules").[1]

2. Defendant shall, by February 14, 2003, provide to the government the discovery described in Local Rule 116.1(D).[2]

3. The parties shall comply with Local Rules 116.3 (concerning discovery motion practice), 116.4 (concerning tape recordings and transcripts), 116.6 (concerning declination of discovery and protective orders), 116.7 (concerning the duty to supplement discovery disclosures), 116.8 (concerning notification

---

[1] Federal Rule of Criminal Procedure 16, to which Local Rule 116.1(C)(1) refers, was amended effective December 1, 2002. For the purpose of this Order, Local Rule 116.1(C)(1) requires the production of documents and information described in the present Federal Rule of Criminal Procedure (a)(1)(A)-(F).

[2] For the purpose of this Order, Local Rule 116.1(D) requires the production of the documents and information described in the present Federal Rule of Criminal Procedure 16(b)(1)(A) and (B).

to relevant law enforcement agencies of discovery obligations), and 116.9 (concerning preservation of notes).

4.   Defendant shall, by April 4, 2003, file any motions to dismiss and motions to suppress.[3]  The government shall respond by May 2, 2003.  Defendant shall, by May 16, 2003, file any reply.

5.   Defendant shall, by May 5, 2003, file any notice required by Federal Rule of Criminal Procedure 12.2.

6.   The parties shall, by May 5, 2003, make the disclosures concerning their expert(s) required by Federal Rules of Criminal Procedure 16(a)(1)(G) and 16(b)(1)(C).

7.   A scheduling conference shall by held on May 22, 2003, at 2:30 p.m.

8.   The parties shall be prepared to commence hearings on any motions to dismiss or to suppress on June 11, 2003.  Such hearings shall continue from day to day until concluded.

9.   The parties shall, by June 24, 2003, file any supplements to their expert disclosures prompted by the filings made on May 5, 2003 pursuant to paragraph 6 hereinabove.

10.   The government shall, by June 24, 2003, provide defendant with the discovery described in Local Rule 116.2(B)(2).

11.   By July 14, 2003, the parties shall file trial briefs,

---

[3]The date for the filing of defendant's motions was established with the understanding that David Ruhnke, Esq., his counsel, is now on trial in a capital case in Pennsylvania and will probably be unavailable for the purposes of this case for about 45 days.  Mr. Ruhnke shall inform the government and the court when his trial in Pennsylvania is concluded and address whether the date for the filing of motions can reasonably be advanced.

proposed jury questionnaires, proposed jury instructions, and any motions in limine with supporting memoranda. Counsel for the parties shall confer and, to the maximum extent possible agree, on the proposed jury questionnaire and jury instructions. Their July 14, 2003 submissions shall identify any remaining disputes.

12. Hearings on the pending motions shall commence on August 12, 2003, and continue from day to day until concluded. After consultation with the parties, the court will then issue a further Pretrial Order concerning the disclosure of witnesses, their statements as defined in 18 U.S.C. § 3500(e), exhibits, and stipulations.

13. Jury selection will commence on September 15, 2003.

14. As agreed by the parties, the time between January 17, 2003 and April 4, 2003, when defendant's motions shall be filed, is excluded for Speedy Trial Act purposes, pursuant to 18 U.S.C. § 3161(h)(8)(A), because the ends of justice served by permitting defendant's counsel an adequate opportunity to prepare those motions outweighs the interest of the public and the defendant in a speedy trial.

15. The court retains its inherent authority to alter the deadlines established in this Order. The court may also alter any deadline for good cause shown by the motion of a party.

UNITED STATES DISTRICT JUDGE

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
            v.                    )    Cr. No. 01-10384-MLW
                                  )
GARY LEE SAMPSON                  )

ORDER

WOLF, D.J.                                        April 2, 2003

In response to defendant Gary Sampson's Motion-With Consent of
the United States-Extending the Time for Filing Defendant's
Pretrial Motions, it is hereby ORDERED that:

1.   The Motion (Docket No. 133) is ALLOWED;

2.   Defendant shall, by April 11, 2003, file any motions to
dismiss or to suppress;

3.   The government shall respond by May 9, 2003.

4.   Defendant shall, by May 20, 2003 (rather than May 21,
2003 as requested) file any reply.

5.   As previously ordered, a scheduling conference will be
held on May 22, 2003, at 2:30 p.m.

6.   As the court continues to intend to commence hearings on
any pending motions on June 11, 2003, it is unlikely that any
further extensions of filing dates will be granted.

7.   In addition to filing a paper copy of each submission,
the parties shall, by 5:00 p.m. the same day, transmit by e-mail an
electronic version of each document that is not being filed under

seal[1] to opposing counsel and an e-mail address in the Clerk's Office that the court will provide to the parties privately.  Each electronic version of a document shall: (a) be in Adobe Portable Document Format (PDF); (b) be prepared by converting the document from the word processor format to PDF rather than converting scanned images of the document to PDF; and (c) be labeled with the name that is below the caption (e.g., "Motion to Dismiss Based Upon . . . .").  The parties need not sign the electronic version of the documents.   To facilitate the successful transmission of the electronic filings, no more than four documents shall be submitted as part of any one e-mail message.

UNITED STATES DISTRICT JUDGE

---

[1]Documents filed under seal shall not also be submitted electronically. However, if any submission refers to a document or information that is sealed, a redacted paper version shall be filed for the public record.  The redacted version shall not be filed electronically.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA            )
                                    )
              v.                    )        Cr. No. 01-10384-MLW
                                    )
GARY LEE SAMPSON                    )

ORDER

WOLF, D.J.                                           May 23, 2003

     For the reasons described in court on May 22, 2003, it is hereby ORDERED that:

     1.   The documents relating to the defendant's Notice Pursuant to Federal Rule of Criminal Procedure 12.2 (Docket Nos. 150, 151, 157, 158, 163, 165, 166, 167, 172, 177) are UNSEALED.

     2.   The parties shall, by May 30, 2003, report whether they have reached an agreement concerning the procedures for the examination of defendant Gary Lee Sampson by the government's expert(s) pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B).  If no agreement has been reached, the defendant shall, by June 4, 2003, file a memorandum describing the procedures the parties have agreed upon, what disputes remain, the procedures proposed by the defendant, and the legal authority that supports his position.  The government shall respond by June 6, 2003.

     3.   The government shall, by June 5, 2003, submit its proffer regarding the alleged carjacking of William Gregory and the alleged North Carolina bank robberies described in its

Notice of Intent to Seek the Death Penalty.  The government shall submit with its proffer a memorandum explaining why it believes that the evidence it intends to offer satisfies the standards governing the admissibility of evidence during a sentencing hearing conducted pursuant to 18 U.S.C. §3593.  The defendant shall respond by June 9, 2003.

4.  The parties shall order a transcript of the May 22, 2002 conference and of all future proceedings.

5.  The defendant shall, by June 5, 2003, supplement his disclosures regarding the two doctors he has identified as possible expert witnesses to provide all of the information required by Federal Rule of Criminal Procedure 16(b)(1)(C).

6.  The defendant shall, by July 14, 2003, make the disclosures concerning any other expert(s) required by Federal Rule of Criminal Procedure 16(b)(1)(C).

_____/s/ Mark L. Wolf_____
UNITED STATES DISTRICT JUDGE

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
          v.                      )     CR No. 01-10384-MLW
                                  )
GARY LEE SAMPSON                  )

ORDER

WOLF, D.J.                                        June 16, 2003

     For the reasons described in court on June 16, 2003, it is hereby ORDERED that:

     1.   The government shall, by July 14, 2003, submit its proffer concerning the alleged aggravating factors regarding the vulnerability of the victim, obstruction of justice and future dangerousness.  The government shall submit with its proffer a memorandum explaining why it believes that the evidence it intends to offer satisfies the standards governing the admissibility of evidence during a sentencing hearing conducted pursuant to 18 U.S.C. §3593.  The defendant shall respond by July 29, 2003.  All filings relating to this proffer shall be SEALED, at least temporarily.

     2.   The government shall, by July 29, 2003, state its position on the question of whether the court has the authority to order a new trial, set aside a jury verdict or provide similar relief in a case prosecuted under the Federal Death Penalty Act after the jury has recommended a death sentence. See Fed. R. Crim. Pro. 29, 33; United States v. Lee, 89 F. Supp.

