UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA           )
                                   )
           v.                      )        Cr. No. 01-10384-MLW
                                   )
GARY LEE SAMPSON                   )

MEMORANDUM AND ORDER

WOLF, D.J.                                        June 30, 2014

I.    BACKGROUND

     For the reasons explained in detail at the June 4, 2014
hearing,[1] the court found that there is reasonable cause to
believe that defendant Gary Sampson "may presently be suffering
from a mental disease or defect rendering him mentally
incompetent to the extent that he is unable to understand the
nature and consequences of the proceedings against him or to
assist properly in his defense." 18 U.S.C. §4241(a).
Accordingly, the court ordered that "[t]he Bureau of Prisons
(the 'BOP') shall conduct a psychiatric examination of Sampson
in accordance with 18 U.S.C. §4247(b)." June 6, 2014 Order
Concerning Competency Evaluation ¶1. The court also ordered that

---

[1]    These reasons were "based, in part, on the evidence
submitted in connection with Sampson's First Amended Motion for
a New Trial Pursuant to 28 U.S.C. §2255 (the "§2255 Motion"),
including the Declarations of Dr. Ruben C. Gur (§2255 Motion
Exs. B, C) and the Declaration of Dr. George W. Woods, Jr.
(§2255 Motion Ex. G)." June 6, 2014 Order Concerning Competency
Evaluation at 1.

the competency evaluation be performed by a certified psychiatrist (the "Examiner"). Id.

The June 6, 2014 Order Concerning Competency Evaluation prescribed the procedures that will govern various aspects of the BOP's competency evaluation. Among other things, the government was ordered to provide certain materials of public record to the BOP for use by the Examiner. See id. ¶4. The court stated that it "assumes, without finding, that the Examiner will have access to relevant records in the BOP's possession," and ordered Sampson, if he "objects to the Examiner accessing such records," to file a motion addressing this issue. Id. ¶5. The court ordered that the Examiner prepare a report pursuant to 18 U.S.C. §4247(c) (the "Competency Report") and that the Competency Report be filed with the court under seal and provided to the parties. Id. ¶2. The parties were instructed to state their positions, after receiving the Competency Report, as to whether Sampson is now competent to stand trial, whether a hearing should be held to address this matter, and what evidence, if any, should be presented at or before such a hearing. Id. ¶3.

In another June 6, 2014 Order, the court instructed the parties to confer and to inform the court whether they were in agreement concerning: whether an independent examiner should be

2

appointed to evaluate Sampson at the federal penitentiary in Terre Haute, Indiana; if so, which individual should be appointed as an independent examiner; and whether an independent examination would be funded by the government. See Order Concerning Possible Alternative to Competency Examination by the Bureau of Prisons ¶1 ("Order Concerning Possible Alternative"). The court stated that "[i]f agreement has been reached concerning most or all of [these questions], the parties may jointly move for modification of the Order Concerning Competency Evaluation," identifying certain relevant matters. Id. ¶2.

On June 17, 2014, the government filed a redacted version of a letter by which it indicated that it was transmitting the required materials related to Sampson's competency to the Examiner (the "Letter to Examiner"). The redacted Letter to Examiner did not disclose the Examiner's name or the BOP institution at which he works. On June 19, 2014, the court ordered the government to file an unredacted version of the Letter to Examiner, under seal if necessary, and to serve it on Sampson. The government filed the Letter to Examiner, under seal, in unredacted form. However, citing security concerns, it requested that this filing be made ex parte. In another June 19, 2014 Order, the court stated that it doubted the merit of the government's request to file the Letter to Examiner ex parte,

3

and ordered that the government's submission seeking to file the letter ex parte be served on Sampson, in redacted form.

On June 18, 2014, Sampson filed a motion objecting to the Examiner's access to BOP records concerning Sampson (the "Objection to Access"). Arguing that such records implicate his statutory privacy rights and his rights under the Fifth and Sixth Amendments, Sampson requested an opportunity to review any BOP records to be accessed by the Examiner and, if necessary, to object to the Examiner's access to those records.

On June 23, 2014, the parties reported their positions concerning: the possibility of an independent competency evaluation; the government's request that its unredacted Letter to Examiner remain ex parte; and Sampson's Objection to Access.

