UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 01-10384-MLW |
| | ) | |
| GARY LEE SAMPSON | ) | |

MEMORANDUM AND ORDER CONCERNING CONTINUANCE

WOLF, D.J.                                           December 23, 2014

I.   SUMMARY

On March 18, 2014, the court ordered that the required second jury trial to determine whether the death penalty is justified for defendant Gary Sampson would commence on February 17, 2015, despite the arguments of Sampson's counsel that they could not prepare to represent him effectively before the Fall of 2015. Counsel reiterated and amplified this argument in many subsequent submissions and at many subsequent hearings. They did not, however, persuade the court to relieve them of the deadlines for pretrial events that had been established based on the February 17, 2015 date for the retrial of the penalty phase of this case.

On December 18, 2014, Sampson filed a motion for a continuance until at least October 15, 2015, supported by affidavits of his three attorneys and others. At a December 18, 2014 hearing, the government represented that it was prepared to address the motion immediately. The government then explained

the reasons for its strong opposition to a continuance, particularly emphasizing the statutory rights of the families of the victims to proceedings "free from unreasonable delay." 18 U.S.C. §3771(a)(7) (the Crime Victims Rights Act of 2004 ("CVRA")).

The court finds that a continuance until September 16, 2015 is now justified.

When, on March 18, 2014, the court scheduled the retrial for February 17, 2015, it stated that it expected that the parties would work industriously to prepare properly by that date. It also stated that it would postpone the retrial if the evolution of events demonstrated that it would not be fair or feasible for it to begin on February 17, 2015.

The court recognizes that a continuance will prolong the agony and uncertainty of the retrial for the families and friends who loved and lost the people Sampson murdered. Their interest is substantial and the most significant factor weighing against granting a continuance. The interests of the government, which has worked hard to make a February 17, 2015 trial date feasible, also weigh against a continuance. In addition, the court has given the highest priority to this case and organized its docket to devote up to four months to retrying it beginning in February 2015.

However, unforeseen circumstances since March 18, 2014--some but not all of which were beyond Sampson's attorneys' control--have injured the ability of his attorneys to prepare for a retrial. Most significantly, contrary to the representations made to the court by the Bureau of Prisons, Sampson's attorneys, investigators, and experts had only limited access to him in the approximately four months Sampson was in North Carolina at FMC-Butner to have his competency to stand trial evaluated. In addition, the failure of Sampson's counsel, particularly Danalynn Recer, Esq., to prioritize and present properly to the court the most significant issues has contributed to their plight.

The court now finds that it would not be fair or feasible to require that Sampson's counsel begin the retrial on February 17, 2015. Rather, a continuance for a reasonable period of time is justified. Therefore, the retrial is being rescheduled to begin on September 16, 2015. As discussed in §III below, this will still be the fastest retrial of a federal capital case in history.[1]

In essence, the court concludes that despite the significant interests of the victims' families, and the

---

[1] The court is also ordering certain procedures be followed to reduce the risk that Sampson's counsel will continue to file unfocused, confusing motions, which impede the court's ability to discern the issues and decide their merits

interests of the government and the court, a reasonable continuance until September 16, 2015 is justified to assure that the retrial to determine whether Sampson should be executed will be fair and, hopefully, final.

II. PROCEDURAL HISTORY

In 2001, Sampson was charged with carjackings resulting in the deaths of Philip McCloskey and Jonathan Rizzo in Massachusetts, in violation of 18 U.S.C. §2119(3). As permitted by the statute, the Attorney General decided to seek the death penalty for these alleged crimes.

In September 2003, Sampson pled guilty to the charges against him. He subsequently admitted to murdering Robert Whitney in New Hampshire as well. In September 2003, this court commenced a trial at which a jury, which it took more than a month to select, was required to determine whether Sampson should be sentenced to death. On December 23, 2003, the jury determined that a death sentence was justified.

The court subsequently denied Sampson's motion for a new trial to determine his sentence. See United States v. Sampson, 332 F. Supp. 2d 325 (D. Mass. 2004). On January 29, 2004, the court sentenced Sampson to be executed.[2] See United States v.