2d 1017, 1020-21 (E.D. Ark. 2000), rev'd on other grounds, 274 F.3d 485 (8th Cir. 2001).

3.   The government shall, by August 12, 2003, respond to the expert disclosures made by the defendant on July 14, 2003. See May 23, 2003 Order ¶6.

4.   A hearing on any pending motions will be held on August 12, 2003.

5.   As agreed by the parties, the period between June 16, 2003 and August 12, 2003 is EXCLUDED for purposes of the Speedy Trial Act.   The ends of justice served by allowing the parties sufficient time to, among other things, examine the defendant and prepare proffers of the evidence to be presented at trial, outweighs the best interests of the defendant and the public in a speedy trial.   See 18 U.S.C. § 3161(h)(8).

6.   Jury selection will commence on September 18, 2003 or September 23, 2003.

/s/ Mark L. Wolf<br>
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
          v.                      )   CR No. 01-10384-MLW
                                  )
GARY LEE SAMPSON                  )

ORDER

WOLF, D.J.                                    June 27, 2003

     For the reasons described during the telephone conference
with the prosecutor and defense counsel on June 25, 2003, it is
hereby ORDERED that:

     1.   The parties shall discuss, either in their trial briefs
or in separate memoranda filed by July 14, 2003, the law
governing any right the defendant may have to stipulate to facts
during the penalty phase that the government would prefer to
prove by introducing evidence.

     2.   The government shall, by July 14, 2003, report whether
it has finished interviewing witnesses on the issue of the
defendant's
future dangerousness and, if not, when it anticipates completing
its interviews and producing any exculpatory evidence that may
be generated by them.

     3.   Responses to any motions in limine shall be filed by
July 29, 2003.

     4.   With the agreement of the parties, statements (as
defined in 18 U.S.C. §3500(e) and Fed. R. Crim. P. 26.2(f)) of

witnesses each party intends to call in its or his case-in-chief during either the guilt phase or penalty phase shall be produced by September 3, 2003.

5.   The parties shall, by September 3, 2003, each submit a list of the names and addresses of witnesses to be called in each parties' case-in-chief during either the guilt phase or the penalty phase. If either party subsequently decides to call any other witness, that party shall promptly submit the name and address of that prospective witness.

6.   The parties shall, by September 3, 2003, confer and each file a list of exhibits to be offered in each parties' case-in-chief during either the guilt phase or the penalty phase.  The list shall identify any exhibits for which there is a dispute as to admissibility.

7.   The parties shall, by September 3, 2003, file a written stipulation of any facts that they agree are not in dispute.

8.   Nothing in this Order shall be construed to alter the time at which the government must disclose the results or reports of an examination conducted solely under Rule 12.2(c)(1) or the time at which the defendant must disclose the results and reports any examination on mental condition.

_____/s/ Mark L. Wolf_____
UNITED STATES DISTRICT JUDGE

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,      )
        Plaintiff,             )
                              )
        v.                    )     Cr. No. 01-10384-MLW
                              )
GARY LEE SAMPSON             )
        Defendant.            )

ORDER

WOLF, D.J.                                    June 27, 2003

For the reasons stated at the *ex* *parte* teleconference on June 25, 2003, and as agreed by the parties, it is hereby ORDERED that:

1.   The fire-walled Assistant United States Attorneys from the District of New Jersey, Marc Agnifilo and Kevin Walsh ("fire-walled AUSAs"), shall provide defense counsel with at least five days advance notice of the professions of the government expert(s) who will examine defendant with respect to his mental condition and of the tests that the expert(s) expect to perform.

2.   The mental health examinations of defendant conducted by government expert(s) shall be tape-recorded. The court will reconsider this ruling if the fire-walled AUSAs, upon further consideration of the issue, move to prohibit such tape-recording.

1

3.   The fire-walled AUSAs shall read the mental health reports prepared by the government expert(s) before filing the reports with the court.

4.   The fire-walled AUSAs shall file under seal as promptly as possible the affidavits required by paragraph 2(e) of the court's June 17, 2003 protective order. Persons who must submit affidavits include the fire-walled AUSAs and anyone assisting them in the District of New Jersey; the person in the Department of Justice in Washington, D.C. who is the contact for the fire-walled AUSAs; and the government's mental health expert(s) and anyone assisting the government expert(s) in connection with the examination of defendant.

/s/ Mark L. Wolf

_____
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
        v.                        )        Cr. No. 01-10384-MLW
                                  )
GARY LEE SAMPSON                  )

ORDER

WOLF, D.J.                                        August 15, 2003

    For the reasons described during the teleconference held on
August 15, 2003, it is hereby ORDERED that:

    1.   The parties shall, by August 28, 2003, file memoranda
addressing: (a) the permissible scope of victim impact testimony
by family of the victims; (b) the permissible scope of testimony
by the family of the defendant; (c) what measures, such as voir
dire, the court should consider to ensure that the jury is not
exposed to testimony that should be excluded.

    2.   The government shall, by August 19, 2003, file a
memorandum addressing the issues relating to the reliability of
its proffered evidence of future dangerousness raised by the
defendant in his response to the government's proffer.

    3.   The hearing previously scheduled to start on August 18,
2003 will commence on August 20, 2003, at 9:30 a.m. and continue
from day to day until concluded.


                                    /s/ Mark L. Wolf
                              UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
        v.                      )       Cr. No. 01-10384-MLW
                                )
GARY LEE SAMPSON                )


ORDER

WOLF, D.J.                                        August 28, 2003

        It is hereby ORDERED that:

        1.   The parties shall, by September 5, 2003, confer regarding proposed exhibits.

        2.   With the agreement of the parties, statements (as defined in 18 U.S.C. §3500(e) and Fed. R. Crim. P. 26.2(f)) of witnesses the government intends to call in its case-in-chief shall be produced by September 5, 2003.  The government shall simultaneously file, under seal, a copy of these statements with the court.

        3.   With the agreement of the parties, statements (as defined in 18 U.S.C. §3500(e) and Fed. R. Crim. P. 26.2(f)) of witnesses the defendant intends to call in his case-in-chief shall be produced by September 10, 2003.  The defendant shall simultaneously file, under seal, a copy of these statements with the court.

        4.   The government shall, by September 5, 2003, submit a list of the names and addresses of witnesses to be called in its case-in-chief.

        5.   The defendant shall, by September 10, 2003, submit a list

of the names and addresses of witnesses to be called in his case-in-chief.

6.   If either party subsequently decides to call any other witness, that party shall promptly submit the name and address of that prospective witness.

7.   The government shall, by September 5, 2003, file a list of exhibits to be offered in its case-in-chief.  The list shall identify any exhibits for which there is a dispute as to admissibility.

8.   The defendant shall, by September 10, 2003, file a list of exhibits to be offered in his case-in-chief.  The list shall identify any exhibits for which there is a dispute as to admissibility.

9.   The parties shall, by September 10, 2003, file a written stipulation of any facts that they agree are not in dispute.

10.  Nothing in this Order shall be construed to alter the time at which the government must disclose the results or reports of an examination conducted solely under Rule 12.2(c)(1) or the time at which the defendant must disclose the results and reports any examination on mental condition.

11.  The hearing previously scheduled to start on September 8, 2003 will commence on September 9, 2003, at 9:30 a.m. and continue from day to day until concluded.

                              /s/ Mark L. Wolf
                         UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
        v.                      )        Cr. No. 01-10384-MLW
                                )
GARY LEE SAMPSON                )

ORDER

WOLF, D.J.                                    September 18, 2003

For the reasons described in the closed lobby conference held on September 17, 2003, it is hereby ORDERED that:

1.   The parties shall, by 2:00 p.m. on September 24, 2003, confer regarding which prospective jurors, if any, the court should excuse for cause based solely on their responses to the juror questionnaires and file a report, under seal, stating which of the first 150 prospective jurors the parties agree should be excused for cause, and for each such prospective juror provide (a) the juror's name, (b) the juror's number, and (c) the number(s) of the particular answer(s) that the parties believe provide a proper basis for excusing the juror for cause.

2.   The parties shall confer, and by September 24, 2003, report on which motions or issues they request the court attempt to decide before individual voir dire begins.