The government asserts that an independent examiner should not be appointed. However, the government believes that it would be responsible for the cost of any independent examination. The government contends that the Examiner should have access to all relevant BOP records, including medical and any psychological records created in the course of Sampson's incarceration. The government also states that, in contrast to prior representations, it now intends to obtain Sampson's records from the BOP on July 23, 2013, without first moving for leave to do so. In addition, the government requests that the court modify

4

the schedule previously established, and order that Sampson provide an updated notice under Federal Rule of Criminal Procedure 12.2(b)(2) by July 21, 2014.

Sampson contends that an independent examiner should be appointed. He argues, among other things, that recent submissions by the government suggest that the Examiner is not neutral and independent, but rather is affiliated with the government. Sampson adds that the evaluation should take place at the federal penitentiary in Terre Haute, regardless of whether the evaluation is performed by the BOP or by an independent examiner. In addition, Sampson argues that the name of the Examiner and the facility at which the evaluation will be conducted should be disclosed to him.

Sampson contends that once the Examiner's evaluation is complete: (a) the Competency Report should first be provided to Sampson so that he may argue that the report, or parts of it, should not be disclosed to the government; (b) if the Examiner finds Sampson competent to stand trial, the Competency Report should not be provided to the government; (c) if the Competency Report is provided to the government, it should be viewed only by "firewalled" Assistant United States Attorneys; and (d) any evidence generated by the competency evaluation should be excluded, for all purposes, from Sampson's sentencing trial.

5

II.  DISCUSSION

    A.    The Competency Evaluation Will Be Conducted by the BOP

    On June 4, 2014, the court decided and ordered that the
evaluation of Sampson's competency to stand trial be conducted
by the BOP. The court was prepared to consider a joint motion to
modify  the  Order  Concerning  Competency  Evaluation  "[i]f
agreement [were] reached concerning most or all" of the issues
concerning a potential evaluation by an independent examiner.
See Order Concerning Possible Alternative ¶2. No such agreement
was reached. Nor did Sampson identify any individual who would
be qualified, available, and willing to perform an independent
competency evaluation at the federal penitentiary in Terre Haute
in the near future. In addition, while Sampson's ability to
assist properly in his defense could, presumably, be evaluated
at the federal penitentiary in Terre Haute, it is important to
examine his competency in a new environment, in view of the fact
that he will be required to travel to Boston, Massachusetts for
the retrial to determine his sentence and to work with his
lawyers here.

    The court is not, therefore, ordering that an independent
competency examination be performed. The BOP has experience and
expertise in the evaluation of competency, and it performs such
evaluations on a regular basis. See June 4, 2014 Tr. at 66; cf.

United States v. Loughner, Cr. No. 11-0187-TUC-LAB (D. Ariz. Mar. 21, 2011). The court expects that the BOP's Examiner will remain, as required, "neutral and detached." United States v. Reason, 549 F.2d 309, 311 (4th Cir. 1977) (quoting United States v. Theriault, 440 F.2d 713, 715 (5th Cir. 1971)). However, in order to protect and promote the Examiner's neutrality, all future communication with the Examiner will be conducted by the court. The parties are, therefore, being ordered not to communicate with the Examiner without the prior authorization of the court.[2]

Because the court is not ordering that an independent examination be conducted, any question concerning the funding of such an examination is moot.

B.   The Identity of the Examiner and Location of the Evaluation Will Be Disclosed to Sampson

The court finds that Sampson has a legitimate interest in knowing who will evaluate him, and when and where the evaluation will be conducted. The court does not find that this legitimate interest is outweighed by any potential security concerns identified by the government. The court is, therefore, ordering

---

[2]   If the Examiner wishes to question Sampson's counsel as part of his evaluation, the court intends to allow him to do so because the relevant questions include whether Sampson "is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. §4241(a).

that the government provide Sampson with the information redacted from the Letter to Examiner that was filed for the public record. The Letter to Examiner will remain sealed.

The court is designating the name of the Examiner and the address of the institution at which he works as "Protected Information" for the purposes of the August 21, 2003 Protective Order.[3] Consequently, among other things, this information may only be disclosed to Sampson, his counsel, and the individuals necessary to assist his counsel. In addition, this information may only be used by them for the purpose of litigating this case. See Aug. 21, 2003 Protective Order ¶¶2-4. Any submission identifying the Examiner or the institution at which the Examiner works shall be made under seal, with a redacted version filed for the public record.[4]

## C.   The Examiner's Access to BOP Records

The court does not yet have sufficient information to determine whether the Examiner should be denied access to any BOP records concerning Sampson. It is not now known which

---

[3]     At the June 4, 2014 hearing, the court was informed that the parties intended to confer about whether the August 21, 2003 Protective Order should be modified. See June 4, 2014 Tr. at 97-98. No modifications to that Order have been proposed to date.