_____

[2] In sentencing Sampson, the court stated, among other things, that: "I have made my best effort to give you a fair trial. That required making decisions that I understand were painful to the

4

Sampson, 300 F. Supp. 2d 275, 277 (D. Mass. 2004). The court ordered that Sampson be executed in New Hampshire, in part because it would be more convenient for the victims' families and friends than the Indiana venue requested by the government. See United States v. Sampson, 300 F. Supp. 2d 278, 281 (D. Mass. 2004).

In 2007, the First Circuit affirmed the sentence of death. See United States v. Sampson, 486 F.3d 13, 51 (1st Cir. 2007). It doing so it concluded that "the sentencing proceedings in this case were conducted fairly and with scrupulous attention to the process required by law." Id.

Following his appeal, Sampson had a right to seek relief from his death sentence through a writ of habeas corpus, which for federal prisoners is codified in 28 U.S.C. §2255. Section 2255 provides a vehicle for, among other things, determining whether a defendant was deprived of his right to effective assistance of counsel in the prior proceedings.

Therefore, the court followed the usual practice and appointed a new team of lawyers to represent Sampson in the §2255 proceedings. As required by 18 U.S.C. §3005, the court appointed counsel experienced in death penalty cases ("Learned Counsel"), Susan Marcus, Esq. The court also appointed William

---

victims' families, but which were legally necessary and appropriate." Sampson, 300 F. Supp. 2d at 277.

McDaniels, Esq., of Williams & Connolly, which created a team of partners, associates, and paralegals to assist him.[3]    In addition, the court appointed the Federal Public Defender for the District of Massachusetts, Miriam Conrad, Esq., to work with Ms. Marcus, Mr. McDaniels, and their team.

As anticipated, Sampson's new lawyers filed a §2255 petition alleging, in part, that his original lawyers were ineffective.    Some, but not all, of those claims were summarily dismissed.    See United States v. Sampson, 820 F. Supp. 2d 202 (D. Mass. 2011).

The remaining claims of ineffective assistance of counsel became moot when, after several hearings and substantial briefing, the court concluded that it was compelled to vacate Sampson's death sentence because of misconduct by a juror.    More specifically, it was proven that a juror who would have been excused for cause if she answered important questions honestly had persistently committed perjury and, as a result, Sampson was deprived of his constitutional right to have his sentence decided by twelve impartial jurors.    See United States v. Sampson, 820 F. Supp. 2d 151 (D. Mass. 2011).    The court subsequently exercised its discretion to authorize an immediate

---

[3] Williams & Connolly has not requested compensation for the substantial work done by its associates and paralegals.    It has, therefore, made a significant pro bono contribution to what this case would otherwise cost the public.

appeal of its decision to the First Circuit. See United States v. Sampson, 2012 WL 1633296 (D. Mass. May 10, 2012).

On July 23, 2013, the First Circuit agreed that Sampson's "death sentence must be vacated and a new penalty phase hearing undertaken." United States v. Sampson, 724 F.3d 150, 170 (1st Cir. 2013). Therefore, it dismissed the government's appeal. Id.

After the government informed the First Circuit that it would not seek review by the Supreme Court, mandate issued on November 15, 2013, and this case was then returned to this court. On November 29, 2013, the court issued a Memorandum and Order directing the parties to confer and report on issues relating, among other things, to the time required to prepare for another proceeding to determine whether Sampson should be sentenced to death. See Nov. 29, 2013 Mem. and Order (Docket No. 1255). As requested by the parties, a status conference scheduled for December 19, 2013 was rescheduled for January 2014.

In January 2014, it was necessary to reconstitute Sampson's team of lawyers. Due to compelling personal and professional circumstances, the court allowed Ms. Marcus to withdraw. Upon the recommendation of the Federal Public Defender, Ms. Recer was appointed to succeed Ms. Marcus as Learned Counsel.

The court indicated that it would schedule a date for the commencement of the retrial at a March 18, 2014 hearing. The government requested a February 17, 2015 trial date. Sampson asked that the retrial not begin before the Fall of 2015.