3.   If the defendant seeks an extension of time beyond the fourteen day period provided for in Local Rule 7.1(b)(2) to respond to the government's motions in limine filed on September

12, 2003 and September 15, 2003, he shall file a motion seeking an extension of time by September 24, 2003.  The government's motion in limine concerning the defendant's waiver of his right to seek a downward departure may, however, need to be decided before individual voir dire begins.  Therefore, the defendant shall, at a minimum, report, under seal, by September 24, 2003, his position on that motion.

   4.  A conference regarding jury selection, which will be closed to the public, will be held on September 25, 2003, at 1:00 p.m.

            /s/ Mark L. Wolf
        UNITED STATES DISTRICT JUDGE

Good Morning, ladies and gentlemen. I want to welcome you to this proceeding of the United States District Court for the District of Massachusetts, which is being broadcast to my courtroom so that it can be observed by the public, and to thank you for coming here today.

I am Mark Wolf, a judge of the United States District Court for the District of Massachusetts here in Boston. I will be presiding over the case of <u>United States v. Gary Lee Sampson</u>. I will be discussing this case briefly with you in a moment.

First, I want to repeat my thanks for your participation in this important process of jury selection and, possibly, for your even more important service as a juror in this case. I know it is disruptive and inconvenient for many of you to be here today. If you are chosen to serve as a juror, it will undoubtedly be much more disruptive to your already busy lives.

However, jury service is both one of the most important opportunities and one of the most important obligations that citizens have in our American democracy. It can be, and I am sure in this case will be, a demanding duty. As jurors regularly report to my colleagues and me, however, jury service is frequently also one of the most fulfilling experiences they have ever had.

The jury is at the heart of the administration of criminal justice in the United States. Thomas Jefferson once said that if he

had to give up his right to have the people vote for the legislators who make laws or his right to have criminal cases decided by juries, he would give up the right to vote because "[t]he [application] of the laws is more important than the making [of] them."[1] That is how vital jury service is in our democracy.

Jurors generally represent the community in the administration of our criminal laws. That function will be particularly important in this case.

As I will explain, this is an unusual case. The defendant, Gary Sampson, has pled guilty to violating the laws of the United States by committing two carjackings that resulted in death in Massachusetts, and has confessed that he killed a third person in New Hampshire as well. Therefore, the jury in this case will not be required to perform its usual function of deciding whether the defendant is guilty as charged.

The law usually requires that a judge decide the sentence for a defendant who has pled guilty or been convicted. In this case, however, the prosecution is asking that Mr. Sampson be executed for his crimes. Therefore, in this case the jury, rather than the judge, will be required to decide whether the prosecution has proven that death is the appropriate penalty for Mr. Sampson's crimes or whether Mr. Sampson will instead be sentenced to life in prison without possibility of release – the only other possible

---

[1]Thomas Jefferson to L'Abbe Arnond, July 19, 1789.

sentence in this case.

In essence, in our democracy we have committed the decision on whether Mr. Sampson will be executed to citizens, representing a cross-section of the community, serving as jurors. We do this in an effort to assure that our community's values will be brought to bear in deciding the most profound question of whether Mr. Sampson will live or die. It is, therefore, important that the jury truly represent the community. The selection process is aimed at achieving a jury that is made up of people who will each be fair and impartial, and who together will really represent the community.

I recognize that I have just described a very formidable, and perhaps frightening, task. As I said earlier, I also know that for many of you being here today is inconvenient. For those who are selected as jurors, this case will involve some hardship as well as great responsibility.

As I also said, however, jury service is an opportunity and obligation that all citizens, including judges, have. Judges, including Supreme Court Justice Stephen Breyer, have served on juries. Once again, jurors regularly report that, despite the weighty responsibility and inconvenience, their service ultimately proved to be one of the most valuable and fulfilling experiences they ever had. We are all going to work hard to try to assure that the jurors in this case come to the same conclusion.

Now let me tell you what we will be doing today, and then give you some more information about the case.

First, as for today, when I finish these preliminary remarks, a questionnaire will be distributed to you. As you fill it out, please do not discuss the questions or your answers with anyone else in the room. Also, please understand that there are no right or wrong answers to the questions contained in the form. All we ask is that you answer the questions truthfully to the best of your ability. The questionnaires are not designed to pry into personal matters unnecessarily. By filling out the questionnaires, you will make the process of selecting a jury that is fair, impartial, and representative more informed, efficient, and convenient for you.

When you have filled out the questionnaire and given it to the court's staff, you will be free to leave. During the coming week, the questionnaires will be copied, and then reviewed by the attorneys working on this case and me.

The completed questionnaire will initially be reviewed only by the participants in this case and the court. They will not become part of the public record until I determine whether they include some sensitive information that should be kept confidential permanently. If they do, I intend to keep that information, and any possible further questioning concerning it, from being available to the public.

You must call in to the telephone number that you have been

4

given on Monday, September 29, 2003, after 5:00 p.m., and listen to a pre-recorded message that will tell you about your possible future service in this case. Some jurors will be told that they have been excused permanently. Some jurors will be told to come to court again on Tuesday September 30, or Wednesday, October 1 to participate further in the jury selection process. The final group of jurors will be told to call in at a later date for further instructions.

If you are concerned that service as a juror in this case will be a hardship for you, you will have an opportunity to describe that hardship on the questionnaire and, if you are not excused based on what you wrote, in person when you come back to court. Any request to be excused will be seriously considered. However, I cannot guarantee that you will necessarily be excused if you think jury service in this case would be a hardship for you, in part because of the importance of assuring that the jury represent a cross-section of the community.

The process of jury selection will continue for some of you beginning on Tuesday, September 30, as groups of jurors are called in daily for individual discussion about their ability to serve. Although it is not possible to predict exactly, I expect it will take up to three weeks to complete the selection of the jurors for this case.

If you are selected to serve, the trial is expected to start

5

by about October 20, 2003 and is expected to last up to 6 weeks. However, sometimes cases take longer than expected, so jurors should plan to be available until mid-December 2003.

Except when deliberating to decide the case, the jury will sit on Monday, Tuesday, Wednesday, and Thursday, from about 9:00 a.m. to 4:00 p.m., with time off for breaks and lunch. The jury will not sit on Fridays, unless it is deliberating, or on national or religious holidays. If the case is not concluded there will be a Thanksgiving break from at least Wednesday, November 26, 2003 through Sunday, November 30, 2003.

I do not plan to sequester the jury. Therefore, jurors should be able to go home every day.

It is important that the men and women who are selected as jurors in this case be able to listen to the evidence presented in court and decide, fairly and impartially, whether Mr. Sampson should be executed or, instead, be sentenced to life in prison without the possibility of release. I will be using the terms fairly and impartially at times during the jury selection process. Let me explain to you what I mean.

To serve fairly and impartially means to base a decision on the evidence presented in court, and the law as I will describe it, and not based on any possible bias or prejudice, or on anything that you have seen, heard, read or experienced outside the courtroom, including anything that you may have previously learned

from the media.

There has been publicity about this case. I expect that the media will continue to report on it. The mere fact that you may have read or heard something about the case does not mean that you cannot be a juror. The issue will be whether you can put aside -- not forget, but put aside -- what you have read, seen, or heard and decide the issues presented based on the information presented in court.   The purpose of the jury selection process is to try to insure that each person selected as a juror will be fair and impartial, and that the jury as a whole will fairly represent the community.

I am now going to tell you more about the jury's role in this case.

This criminal case has been brought by the United States government. I will sometimes refer to the government as the prosecution. The government is represented at this trial by Assistant United States Attorneys Frank Gaziano, George Vien, and John Wortmann, Jr., who I will ask to stand. The defendant is represented by Attorneys David Ruhnke, Stephanie Page, and Robert Sheketoff, who I will also ask to stand.

The defendant is Gary Sampson. He has been charged with two counts of carjacking resulting in death. Count one of the indictment charges, in effect, that on July 24, 2001, in connection with a carjacking, Mr. Sampson stabbed to death Phillip McCloskey

in Marshfield, Massachusetts. At the time of his death, Mr. McCloskey was 69 years old. Count two charges, in effect, that on July 27, 2001, Mr. Sampson, also in connection with a carjacking, stabbed to death Jonathan Rizzo in Abington, Massachusetts. At the time of his death, Mr. Rizzo was 19 years old. Although Mr. Sampson is not charged with this crime in this case, jurors will also hear evidence that on July 30, 2001, Mr. Sampson strangled to death Robert Whitney in Meredith, New Hampshire. At the time of his death, Mr. Whitney was 58 years old.