[4]     The BOP is reminded that it must comply with paragraph 1 of the June 6, 2014 Order Concerning Transportation (Under Seal).

8

records, if any, the Examiner will consider relevant to his evaluation. In addition, the brief statement opposing Sampson's Objection to Access contained in the government's June 23, 2014 submission is not a proper response to a motion under Rules 7.1(b)(2) and 112.1 of the Local Rules of the United States District Court for the District of Massachusetts because it does not cite any legal authority and is not supported by an affidavit.

The court is, therefore, ordering the Examiner to inform the court of the categories of BOP records that he would like to review in conducting his evaluation. The parties are then being required: to confer; to report whether Sampson objects to the Examiner's access to any categories of requested records; and, if there is a dispute, to explain and support their respective positions in the manner required by the Local Rules.

D.   <u>Disclosure of the Competency Report and the Uses that May Be Made of the Report and Related Materials</u>

The court is modifying the procedure to be followed when the Examiner completes his Competency Report. The Examiner is being ordered to provide the Competency Report only to the court, rather than simultaneously serving the report on the parties. The court intends to then provide the Competency Report to Sampson, and to resolve any objections or requests for redactions that he may wish to make before possibly providing it

9

to the government. <u>Cf.</u> <u>United States v. Williams</u>, Cr. No. 06-00079-DAE-KSC (D. Haw. June 26, 2009).

The court is not now deciding whether the Competency Report will be disclosed to the government if the Examiner finds Sampson competent to stand trial. However, in the circumstances of the current case, the court expects to find that a hearing to address Sampson's competency will be appropriate regardless of the conclusion reached by the Examiner. <u>See</u> 18 U.S.C. §4241(a); <u>United States v. Harris</u>, 660 F.3d 47, 50 (1st Cir. 2011).

Similarly, the court is not now deciding whether "firewalled" Assistant United States Attorneys must be employed if the court determines that the government should receive the Competency Report or any information concerning Sampson's mental health included in that Report. The court notes that Federal Rule of Criminal Procedure 12.2(c)(2) does not appear to apply, because the current competency evaluation was ordered for reasons independent of any notice by Sampson under Rule 12.2(b)(2). However, the Rule 12.2(c)(4) bar on derivative use would evidently be applicable. Therefore, it may be prudent for the government -- which has consistently expressed an interest in avoiding delay -- to arrange for firewalled Assistant United States Attorneys to be available in the event that the court

10

determines that a firewalling procedure is required or appropriate.

It is similarly unnecessary for the court to decide now how the Competency Report and related materials may be used at trial. However, as the court has already ordered, the Competency Report "will be subject to the applicable provisions of Federal Rule of Criminal Procedure 12.2, including Rule 12.2(c)(4)." Order Concerning Competency Evaluation at 2 n.1 (citing 1A Charles A. Wright et al., Federal Practice and Procedure §208 & n.47 (4th ed. 2002)). Rule 12.2(c)(4) defines, among other things, when statements made in the course of a competency evaluation "may be admitted into evidence against the defendant in any criminal proceeding."

## E.   The Deadline for an Updated Notice Under Rule 12.2(b)(2)

The court is not now altering the deadline for Sampson's submission of an updated notice pursuant to Federal Rule of Criminal Procedure 12.2(b)(2). The court previously set an October 20, 2014 deadline for this submission. See Mar. 19, 2013 Order ¶10(a). This deadline was based on the parties' agreement that the Rule 12.2(b)(2) notice should be filed "no later than 120 days prior to trial." Joint Resp. to Ct.'s Jan. 22, 2014 Order & Proposed Sched. Order at 4, 13.

11

The government's present view is that by giving notice under Rule 12.2(b)(2), Sampson would waive any and all statutory and constitutional privileges concerning his medical records. However, as illustrated by the firewall-type procedure used previously in this case to meet the requirement of Rule 12.2(c)(2), see United States v. Sampson, 335 F. Supp. 2d 166, 243-45 (D. Mass. 2004), a defendant who offers notice under Rule 12.2(b)(2) is only considered to have put his medical condition at issue in a limited, provisional manner. Accordingly, it appears that an updated Rule 12.2(b)(2) notice by Sampson would subject any privileged information to discovery under the firewall procedures previously employed in this case.