On March 10, 2014, Sampson filed a seventy-five page Motion for Adequate Time To Insure That These Proceedings Meet the Heightened Standard of Reliability Required When The Government Seeks the Death Penalty, supported by lengthy affidavits and exhibits (Docket No. 1309). Sampson asked that the court defer scheduling a date for the retrial and, in any event, not order that it begin before the Fall of 2015. The government opposed Sampson's request, emphasizing the interests of the victims' families in having the issue of Sampson's sentence decided as speedily as possible. See Opp. to Sampson's Mot. to Delay Setting a Retrial Date (Docket No. 1315). The government again urged the court to order that the retrial begin on February 17, 2015. Id. at 6.

At a hearing on March 18, 2014, the parties further addressed the question of whether a date for the retrial should then be scheduled and, if so, what that date should be. The court decided that a trial date should be set and scheduled the retrial to begin on February 17, 2015. See Mar. 18, 2014 Tr. at 89; Mar. 19, 2014 Order at 6 (Docket No. 1319). At the same

time, the court recognized that an extension of that date might prove to be justified. More specifically, the court stated:

> It's going to be necessary for everyone to make good faith, industrious efforts to meet that deadline. As with every court order, I have inherent authority to alter it after giving the parties . . . notice and an opportunity to be heard. We're not going to go to trial if it's not fair or feasible.

Mar. 18, 2014 Tr. at 89.

Since March 18, 2014, there have been 425 docket entries in this case, involving thousands of pages. Sampson's counsel have in many submissions, and at many hearings, reiterated and updated the argument that it would not be possible for them to prepare and provide Sampson the constitutionally required effective representation if the retrial began on February 17, 2015.

The government has made energetic efforts to produce agreed-upon discovery on a schedule consistent with that date for the retrial. However, as explained more fully below, Sampson has not yet received all of the discovery that the government has agreed to produce or, with regard to contested issues, that the court has ordered. Such evidence includes potentially important information relevant to the issue of future dangerousness. In addition, one motion to dismiss has not yet been fully briefed because the government unsuccessfully

sought reconsideration of the order that it produce certain grand jury transcripts in September 2014.

The court has given the highest priority to this case, conducting many hearings and issuing many decisions. Nevertheless, for the reasons described below, it now concludes that it would not be reasonable to begin the retrial on February 17, 2015.

III. ANALYSIS

"It is the province of the district court to manage its docket, and, within that province, to decide what constitutes a reasonable time for preparation." United States v. Romero-Lopez, 695 F.3d 17, 21 (1st Cir. 2012) (internal quotation marks and citation omitted). The district court, therefore, has broad discretion in deciding whether the continuance of a trial date is justified and, if so, the reasonable length of the continuance. See United States v. Orlando-Figueroa, 229 F.3d 33, 39 (1st Cir. 2000). "However, the district court's discretion is limited by the defendant['s] constitutional rights to effective assistance of counsel and to the testimony of defense witnesses." Romero-Lopez, 695 F.3d at 21 (internal quotation marks and citations omitted).

The court's discretion to grant a continuance is also circumscribed by the CVRA, which provides in pertinent part that the victims of a crime, including family members of a person who

10

has been murdered, have a "right to proceedings free from unreasonable delay" and a "right to be treated with fairness and with respect for [their] dignity and privacy." 18 U.S.C. §3771(a)(7),(8).

As the First Circuit wrote in 2013:

> When evaluating a request to continue, one consideration is "the reasons contemporaneously presented in support of the request for the continuance." West v. United States, 631 F.3d 563, 568 (1st Cir.2011) (citation omitted) (internal quotation marks omitted). A court also considers the amount of time needed for preparation compared to the actual time available; how diligently the movant used that time and whether he contributed to his perceived predicament; the complexity of the case; other available assistance; the probable utility of a continuance; inconvenience to others; and the likelihood of injustice if there is no continuance. See id.

United States v. Rosario-Otero, 731 F.3d 14, 18 (1st Cir. 2013).