As I told you earlier, Mr. Sampson has pled guilty to the 2 charges against him. I am selecting a jury solely to decide whether Mr. Sampson will be executed for one or both of these crimes or instead be sentenced to life in prison without possibility of release.

Under the laws of the United States, each of the charges brought by the federal government can, if certain circumstances are proven, be punished by death. Such a charge is sometimes called a "capital offense." The prosecution is asking the jury to impose the death penalty.

Some of you may wonder why the death penalty is a possibility in this case in view of the fact that the laws of Massachusetts do not provide the death penalty for murder or any other violation of Massachusetts law. The reason is that this is a federal case, involving violations of the laws of the United States, rather than

a state case, involving violations of the laws of Massachusetts. Murder alone is not a federal crime. However, in 1994, Congress made carjacking resulting in death a federal crime that is punishable by death. Therefore, in this case, Mr. Sampson faces the possibility of execution because, in addition to killing Mr. McCloskey and Mr. Rizzo, he also stole or attempted to steal their automobiles in violation of federal law.

The most serious and difficult decision any jury can be asked to make is whether the death penalty should be imposed in a particular case. In the questionnaire that you will get shortly, and in the further process of questioning some of you individually, I will be asking you questions that relate to your ability to make this decision fairly and impartially. It may be useful for me to explain to you briefly how the federal death penalty statute involved in this case operates, so that you can begin to think about this subject as you prepare to answer the questionnaire.

In this case, the jury will have to decide what punishment will be imposed on Mr. Sampson. More specifically, the jury will have to decide if the prosecution has proven that Mr. Sampson is eligible to be executed and, if so, whether it has proven that execution is the appropriate penalty or whether Mr. Sampson should instead be imprisoned for life without the possibility of release.

More specifically, the government will have the opportunity to introduce evidence that seeks to prove beyond a reasonable doubt

that Mr. Sampson is eligible for the death penalty and that also seeks to prove beyond a reasonable doubt certain things referred to in the law as "aggravating factors." Aggravating factors are circumstances that, if proven, make the killings alleged particularly serious and, therefore, in the prosecution's view, reasonably justify imposing a more severe sentence on Mr. Sampson compared to others convicted of murder.[2] The government will bear the burden of proving alleged aggravating factors to every juror beyond a reasonable doubt.

Mr. Sampson will then have the opportunity to introduce information that seeks to establish by a preponderance of the evidence the existence of what are referred to as "mitigating factors." Mitigating factors are usually circumstances about the crime, or about Mr. Sampson's background or character, that would suggest that the death penalty is not the appropriate sentence in this case. A mitigating factor must only be proven by a preponderance of the evidence, which is a lower standard of proof than proof beyond a reasonable doubt. Mitigating factors do not have to be proven to the satisfaction of every juror. Any juror who finds a mitigating factor to have been proven by a preponderance of the evidence may consider that factor in deciding the appropriate sentence in this case.

Before a jury could vote to impose the death penalty, every

---

[2] See <u>Zant v. Stephens</u>, 462 U.S. 862, 877 (1983).

juror would have to be persuaded that certain threshold factors that make Mr. Sampson eligible for the death penalty had been proven beyond a reasonable doubt. In addition, in order to impose the death penalty, every juror would have to be persuaded that any proven aggravating factors sufficiently outweigh any mitigating factors that one or more jurors found existed to justify Mr. Sampson's execution. Even if the jury did not find any mitigating factors in this case, it would still have to be unanimously persuaded that any proven aggravating factors were themselves sufficient to justify a death sentence.

Unless every juror agrees, the jury may not impose the death penalty upon the defendant. If the government does not prove to the satisfaction of every juror that death is the appropriate penalty for Mr. Sampson, he will be sentenced instead to life in prison without the possibility of release.

You should understand that a jury is never required to find that a sentence of death is justified. The decision whether the government has proven that Mr. Sampson should be executed must ultimately be made by each juror himself or herself. As I said, Mr. Sampson can only be sentenced to death if the government has proven to each and every juror that Mr. Sampson should be executed rather than imprisoned for life without possibility of release.

If, however, every juror is persuaded that the death penalty should be imposed upon Mr. Sampson, I would be required, as the

judge, to sentence him to be executed. In other words, I could not change the jury's decision. The jury - and not the judge - will in this case be responsible for determining whether Mr. Sampson will live or die.

What I have just described is only an overview of the law applicable to a jury's consideration of the death penalty. If you are selected to serve on the jury, I will give you very detailed instructions concerning your duties and the law that must be followed in discharging them.

I have briefly described the applicable law to help you begin to think about the issues. During jury selection, I will be asking you whether you can fairly and impartially decide whether Mr. Sampson should be executed or instead spend the rest of his life in prison without possibility of release. Among other things, I will be seeking to determine whether, as a matter of moral, religious, philosophical or personal beliefs, you think that you could never vote to impose the death penalty under any circumstances. I will also be seeking to determine whether you think you would always vote to impose the death penalty in any case involving intentional, multiple murders. In essence, I will be searching to find out whether you can truly decide whether Mr. Sampson should live or die based on the evidence presented in court and your judgment concerning its implications in the context of the law as I will explain it, rather than based upon any preconceived ideas about the

death penalty that you might have.

As I said earlier, there are no right or wrong answers to any of the questions. I am asking them primarily because both the prosecution and Mr. Sampson are entitled to a jury that does not have its mind made up, one way or another, concerning whether Mr. Sampson should be sentenced to death or to life in prison without possibility of release before the evidence is heard and the law that the jurors must follow is explained in detail.

In addition, the parties also have the right to have to excuse a certain number of jurors who could be impartial. Your answers to the questionnaire and any subsequent questions will provide them information that they need to exercise their discretionary challenges.

Now, ladies and gentleman, although you have only heard briefly about this case this morning and, indeed, have heard no evidence as yet, it is extremely important that you do not discuss this case among yourselves or with anyone else. This is because a jury's verdict must be based on the evidence and free from outside influence. Therefore, I am ordering each of you not to discuss this case with your family, friends or any other person until I either excuse you, or if you are selected as a juror, until the case concludes. You may tell others that you may be a juror in this case, and may discuss the schedule with your family and employer, because they are entitled to know when you might not be available.

However, you are not to discuss anything else about this case until you are excused or, if you are a juror, until the trial concludes.

This means, among other things, that you may not speak to any member of the media about this case. There is legitimate public interest in this matter and the media may play a vital role in informing the public about it. It would, however, be improper for you to discuss this case, or your role in it, with them.

If anyone should ask to speak to you about the case, you should politely decline. If anyone persists, please inform the jury clerk or my deputy clerk promptly.

I also instruct you not to read, watch, or listen to any reports about this case in the media until you are either excused, or if you are selected as a juror, until the case concludes. If you should by chance encounter a news story in the newspaper, on the radio, on television, or on the internet, please just turn the page, change the channel, or close the screen. Do not read, listen to or watch anything related to this case.

In addition, please do not discuss this case or anything I have just said with any of the other potential jurors or anyone else here today. Just take the time necessary to respond to the questionnaire thoughtfully, honestly and completely. Remember that there are no right or wrong answers to any of the questions. Please write or print clearly. Do not fill out the section marked Juror Number; the court staff will fill it out for you. If you cannot

answer a question because you do not understand it, write "Do not understand." If you cannot answer because you do not know the answer, write "Do not know." If you want to explain your answer, do so either in the space provided on the questionnaire, or on one of the sheets attached to the questionnaire. If you use one of the blank sheets, please write the number of the question you are answering.

Please fill out the entire questionnaire. Your responses to the questionnaire will not be made part of the public record in this case unless and until this court, or another court, orders their release. The last question asks whether there are particular responses on sensitive subjects that you would like be kept out of the public record permanently. Alternatively, if you would prefer to answer a sensitive question orally rather than in writing, you may write "Private" in response to that question.

After the questionnaires are reviewed, there will be individual, oral questioning of some of you. Much of that questioning may be public. However, if requested, or at my initiative, I will seriously consider excluding the public from any questioning concerning any sensitive matters, including matters that you have asked not be publicly disclosed or have marked "Private." I will also remove from any questionnaires that are made part of the public record responses that relate to any confidential questioning.

Please read the added instructions at the beginning of the questionnaire before filling it out.