Moreover, by agreeing to the October 20, 2013 deadline for Sampson's updated Rule 12.2(b)(2) notice, the government indicated that it can properly prepare for trial without investigating Sampson's present mental health before that date. See Fed. R. Cr. P. 12.2(c)(1)(B). The government should, similarly, be able to prepare properly for trial even if it cannot access certain medical records until the same date.

The court does not, therefore, find that modification of the previously agreed-to and ordered deadline for Sampson's updated notice under Rule 12.2(b)(2) is necessary or appropriate.

F.    The Government's Access to BOP Records

Finally, the court is ordering the government not to obtain records concerning Sampson from the BOP without first receiving leave of the court. The government previously expressed its understanding that whether it is entitled to get such records presents a "thorny legal issue." See June 4, 2014 Tr. at 121-22. Therefore, the government informed Sampson that it would file a motion with the court to obtain those records. See Apr. 24, 2014 Letter from U.S. Att'y to Defense Counsel at 6-7. The court is not permitting the government to decide unilaterally the dispute concerning the government's authority to access BOP records before Sampson has had an opportunity to present his position on this matter.

The court is not now deciding whether a motion by the government to obtain records concerning Sampson from the BOP would be meritorious. However, the court notes the following. Although Sampson cited no authority on the issue, it appears that correctional institutions are subject to the Health Insurance Portability and Accountability Act, 42 U.S.C. §1301, but that there are certain special rules concerning them. See 45 C.F.R. §164.512(k)(5). More generally, it has been held that "prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a

legitimate penological interest in access to them." Seaton v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010) (citing cases).

In addition, the court questions whether, as the government argues, the government's failure to disclose records in the possession, custody, or control of the BOP, but not of the prosecution, would in the circumstances of this case constitute a violation of Brady v. Maryland, 373 U.S. 83 (1963) and Local Rule 116.2, because: (a) the BOP is not a law enforcement agency that formally participated in the criminal investigation that resulted in this case, see Kyles v. Whitley, 514 U.S. 419, 437 (1995), L.R. 116.8; and (b) in any event, Sampson has objected to the prosecution reviewing the BOP's records concerning him. Cf. United States v. Dannon, 481 F. Supp. 152 (W.D. Okla. 1979) (granting a defendant's request for disclosure of his prison records).

III. ORDER

In view of the foregoing, it is hereby ORDERED that:

1.  The government shall serve on Sampson forthwith an unredacted version of its Letter to Examiner. The name and address of the Examiner are hereby designated Protected Information for purposes of the August 21, 2003 Protective Order.

14

2.   The parties shall not communicate directly with the Examiner without authorization from the court. The Examiner also shall not communicate directly with the parties without authorization from the court.

3.   The Examiner shall, by July 10, 2014, inform the court, in a submission made under seal by counsel for the BOP, of the categories of records likely to be in the BOP's possession, custody, or control that he would like to review in conducting his evaluation. The court intends to provide this submission, or appropriate parts of it, to the parties, and may unseal it.

4.   The Examiner shall, also by July 10, 2014, inform the court of whether he expects he will want to question Sampson's counsel as part of his evaluation.

5.   By July 17, 2014, the parties shall confer and report, jointly if possible but separately if necessary:

a)   Whether Sampson objects to the Examiner accessing any of the categories of documents identified by the Examiner pursuant to paragraph ¶3 hereinabove, and the government's response(s) to any such objection(s).

b)   Whether it is Sampson's position that he cannot develop an informed view concerning the Examiner's access to various categories of BOP records without first reviewing those

15

records and, if this is Sampson's position: (i) the reasons for it and any supporting authorities; and (ii) the government's response, the reasons for it, and any supporting authorities.[5]

6. The Examiner shall file his report pursuant to 18 U.S.C. §4247(c) with the court, under seal. Notwithstanding paragraph 2 of the June 6, 2014 Order Concerning Competency Evaluation, the Examiner shall not provide his report to the parties.

7. The government shall not obtain records concerning Sampson from the BOP without first obtaining leave of the court, and the BOP shall not provide such records to the government unless otherwise ordered. The government shall file any motion seeking leave to obtain such records by July 10, 2014. Sampson shall respond to any such motion by July 25, 2014. Any reply shall be filed by August 1, 2014.

8. The clerk shall serve this Order on Michael Tafelski, Esq., the BOP's Northeast Regional Counsel, for delivery to the Examiner.

UNITED STATES DISTRICT JUDGE

_____

[5] The court notes that, at the June 4, 2014 hearing, the government indicated that it would agree to facilitate an effort by Sampson to obtain his BOP records on an expedited basis. See June 4, 2014 Tr. at 123.