Sampson has explained that it may reasonably take longer to prepare for the retrial of a capital case than for the original trial for several reasons. New counsel must read thousands of pages of transcripts, discovery, and reports of previous investigations. Such preparation is necessary to develop an investigative strategy, and then efficiently and effectively deploy investigators and experts. The results of that investigation are necessary to develop fully a new legal strategy, including motions in limine, and to prepare for a

retrial in which the defendant hopes for a more favorable result.

To support this contention, Sampson has submitted information indicating that: thirteen other federal death sentences have been vacated; only four proceeded to a retrial to determine whether a death sentence should be imposed again; the average time from the mandate returning the case for resentencing and the commencement of the retrial is three years and eight months; and the fastest time to a retrial was twenty-four months after mandate. See Defense Notice of Correction Relating to Government's Motion and Memorandum Pursuant to 18 U.S.C. §3006A (DE 1633) at 8-10 and Ex. 1 (Docket No. 1703); Mem. in Support of Defense Motion for a Continuance at 4-5 (Docket No. 1743). Every case is unique. However, the experience concerning the retrial of other capital cases suggests that more than the fifteen months between when the mandate issued in this matter in November 2013 and February 17, 2015 may be necessary, and in any event reasonable, to permit counsel to prepare effectively for a retrial to determine whether Sampson should be executed.

As indicated earlier, when the court scheduled the retrial to begin on February 17, 2015, it stated that it expected the parties to make "good faith industrious efforts to meet the deadline." Mar. 18, 2014 Tr. at 89. The court added that it

12

would, after giving the parties an opportunity to be heard, alter the trial date if it concluded that going to trial then would not be "fair or feasible." Id. The history of this case since March 2014, and present circumstances persuade the court that Sampson's counsel should be granted a reasonable additional period of time to prepare for the retrial.

Since mandate issued in November 2013, the team of lawyers, investigators and experts representing Sampson has had to be reconstituted. As explained earlier, there were compelling reasons to permit Learned Counsel in the §2255 proceedings, Ms. Marcus, to withdraw. In January 2014, Ms. Recer was appointed as successor Learned Counsel. See 18 U.S.C. §3005. Ms. Recer had no prior familiarity with this case.

Several members of the team of lawyers and paralegals at Williams & Connolly who worked on the successful effort to have Sampson's death sentence vacated had left the firm by 2014. In addition, the Federal Public Defender, who previously had a leading role in directing the investigation in these §2255 proceedings, was allowed to reduce her role to that of Local Counsel because of the demands of other matters, including the "Marathon Bombing" case.

One of the investigators Sampson's attorneys had employed earlier in these proceedings died before 2014. Two others were

then no longer available, leaving only one investigator experienced in this case on the team.

Ms. Recer asserts that though averaging more than forty hours a week working on this case, she has still not had time to read all of the trial transcripts or documents provided by the government in discovery.[4] Similarly, Mr. McDaniels and Ms. Wicht each state that they have not had time to re-read the transcripts or review the discovery since mandate issued, and must do so for the first time from the new perspective of developing a strategy for a retrial. In addition, Sampson's investigators have not yet located or interviewed all of the witnesses with whom the attorneys hope to speak. The attorneys represent that they have spoken to only two potential witnesses.

Sampson's attorneys, therefore, assert that they cannot develop a trial strategy, file motions in limine, and

---

[4] At the December 18, 2014 hearing, counsel for the government questioned why Ms. Recer had yet to read the trial transcripts in view of the fact that she reportedly spent over 2,000 hours on this case to date. Ms. Recer explained that the constant succession of deadlines for motions and other matters did not leave time for this basic preparation. The government had previously stated that it did not want to have a retrial in which Sampson's lawyers had not read the transcripts of the prior trial. As explained below, in deciding the motion to continue, the court has considered both whether counsel reasonably and efficiently used the time available in the past, and the important work that remains to be performed in the future, regardless of the reasons that those tasks are not yet complete. In any event, it will order that Sampson's counsel read the relevant transcripts and certify that they have done so.

14

effectively prepare for a retrial by February 17, 2015. To some extent their predicament results from events that were unforeseen in March 2014, when the court scheduled the retrial for February 17, 2015. The failure of defense counsel, particularly Ms. Recer, to prioritize properly and efficiently focus on the most consequential issues has also contributed to their plight.