Because your answers are part of this vital jury selection process, your answers must be truthful and signed under the penalty of perjury at the end of the questionnaire.

When you have completed and signed the questionnaire, you should give it to a member of the Court staff. You then may leave, and call in on Monday, September 29, after 5:00 p.m., for further instructions.

Let me conclude as I began, by thanking you for being here this morning and for taking part in this important process. We will now distribute the questionnaires.

JUROR NAME          _____

JUROR NUMBER        _____

UNITED STATES DISTRICT COURT<br>
FOR THE DISTRICT OF MASSACHUSETTS

<u>UNITED STATES OF AMERICA V. GARY LEE SAMPSON</u>

JUROR QUESTIONNAIRE

TO THE PROSPECTIVE JUROR:

The information given in this questionnaire will be used by the court and the parties to select a qualified jury.

It is very important that you answer the questions as completely and accurately as you can. Your complete written answers will save a great deal of time for everyone. <u>There are no right or wrong answers to the questions</u>. Please just answer the questions as candidly as possible. You have taken an oath promising to give truthful answers, and any intentionally false statement could subject you to prosecution for perjury. Please take as much time as necessary, and any break that you may need, to respond as accurately and completely as you can.

Please keep in mind the following:

A.   Do not consult with or talk to any other person in filling out the questionnaire.

B.   If you cannot answer a question because you do not understand it, write "Do not understand" in the space after the question. Do not ask court personnel for clarification.

C.   If you cannot answer a question because you do not know the answer, write "Do not know" in the space after the question.

D.   If you request that your response to a particular question not be made public, write the number of that question in your response to the last question, Question 77. Alternatively, if you would prefer not to answer a sensitive question because of the private nature of your response, write "Private" after the question. In either

event, the judge may ask you about the topic in a non-public session at a later date.

E.    Do not write on the back of any page. Use the blank pages at the end of the form (front side only) if there is insufficient room on the form for your answer. When using the blank pages, please include the number of the question you are answering. If there is insufficient space even on the front of the blank pages to provide a complete answer, write as much as you can, then indicate "Need More Space" and stop. You may be given an opportunity to explain later.

F.    Please print or write legibly. Use the pen you have been given.

G.    Please leave the Juror Number section of the questionnaire blank.

H.    After you leave today, do not discuss any of the questions or your answers with anyone else, including members of your family and other potential jurors. If anyone approaches you and attempts to discuss any aspect of this questionnaire, you may not answer their questions. If anyone persists in questioning you, inform the Jury Clerk or the Deputy Clerk.

I.    After you leave today, do not discuss anything about this case with anyone, and do not read, listen to, or watch anything relating to this case.   Until you are excused as a potential juror, or until the trial is over if you are selected as a juror, you may not discuss this case, or allow yourself to be exposed to any discussions of this case in any format.

At the end of the questionnaire, please sign it, affirming the truth of your answers and the fact that you have given them without assistance.

Thank you for giving your time to perform this vital duty in our democracy.

1.    What is your full name (including maiden name, if any)?

_____

2.    (a)   The prosecutors in this case are Assistant United States Attorneys Frank Gaziano, George Vien, and John Wortmann, Jr. Do you or anyone close to you know any of them or anyone else employed in the Office of the United States Attorney for the District of Massachusetts?

☐ Yes   ☐ No

(b)   If so, please explain. _____

_____

_____

_____

3.    (a)   The defense attorneys, who like the prosecutors are being paid by the government, are David Ruhnke of New Jersey, Stephanie Page of the Massachusetts Committee for Public Counsel Services ("CPCS"), and Robert Sheketoff of Boston. Do you or anyone close to you know any of the defense attorneys or anyone who works with them?

☐ Yes   ☐ No

(b)   If so, please explain. _____

_____

_____

_____

4.    (a)   Do you or anyone close to you know the defendant Gary Sampson?

☐ Yes   ☐ No

(b)   If so, please explain. _____

_____

_____

_____

5.    (a)   Did you or anyone close to you know Phillip McCloskey, Jonathan Rizzo, or Robert Whitney?

☐ Yes   ☐ No

(b)  Do you or anyone close to you know any of their family or friends?

☐ Yes   ☐ No

(c)  If you answered 5(a) and/or 5(b) "Yes", please explain. _____

_____

_____

_____

The witnesses in this case may include:

Captain Michael Crisp, Massachusetts State Police
Trooper Robert Dateo, Massachusetts State Police
Trooper Peter Cooke, Massachusetts State Police
Trooper Kerry Gilpin, Massachusetts State Police
Sgt. Scott Berna, Massachusetts State Police
Trooper Wendy Wakefield, Massachusetts State Police
Trooper John Silvia, Massachusetts State Police
Trooper Bobby Chan, Massachusetts State Police
Lieutenant Joseph Mason, Massachusetts State Police
Trooper John Dugan, Massachusetts State Police
Lieutenant Paul D'Amore, Massachusetts State Police
Trooper Wes Wanagel, Massachusetts State Police
Dr. William Zane, Mass. Office Medical Examiner
Dr. James Weiner, Mass. Office Medical Examiner (ret)
Dr. Thomas Andrew, NH Office Medical Examiner
Patricia Macedo, Hingham, MA
Dennis Macedo, Hingham, MA
Charlene McCloskey, Marshfield, MA
Scott McCloskey, Plymouth, MA
Kevin McCloskey, Marshfield, MA
Laurie McCloskey, Marshfield, MA
Patrick Shea, Quincy, MA
Cheryl McCloskey Shea, Marshfield, MA
Anne McCloskey, Quincy, MA
Sgt. Paul Taber, Marshfield PD
Patrolman George P. Davis, Marshfield PD
Lieutenant Phil Tavares, Marshfield PD

Lieutenant Michael McDonough, Marshfield PD
Deborah Stuart, Marshfield MA
Valarie Mullaney, Boston, MA
Michael Anabel, Marshfield MA
Kerri DiCarlo, Scusset, MA
Paul Philbrick, New Hampshire
Joseph Barrett, Abington, MA
Kathleen Duguay Akin, Massachusetts DEM
Robert Akin, Massachusetts Environmental Police
Joseph DeSisto, Plymouth, MA
Patrick Berry, Marshfield, MA
Shawn Wood, Coventry, RI
John Dorian, Boston, MA
Susan Whitney, Penacook, NH
Bradley Whitney, Boscawen, NH
Jennifer Habel, Penacook, NH
Mary Boucher, Meredith, NH
Ken Boucher, Manchester, NH
Officer John Eichhorn, Meredith PD
Trooper Michael Kegelman, NH State Police
Trooper Kathy Kimball, NH State Police
Trooper William Magee, NH State Police
William Gregory, Rutland, Vermont
Eugene Schlosser, Bridgewater, VT
Trooper John Helfant, Vermont State Police
Trooper Jim Cruise, Vermont State Police
Trooper Jeff Cable, Vermont State Police (Ret.)
Lieutenant Ray Keefe, Vermont State Police
Karen Lanning, FBI Laboratory
Michael Smith, FBI Laboratory
Anthony Onorato, FBI Laboratory
Michael Rizzo, Kingston, MA
Mary Rizzo, Kingston, MA
Nicholas Rizzo, Kingston, MA
Eliott Rizzo, Kingston, MA
Laurie Herrbrough, New Hampshire
Heather Havener, Lexington, North Carolina
Amanda Laws, Linwood, North Carolina
Bernice Ranynell Grindstaff, Sophia, North Carolina
Vanessa Morris, Denton, North Carolina