The most major unforeseen development was the court's decision in June 2014 to refer Sampson for an evaluation of his competency to stand trial pursuant to 18 U.S.C. §4241(b). See June 6, 2014 Order Concerning Competency Evaluation (Docket No. 1365). The Bureau of Prisons had informed the court that Sampson's counsel and investigators would be provided regular access to Sampson while the evaluation was being conducted in North Carolina at FMC-Butner. The court expected the evaluation would require forty-five days, and would be conducted while other issues in the case were being litigated.

Sampson filed several motions relating to the competency examination, which the court largely found to be unmeritorious. See, e.g., June 30, 2014 Mem. and Order (Docket No. 1392). He also belatedly filed a motion suggesting, but not fully developing, significant Fifth and Sixth Amendment issues concerning the competency evaluation, which the court decided in a fifty-page Memorandum and Order on November 8, 2014. See

Def.'s Emergency Mot. to Enforce This Court's Orders Regarding the Evaluation of Mr. Sampson for Competency to Stand Trial (Docket No. 1404); Nov. 8, 2014 Mem. and Order (Docket No. 1664). The need to decide all of the motions and issues relating to competency delayed the conclusion of matters concerning the evaluation until November 2014, when the court concluded there was no longer reasonable cause to question Sampson's competency to stand trial and, therefore, that no hearing to determine Sampson's competency was required. See id. at 43.

Contrary to the Bureau of Prisons' representation, Sampson's counsel and investigators had little access to him in the approximately four months Sampson was at FMC-Butner for the competency evaluation. Thus, their opportunity to work with Sampson to prepare for the retrial was impaired for a substantial period.

Contrary to Sampson's contention, the government made excellent efforts to produce discovery quickly in order to permit his counsel to prepare for the February 17, 2015 retrial. Nevertheless, the parties did not, until December 17, 2014, reach an agreement to resolve a dispute about potentially important discovery from the Bureau of Prisons regarding the government's assertion that Sampson's conduct since being sentenced to death in 2004 demonstrates his future

dangerousness. Sampson's counsel are entitled a reasonable period of time to conduct what is likely to be a difficult investigation into the disciplinary matters at issue and prepare to deal with them at retrial.

In addition, on December 18, 2014, the court denied the government's request for reconsideration of an order that it produce documents and information concerning the manner of certain executions by September 8, 2014. See Aug. 19, 2014 Order Memorializing Decisions at the Aug. 12 and 14, 2014 Hrgs., ¶4(a) (Docket No. 1505); Dec. 19, 2014 Order Concerning Botched Executions Discovery (Docket No. 1745). That discovery is now due to be produced today and could prompt further briefing.

There is also a motion to dismiss relating to the role of the grand jury that is not yet fully briefed because the government unsuccessfully moved for reconsideration of the order that it produce certain grand jury transcripts by August 28, 2014. See Aug. 19, 2014 Order, ¶4(b); Nov. 14, 2014 Order (Docket No. 1671). Sampson's final brief on this motion is due by January 6, 2015, and a hearing on it may be necessary.

Inefficiency by Sampson's counsel has also contributed to their predicament. Ms. Recer, particularly, devoted substantial time to filing twenty-six motions challenging, or seeking to preserve the right to challenge, the death penalty on constitutional grounds, supporting memoranda, and tens of

17

thousands of pages of related documents. This court welcomes zealous advocacy. However, as it has stated at several hearings, the constitutional motions did not clearly identify the issues presented, describe them in a consistent manner, or comply with the requirement that new issues or arguments not be raised in reply briefs. See In re Boston Regional Medical Center, Inc., 328 F. Supp. 2d 130, 142-43 (D. Mass. 2004) (citing cases). While the court will continue to consider seriously whether any of Sampson's constitutional motions are meritorious, the manner of their presentation has wasted considerable time of defense counsel, the government, and the court.[5]

In essence, this is a complex and most consequential case. In 2003, the government prevailed in persuading a constitutionally flawed jury to find that Sampson should be sentenced to death. It proposes to present at retrial the same evidence, supplemented only by additional evidence of Sampson's future dangerousness based on his disciplinary record while on death row. Defense counsel, understandably, do not wish to present only the evidence and arguments that were unsuccessful in 2003. Therefore, they must master all of the information relating to the first trial, conduct further investigation,

---

[5] As described below, the court is ordering measures to reduce the risk of a recurrence of this problem with regard to future submissions.

develop a strategy informed by that investigation, file motions in limine and any challenges to the original jury instructions, and finalize their preparation for the retrial after those issues are decided.