Tiffany Gordon, Thomasville, North Carolina
Deborah Kinney, Denton, North Carolina
Angela Younts, Thomasville, North Carolina
Brenda Blair, Trinity, North Carolina
Kimberly McKinney Tanner, Highpoint, North Carolina
Warren Turrell Click, Bureau of Prisons
Benny Lee Mills, Bureau of Prisons
Dr. Frederick Bieber, Boston, MA
Jackie Alexander, Tamworth, New Hampshire
Cpt. Anthony Moniz, Plymouth County Sheriff's Dept.
Lt. Edward Barrett, Plymouth County Sheriff's Dept.
Lt. Edward Bombadier, Plymouth County Sheriff's Dept.
Officer Sean Sullivan, Plymouth County Sheriff's Dept.
Officer Ralph Mattivello, Plymouth County Sheriff's Dept.
Officer William Dineen, Plymouth County Sheriff's Dept.
Officer Joanna Cook, Vt. Dep't. Of Corrections
Captain Jose Delgado, Conn. Dep't of Corrections
Warden Michael Cunningham, N.H. Dep't. Of Corrections (Ret.)
Officer Frederick Brousseau, N.H. Dep't. Of Corrections (Ret.)
Cpl. Marc Lachapelle, N.H. Dep't. Of Corrections
Officer Marvin Burnette, N.H. Dep't. Of Corrections
Officer Albert Hutchins, N.H. Dep't. Of Corrections
Officer William Faust, N.H. Dep't. Of Corrections
Officer William Tupman, N.H. Dep't. Of Corrections
Officer Dan Boynton, N.H. Dep't. Of Corrections
Officer Byerhoff, N.H. Dep't. Of Corrections
Captain R. Hamm, Maine Department of Corrections
Officer Thyomas Johnson, Maine Department of Corrections
Jill Miller, M.S.S.W., Madison, WI
Robert L. Smith, Ph.D., Rocky River, OH
Mark Cunningham, Ph.D., Lewisville, TX
Michael Baden, M.D., New York, NY
Joan Katz, L.C.S.W., Newton Center, MA
Scott Keller, Methuen, MA
Karen Alexander, Silver Lake, NH
Rebecca Barkhouse, Concord, NH
Dennis Robinson, Carroll County House of Corrections, Ossipee, NH
Roger Miller, Lexington, NC
Houston Roberts, Lexington, NC
Tina Withington, New Hampshire State Prison, Berlin, NH

Kevin Reddington, Esquire, Brockton, MA
Kenneth Elias, Esquire, Brockton, MA
Richard Franey, Abington, MA
Nancy Hebben, Ph.D., Newton, MA
Martin J. Kelly, M.D., Newton, MA
Thomas J. Deters, Ph.D., Cambridge, MA
Keeper of the Records, Office of the Inspector General, United States Dep't of Justice
Keeper of the Records, Bridgewater State Hospital
Keeper of the Records, South Shore Hospital
Keeper of the Records, Massachusetts General Hospital
Keeper of the Records, New Hampshire State Prison
Keeper of the Records, Connecticut State Prison
Keeper of the Records, Maine State Prison
Keeper of the Records, Carroll County Jail
Keeper of the Records, N.H. Dep't. Of Corrections
Keeper of the Records, Maine Dep't. Of Corrections
Keeper of the Records, Conn. Dep't. Of Corrections
Keeper of the Records, Plymouth County Sheriffs Dep't.

6.    (a)  Do you or anyone close to you know any of the people who might be witnesses in this case or anyone who works in any of the organizations that employ them?

❒ Yes    ❒ No

(b)  If so, please explain. _____

_____

_____

_____

_____

_____

_____

7.    (a)  Do you or anyone close to you know Judge Mark L. Wolf or anyone employed by the United States District Court for the District of Massachusetts?

❒ Yes    ❒ No

(b)   If so, please explain. _____

_____

_____

_____

8.   (a)   Do you know any other potential juror in this case?

❐ Yes   ❐ No

(b)   If so, who? _____

_____

_____

9.   (a)   After today, you may have to return to court for 1 or 2 days in the 3 weeks after September 29, 2003 for further questioning. If you are selected to serve, the trial is expected to start by about October 20, 2003 and is expected to last about 6 weeks. However, sometimes cases take longer than expected, so jurors should plan to be available until mid-December 2003.

Except when deliberating to decide the case, the jury will sit on Monday, Tuesday, Wednesday, and Thursday, from about 9:00 a.m. to 4:00 p.m., with time off for breaks and lunch.  The jury will not sit on Fridays, unless it is deliberating, or on national or religious holidays. If the case is not concluded, there will be a Thanksgiving break from at least Wednesday, November 26, 2003 through Sunday, November 30 2003.

The court does not plan to sequester the jury. Jurors should be able to go home every day.

This would be a demanding schedule for anyone. However, in fairness to everyone, no one can be excused from jury duty except for the most compelling reasons. Therefore, answering this question "yes" will not necessarily result in your being excused. Do you, however, think that the schedule would impose a special hardship on you, and that it would be very difficult or impossible for you to serve as a juror in this case because of the schedule?

❐ Yes   ❐ No

(b)   If so, please explain. _____

_____

_____

_____

10.  (a)  Do you have any problem understanding English or with hearing, seeing, speaking, or with any other physical or emotional condition that would make it difficult for you to serve as a juror in this case?

❐ Yes   ❐ No

(b)   If so, please explain. ___ __ ____ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___


11.  (a)  Do you have a history of problems dealing with stress or pressure?

❐ Yes   ❐ No

(b)   If so, please explain. ___ __ ____ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___


12.  (a)  Do you have any religious or philosophical beliefs that would make it difficult for you to judge another person in court?

❐ Yes   ❐ No

(b)   If so, please explain. ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___


13.  What is your primary source of news (for example, newspapers, magazines, internet, television, radio)? ___ ___ __ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

14.  What are the magazines and newspapers that you read on a regular basis? ___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___

___ __ ____ ___ ___ ___ ___ ___ ___ ___ ___ ___

15. (a) Do you watch local television news?

    ❏ Yes  ❏ No

(b) If so, which stations and how often? ____ ____ ____ ____

16. (a) Have you read, seen or heard anything about Gary Sampson and/or this case, including, but not only, on your way to the courthouse today?

    ❏ Yes  ❏ No

(b) If so, please describe what you recall reading, seeing and/or hearing and where you learned that information. ___

(c) Have you heard anyone discuss or express an opinion concerning Mr. Sampson or this case, including, but not only, in the courthouse today?

    ❏ Yes  ❏ No

(d) If so, who made the statement(s) and what did he or she say? __

(e) Has anyone contacted you about this case or to discuss the death penalty generally?

    ❏ Yes  ❏ No

(f)  If so, who contacted you and what was said? _____

_____

_____

_____

_____

(g)  If you knew anything about this case before coming to court today, what were your thoughts about the case and/or Mr. Sampson? _____

_____

_____

_____

_____

(h)  Have you ever expressed any opinion about Mr. Sampson or this case?

❒ Yes   ❒ No

(i)  If so, what did you say and to whom did you say it?

_____

_____

_____

_____

(j)  In any event, do you believe that you could put aside (not forget) whatever you learned or thought previously and decide based on the evidence presented in court whether Mr. Sampson should be sentenced to life in prison without the possibility of release or sentenced to be executed?

❒ Yes   ❒ No

17.  (a)  Do you now have an opinion regarding whether Gary Sampson should be sentenced to life in prison without possibility of release or sentenced to death for the murders that he admits he committed?

☐ Yes    ☐ No

(b)   If so, what is your present opinion of what would be the appropriate sentence for Mr. Sampson? ___ ___ ___ ___ ___

—— —— —— —— —— —— —— —— —— —— —— —— ——

18.   (a)   Do you have an opinion about the death penalty?

☐ Yes    ☐ No

(b)   If so, what is it? ___ ___ ___ ___ ___ ___ ___ ___

—— —— —— —— —— —— —— —— —— —— —— —— ——

—— —— —— —— —— —— —— —— —— —— —— —— ——

—— —— —— —— —— —— —— —— —— —— —— —— ——

—— —— —— —— —— —— —— —— —— —— —— —— ——

19.   Which of the following best describes your feelings about the death penalty in a case involving murder?  Please read all of the statements carefully, take some time to think about them, and then mark all of the choices which you believe describe your feelings.

a.   I am opposed to the death penalty, and I will never vote to impose it in any case, no matter what the facts.

b.   I am opposed to the death penalty, and I would have a difficult time voting to impose it.

c.   I am opposed to the death penalty, but could vote to impose it if I believed that the facts and the law in a particular case called for it.

d.   I have no definite opinions for or against the death penalty.  I could vote to impose it, or I could vote to impose a sentence of life imprisonment without the possibility of release, whichever I believed was best called for by the facts and the law in the case.

e.   I am in favor of the death penalty, but I could vote for a sentence of life imprisonment without the possibility of release if I believed that sentence was called for by the facts and the law in the case.

f.   I am strongly in favor of the death penalty, and I would have a difficult time voting for life imprisonment without the possibility of release.

g.  I am strongly in favor of the death penalty and I would vote for the death penalty in every case in which the person charged is eligible for a death sentence.

h.  None of the statements above correctly describes my feelings about the death penalty.