The work remaining to be done is substantial and fundamental to the defense. It must be performed by trial counsel, rather than delegated to others. The court now concludes that all of this work cannot be properly performed by February 17, 2015. Beginning the retrial on February 17, 2015 would, therefore, create a risk that counsel would not be able to represent Sampson effectively, thus threatening both the fairness and finality of the proceedings.[6]

A reasonable continuance will eliminate that risk. The court is concerned, however, that Sampson's counsel will not use the additional time to prepare their case efficiently. To reduce the possibility of additional unfocused, confusing motions, the court will issue an order requiring Sampson's counsel to seek leave of court before filing any substantive motion, and to

---

[6] The court has reached its conclusion about the risk involved in a retrial beginning on February 17, 2015 by evaluating the evidence and arguments of the parties. It has not simply accepted defense counsel's claim that they could not then effectively represent Sampson. Indeed, the court has not decided that counsel would not be able to provide Sampson the constitutionally required effective representation if the retrial began on February 17, 2015. Rather, the court has found that beginning the trial on February 17, 2015 would create a risk that defense counsel would be ineffective and, therefore, a risk of injustice.

describe succinctly and clearly the nature and bases for it. The court will also order that each of Sampson's lawyers certify that he or she has read each submission on Sampson's behalf before it is filed. In addition, the court will require that Sampson's attorneys certify that they have read all of the relevant transcripts of the 2003 trial.

The court recognizes that a continuance will inconvenience the government, which has made an arduous effort to make possible a retrial beginning on February 17, 2015. The continuance will also inconvenience the court, which has managed a docket that includes several hundred cases to give the highest priority and substantial time to preparing this case for retrial on February 17, 2015, and to devote up to four months to that proceeding.

The court understands that a continuance will prolong the agony and uncertainty of the retrial for the families and friends who loved and lost the people Sampson murdered. As indicated earlier, they have a right under the CVRA to a retrial without "unreasonable delay" and a "right to be treated with fairness and with respect for [their] dignity and privacy." See 18 U.S.C. §3771(a)(7),(8). These provisions codify considerations that concerned the court before the enactment of the statute and continue to do so.

The court has given significant weight to the victims' interest in its prior scheduling orders, in assiduously working to prepare this case for a February 17, 2015 retrial, and in deciding the current motion for a continuance. In March 2014, the court found that it would be reasonable to begin the retrial on February 17, 2015. It now concludes that doing so would not be reasonable.

A reasonable continuance will provide time for Sampson's counsel to prepare properly. It will also afford an opportunity for issues to be properly presented to the court and to be decided thoughtfully. This process should maximize the likelihood that the result of the retrial will be both fair and final--a result which will serve the interests of everyone so deeply concerned about this case.

In March 2013, Sampson requested that the retrial begin in the Fall of 2015. The court now finds that request to be justified. However, the court also now finds that beginning the retrial on or after October 15, 2015 would provide Sampson's counsel more time than necessary to prepare efficiently for that proceeding. Therefore, in view of the interests of the government and victims in a retrial as soon as reasonably possible, the court is granting Sampson's motion for a continuance, rescheduling the retrial for September 16, 2015,

and will adjust the deadlines for other pretrial events accordingly.

IV.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1.  Sampson's Motion for a Continuance in Response to Court Order (Docket No. 1742) is ALLOWED in part.

2.  The second proceeding to determine Sampson's sentence will commence on September 16, 2015.

3.  A separate Order addressing deadlines and related matters will be issued.

UNITED STATES DISTRICT JUDGE