If you marked h, please describe your feelings about the death penalty. _____ _____ _____ _____ _____ _____

_____ _____ ____ _____ _____ _____ _____

_____ _____ ____ _____ _____ _____ ____ ____

_____ ____ _____ _____ _____ _____ ____

_____ _____ ____ _____ _____ _____ _____ ____

20.  (a)  Would your answer to Question 19 be different if the defendant committed more than one murder?

❑ Yes    ❑ No

(b)  If so, what would your answer to Question 19 be if the defendant committed more than one murder? _____ _____

_____ _____ _____ _____ _____ ____

_____ ____ ____ _____ _____ _____ ____ _____ _____

_____ ____ ____ _____ _____ _____ _____ ____

_____ _____ _____ _____ _____ ____

_____ _____ ____ _____ _____ _____ _____ ____

21.  Please CIRCLE below the number from 1-10 that best reflects any opinion you have regarding the death penalty:

Strongly Favor                          Strongly Oppose

1    2    3    4    5    6    7    8    9    10

22.  (a)  Are you or anyone else close to you a member or supporter of a religion or any organization that has taken a position concerning the death penalty?

❑ Yes    ❑ No

(b)  If so, who is the member or supporter? _____ _____

13

_____

_____

      (c)  If so, what is the religion and/or organization? __

_____

_____

_____

_____

      (d)  If so, what is the position of that religion and/or organization concerning the death penalty? __ __ __ __ ____ ____

_____

_____

_____

23.  (a)  Gary Sampson has pled guilty to committing two crimes of carjacking resulting in the murders of Phillip McCloskey and Jonathan Rizzo. He has also confessed to murdering Robert Whitney in New Hampshire, a crime which cannot be prosecuted in federal court, but which will be part of the trial to determine Mr. Sampson's sentence in this case.  The government is seeking his execution for these crimes. The jury will decide what punishment will be imposed on Mr. Sampson.

The law never requires that a jury find that the death penalty is justified. Rather, the jury will have to consider and weigh all of the evidence presented concerning the circumstances of the crimes, and the background and characteristics of Mr. Sampson and then decide whether the government has proven to every juror that death is the appropriate punishment for either or both of his crimes. If the jury does not sentence Mr. Sampson to be executed, he will be sentenced to life in prison without the possibility of release. These are the only two possible punishments for Mr. Sampson in this case.

The jury's decision will be binding on the judge. If the jury decides to impose the death penalty, he will be executed. Otherwise, he will be sentenced to life in prison without the possibility of release.

Do you believe that you could perform the duties of a juror in this case?

                    ❐ Yes   ❐ No

(b)  If not, please explain.  _____ _____

_____

_____

_____

_____

_____

24.  (a)  Would you be able to consider whether a person who knows right from wrong, but has admitted to murdering 3 people should not be sentenced to death because he suffers from a mental illness?

❏ Yes   ❏ No

(b)  Could you, depending on all of the facts, decide that his execution is not justified because of his mental illness?

❏ Yes   ❏ No

(c)  Could you, depending on all the facts, decide that his execution is justified despite his mental illness?

❏ Yes   ❏ No

(d)  If you answered Questions 24(a), (b), or (c) "no," please explain.  _____ _____ _____ _____

_____

_____

_____

25.  (a)  Do you have an opinion concerning whether a victim's family would want a murderer sentenced to death instead of sentenced to life in prison without possibility of release?

❏ Yes   ❏ No

(b)  If so, please explain.  _____ ____ ____ _____

_____

_____

_____

26. (a) Do you have any information or understanding concerning whether the families of the victims in this case want Mr. Sampson to be executed instead of sentenced to life in prison without possibility if release?

❏ Yes    ❏ No

(b) If so, please explain. _____ ____ _____

_____

_____

_____

(c) If so, do you believe that you could put aside (not forget) any information or understanding that you now have and decide the penalty to be imposed based on the evidence presented in court, which will include testimony by members of the victims' families about their losses, but not their opinions on what the sentence for Mr. Sampson should be?

❏ Yes    ❏ No

27. (a) Jurors in this case will be instructed that in deciding whether to sentence Gary Sampson to death or to life in prison without possibility of release they may consider the impact of their loss on the victim's family, but may not consider the possible opinions of the victim's family concerning what the sentence should be. Victim's family members are not permitted to testify on what penalty they prefer and jurors may not speculate about what their preferences may be. Do you have any concerns about your ability to follow this instruction?

❏ Yes    ❏ No

(b) If you would have difficulty following the law on this point, please explain. _____ ___ _____ ____ ___ _____

_____

_____

28. (a) Would you be influenced in any way if the victims' families regularly exercised their right to attend the trial?

❏ Yes    ❏ No

(b) If so, please explain. _____ _____ ____ ___ _____

16

_____ _____ _____

_____ _____ _____

_____ _____ _____

29. (a) The government has the burden of proving that the death penalty is justified in this case. Gary Sampson is not required to present any evidence or to testify himself. If Mr. Sampson does not testify, the jury may not discuss or consider that fact in deciding whether the government has proven that he should be executed rather than imprisoned for life without the possibility of release. Do you think that you would have difficulty following the law on this point?

❒ Yes    ❒ No

(b) If you would have difficulty following the law on this point, please explain. _____ _____ _____ ____

_____ _____ _____

_____ _____ _____

_____ _____ _____

30. (a) Have you read, seen, or heard anything about the recent murder of John Geoghan, a former priest, in prison?

❒ Yes    ❒ No

(b) If so, please explain. ____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____ _____

_____ _____ _____

(c) If so, has what you read, seen, or heard affected your opinion on whether the death penalty is an appropriate sentence for someone who has committed murder?

❒ Yes    ❒ No

(d) If so, how has your opinion been changed? ___ _____

_____ _____ _____

_____

_____

_____

31.  (a)  Have you or anyone close to you ever been under the care of a doctor, counselor, or other professional for an emotional or mental health problem?

❒ Yes   ❒ No

(b)  If so, please explain. _____

_____

_____

_____

_____

32.  (a)  Have you or anyone close to you ever had or been treated for a drug problem?

❒ Yes   ❒ No

(b)  If so, please explain. _____

_____

_____

_____

33.  What are your feelings or opinions about psychiatrists, psychologists or other mental health experts? _____

_____

_____

_____

34.  (a)  Do you or anyone close to you work as or for a federal, state, or local prosecutor, or for the federal government in any capacity?

❒ Yes   ❒ No

(b)  If so, please explain. _____

_____

_____

_____

35.  What are your feelings or opinions about prosecutors? ____

_____

_____

_____

36.  (a)  Do you or anyone close to you work for or as a criminal defense attorney?

❒ Yes   ❒ No

(b)  If so, please explain. _____

_____

_____

_____

37.  What are your feelings or opinions about criminal defense attorneys? _____

_____

_____

_____

38.  What is your:

(a)  Age _____

(b)  Gender _____

(c)  Race _____

(d)  Ethnic background _____

39.  (a)  What is your current address? _____

_____

(b)  How long have you lived at your current address?

(c)   If it is less than 5 years, please list each city or town, state, and country in which you have lived during the past 5 years. ____ _ _ _ _ _ _ _ _ _ __ _ _ _ _ _ _ _

____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

40.   (a)   Have you ever lived in a state or country whose laws made death a possible penalty for certain crimes?

❏ Yes    ❏ No

(b)   If so, what state(s) or countries(s)? _____

____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

41.   Do you own or rent your home, or do you live with relatives?

❏ Own    ❏ Rent    ❏ Live with relatives

42.   (a)   What is the highest level of education that you have completed? ____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

(b)   If you attended college, state the college(s) and your major? ____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

____ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

(c)   Have you ever taken any law courses or had any legal training?

❏ Yes    ❏ No

(d)   Do you have any training or experience working as a mental health or substance abuse counselor?

❏ Yes    ❏ No

(e)   Do you have any specialized training, licenses or

20

skills? _____

_____

_____

_____

43. (a) What is your current employment? _____

_____

(b) If unemployed or retired, what was your last job?

_____

(c) If you have changed employment in the last 10 years, please describe your employment since 1993. _____

_____

_____

_____

(d) Have you ever supervised employees in your work?
❏ Yes   ❏ No

(e) If so, please state how many people you supervised.

_____

44. (a) What is your marital status? _____

(b) Have you ever been divorced?
❏ Yes   ❏ No

45. With whom do you live? _____

_____

_____

46. Do you have any children or grandchildren?
❏ Yes   ❏ No

47. If you have a spouse or live in companion, and/or any children or grandchildren, please provide the following information for each of them. There are additional lines on page 22.

Relationship   Age      Gender    Education        Employment

_____

_____

_____

_____

_____

Relationship   Age        Gender    Education        Employment

_____

_____

_____

_____

_____

48.   (a)   Have you, your live in companion, or any member of your family ever served in the military?

❐ Yes   ❐ No

(b)   If so, please provide the following information for each individual who served in the military.

(i)   Who served? _____

(ii)  In what branch? _____

(iii) What years? _____

(iv)  What was the highest grade or rank attained?

_____

(v)   What duties did that service involve? _____

_____

(vi)  Did that service involve combat?

❐ Yes   ❐ No

(vii) Did that service ever require taking a life?

❐ Yes   ❐ No

49.   (a)   Have you or anyone close to you ever been involved with an organization that lobbies or takes a public position on law enforcement issues?

22

❐ Yes   ❐ No

(b)   If so, please explain. ___ _____ _____

_____

_____

_____

50.   (a)   Have you or anyone close to you ever been involved with a victims' support organization or victims' support activities?

❐ Yes   ❐ No

(b)   If so, please explain. ___ _____ ___ _____ ___ _____

_____

_____

_____

51.   (a)   Have you or anyone close to you ever been involved in a prisoners' support organization or prisoners' support activities?

❐ Yes   ❐ No

(b)   If so, please explain. _____ _____ ___ _____

_____

_____

_____

52.   (a)   Have you, your spouse, or live-in companion been involved with, or donated money to, any political, civic, charitable, social, religious, or other organizations in the past 10 years?

❐ Yes   ❐ No

53.   (b)   If so, please list each organization. ___ _____ _____

_____

_____

_____

54. (a) What, if any, religion were you raised in? _____

(b) Are you now a member of any religion?

❏ Yes  ❏ No

(c) If so, what is your religion? _____

55. (a) Do you consider yourself to be politically liberal, moderate, or conservative? _____

(b) Are you a member of any political party?

❏ Yes ❏ No

(c) If so, what is that party? _____

56. (a) Have you or anyone close to you ever run for political office or worked in a political campaign?

❏ Yes  ❏ No

(b) If so, please explain. _____

_____

_____

57. (a) Do you consider yourself either a leader, a follower, or a team player?

❏ Yes  ❏ No

(b) If so, which? _____

58. What do you like to do in your free time? _____

_____

59. (a) Have you or anyone close to you ever been a victim or witness to a crime, whether it was reported or not?

❏ Yes  ❏ No

(b) If so, please explain. _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

60. (a) Did you or anyone close to you know anyone who was murdered or any member of his or her family?

☐ Yes   ☐ No

(b) If so, please explain. __ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

61. (a) Have you or anyone close to you ever been questioned as part of a criminal investigation?

☐ Yes   ☐ No

(b) If so, please explain. _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

62. (a) Have you or anyone close to you ever testified before a grand jury or in a criminal trial?

☐ Yes   ☐ No

(b) If so, please explain. __ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____

63. (a) Have you or anyone close to you ever been charged

with committing a crime?

❏ Yes ❏ No

    (b) If so, what was the alleged crime? _____

_____

_____

_____

    (c) If so, was the case prosecuted by the federal, state, or local government? _____

    (d) If so, did the prosecution result in a conviction?

_____

_____

    (e) If so, what was the sentence? _____

_____

_____

    64. (a) Do you or anyone close to you know anyone who is, or has been, in prison?

❏ Yes ❏ No

    (b) If so, please explain. _____

_____

_____

_____

    65. (a) Have you or anyone else close to you ever had an experience with the police or the criminal justice system in which you or that person were treated fairly?

❏ Yes ❏ No

    (b) If so, please explain. _____

_____

_____

_____

66. (a) Have you or anyone close to you ever had an experience with the police or the criminal justice system in which you or that person were treated unfairly?

❒ Yes   ❒ No

(b) If so, please explain. _____

_____

_____

_____

67. (a) Have you or anyone close to you ever worked in a jail or prison?

❒ Yes   ❒ No

(b) If so, please explain. _____

_____

_____

_____

68. (a) Have you or anyone close to you ever been employed as a private security agent or in law enforcement as a police officer or investigative agent, a prosecutor, or in any other way?

❒ Yes   ❒ No

(b) If so, please explain. _____

_____

_____

_____

69. (a) Are you or anyone close to you planning to apply for a position in law enforcement, including a position as a jail or prison guard?

❒ Yes   ❒ No

(b) If so, please explain. _____

_____

_____

_____

70. (a) Do you believe that the testimony of a person employed in law enforcement is either more likely or less likely to be truthful than the testimony of anyone else?

☐ Yes   ☐ No

(b) If so, please explain. ____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

71. (a) The jurors in this case will be instructed that the testimony of a law enforcement officer is to be treated the same as the testimony of anyone else. Jurors are not to presume that testimony by a law enforcement officer is more or less likely to be true than the testimony of anyone else, or to give more or less weight to that testimony because of the witness' employment in law enforcement. Do you have any concerns about your ability to follow this instruction?

☐ Yes   ☐ No

(b) If so, please explain. _____ ___ _____ _____

_____ _____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

72. (a) Have you or anyone close to you ever been sued or sued someone?

☐ Yes   ☐ No

(b) If so, please explain. _____ ____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

_____ _____ _____ _____ _____ _____ _____

73. (a) Have your ever served as a trial juror or on a grand jury?

☐ Yes   ☐ No

(b) If so, approximately when and where? ____ _____ ___

_____

_____

(c)  Was your jury service in state or federal court (or both)?

❒ State Court   ❒ Federal Court   ❒ Both   ❒ Do Not Know

(d)  Did any trial(s) involve a criminal or civil case?

❒ Criminal   ❒ Civil   ❒ Both   ❒ Do Not Know

(e)  What was the case about? _____

_____

_____

(f)  Did the jury agree on a verdict?

❒ Yes   ❒ No

(g)  If it was a criminal case, what was the jury's verdict? _____

(h)  Were you the foreperson in any of the cases?

❒ Yes   ❒ No

(i)  Is there anything about your previous service on a trial jury or grand jury that would interfere with your ability to serve as an impartial juror in this case? _____

_____

_____

74.  (a)  Did you have any problem reading or understanding this questionnaire?

❒ Yes   ❒ No

(b)  If so, please explain. _____

_____

_____

_____

75.  (a)  Is there any other reason why you could not be a fair and impartial juror in this case?

❒ Yes   ❒ No

(b)   If so, please explain. _____ ____ ____ _____

_____ ____ ____ _____ ____ _____

_____ ____ ____ _____ ____ ____ _____ _____ _____

_____ ____ ____ _____ ____ ____ _____ ____ _____

76.   (a)   Is there anything else that you feel that the judge and attorneys should know in considering whether you would be a suitable juror in this case?

☐ Yes   ☐ No

(b)   If so, please explain. _____ ____ ____ _____

_____ ____ ____ _____ ____ _____

_____ ____ ____ _____ ____ ____ _____ _____ _____

_____ ____ ____ _____ ____ ____ _____ ____ _____

77.   (a)   Are there responses to any specific questions that you request not be made public?

☐ Yes   ☐ No

(b)   If so, please list the numbers of those questions.

_____ ____ ____ _____ ____ ____ _____ ____ _____

_____ ____ ____ _____ ____ ____ _____ ____ _____

I do hereby certify, under the pains and penalties of perjury, that the answers which I have given in this questionnaire are true and complete to the best of my knowledge and belief.

_____ ____ ____ _____ _____
PRINT NAME

_____ ____ ____ _____ _____
SIGNATURE

_____ ____ ____ _____ _____
DATE

ADDITIONAL SHEET: PLEASE INDICATE QUESTION NUMBER

ADDITIONAL SHEET: PLEASE INDICATE QUESTION NUMBER

Juror Number\_\_\_\_\_ _____ \_\_ \_\_

ADDITIONAL SHEET: PLEASE INDICATE QUESTION NUMBER