IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CRIMINAL 1:01-cr-10384 |
| | ) | |
| GARY LEE SAMPSON | ) | |

### SUR-REPLY TO GOVERNMENT'S MOTION FOR RECUSAL

The government's reply memorandum on recusal misstates the law and ignores the undisputed relevant facts. Reply Mem. in Support of Mot. for Recusal Under 28 U.S.C. § 455(a), D.E. 2060 (08/07/2015) ("Gov't Reply"). This sur-reply addresses those issues.

At the outset the government argues that there is a "presumption" in favor of recusal. Gov't Reply at 1, 4. This is not the law. To the contrary, if anything, a district judge "is presumed to be impartial." *United States v. Denton,* 434 F.3d 1104, 1111 (8th Cir. 2006); *Adrian v. Mesirow Fin. Structured Settlements, LLC*, 588 F. Supp. 2d 216, 219 (D.P.R. 2008); *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988 (9th Cir. 2000); *United States v. Baskes*, 687 F.2d 165, 170 (7th Cir. 1981), *abrogated on other grounds by United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990); *United States v. Adams*, 38 F.3d 1217 (6th Cir. 1994); *Uniloc USA, Inc. v. Microsoft Corp.*, 492 F. Supp. 2d 47, 56 (D.R.I. 2007), *aff'd*, 290 F. App'x 337 (Fed. Cir. 2008); *see also Brooks v. New Hampshire Supreme Court*, 80 F.3d 633, 640 (1st Cir. 1996). And the substantial burden of proving otherwise is squarely on the party seeking recusal. *Denton,* 434 F.3d at 1111; *Baskes*, 687 F.2d at 170; *Adams*, 38 F.3d 1217;

*Kuperman v. New Hampshire*, No. CIV 09-CV-66-JD, 2009 WL 1026413, at *1 (D.N.H. Apr. 15, 2009).[1]

Justice Kennedy, concurring for himself and three other justices, along with the First Circuit, have described this burden under § 455(a) as a "high threshold." *Liteky v. United States*, 510 U.S. 540, 557-58 (1994) (Kennedy, J., concurring in the judgment); *In re U.S.*, 158 F.3d 26, 34 (1st Cir. 1998) (quoting *id*.). In particular, Justice Kennedy and the three other justices described that threshold in *Liteky*: "Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging this dispute." *Id.* at 557-58.

The facts disclosed by the Court surrounding last summer's screening and panel discussion and confirmed by the government's investigation fall far short of meeting this standard. This is not a close case. This can be seen by comparing failed recusal efforts raising far more significant contacts with prospective witnesses or involvement with issues overlapping the case under consideration.

*In re Beyond Innovation Technology Co., Ltd.*, 166 F. App'x 490, 491 (Fed. Cir. 2006), cited by the court in *United States v. O'Brien*, 18 F. Supp. 3d 25, 35 (D. Mass. 2014), is instructive on the relationship with an expert witness as a recusal issue. There, the expert witness on damages was "a close personal friend" of the trial judge and served as the judge's personal accountant. 166 F. App'x at 491. Denial of recusal was upheld on mandamus. *Id.* And it is well established that, as a general matter, friendship with a witness is not deemed a

---

[1] The government later cites *United States v. Snyder*, 235 F.3d 42, 46 (1st Cir. 2000) for the "presumption" principle. Gov't Reply at 4. But all *Snyder* said was that "in close cases, 'doubts ordinarily ought to be resolved in favor of recusal,'" which it also described as a "policy favoring recusal in close cases." *Id.* (quoting *In re U.S.*, 158 F.3d at 30). This does nothing to negate an *initial presumption* that a judge is impartial; rather it assumes that, after factual evidence has been offered to rebut the presumption, *then* a "close case" should be resolved in favor of recusal.

sufficient basis for recusal.  *United States v. Salemme,* 164 F. Supp. 2d 86, 104-07 (D. Mass. 1998) ("*Salemme II*") (analyzing and collecting cases); *O'Brien*, 18 F. Supp. 3d at 34-35 (collecting cases).[2]  Here, the Court's brief contact with Dr. Gilligan last summer does not come close to disqualifying circumstances, even if the court had been aware that Dr. Gilligan was a potential witness in this case.

The Court's connection to the screening of *The Life and Mind of Mark DeFriest* and his moderating of a panel discussion of the film likewise falls far short of a disqualifying circumstance.  The Court did not take a position on the issues of prison life raised by the film; in fact, as Gabriel London noted, the judge distanced himself from the film.  Interview of Gabriel London (07/08/2015), D.E. 2026-1, at 12 ("London Tr."); *see also* Def. Resp. to Govt's Mot. for Recusal Under 28 U.S.C. § 455(a), D.E. 2041, at 7-8 (07/31/2015) (collecting and quoting Court's statements at the panel discussion) ("Response" or "Resp.").  But, even had the Court spoken out against rape in prison, or unwarranted violence inflicted on prisoners by other inmates or by staff, that would not be a basis for recusal.

In *United States v. Pitera,* 5 F.3d 624, 626–27 (2d Cir.1993) for example, also a death penalty case, and one involving the narcotics trade, the court had shortly before the trial delivered a speech to drug enforcement officials which included both advice on steps to increase the likelihood of conviction in such cases and also a message to the group to take such steps.  On appeal, the trial court's denial of recusal was upheld.  Recusals were similarly denied in a

---

[2] *See also Shakir v. Rend Lake Coll.*, No. 08-CV-768-JPG, 2009 WL 87466, at *2 (S.D. Ill. Jan. 13, 2009)  (recusal not warranted where witness and judge were "personal friends for decades" and past partners of same law firm); *Bronick v. State Farm Mut. Auto. Ins. Co.*, No. CV-11-01442-PHX-JAT, 2013 WL 3489831, at *4 (D. Ariz. July 11, 2013) (judge had twice visited doctor-witness as patient; doctor-witness had been hired by judge's former law firm to perform independent medical examinations); *Blue v. Hill*, No. 3:10-CV-2269-L, 2014 WL 1461613, at *3 (N.D. Tex. Apr. 15, 2014), *aff'd* (Oct. 8, 2014), *aff'd sub nom. Hill v. Schilling*, 593 F. App'x 330 (5th Cir. 2014) (magistrate judge was friends with witness).

marijuana distribution case where the trial judge had expressed the view in three newspaper articles that marijuana distribution is a serious and pervasive social problem, *United States v. Bauer*, 84 F.3d 1549, 1560 (9th Cir. 1996); and in a methamphetamine distribution case where the trial judge had stated in a newspaper article that such distribution is "dangerous" and "difficult to eradicate," *United States v. Corbin*, 827 F. Supp. 2d 26, 31 (D. Me. 2011).

In each of these instances, the courts were stating the obvious — that conduct violating the law is undesirable. Had this Court expressed views that certain conduct depicted in the film — rape in prison and unwarranted violence against inmates— is undesirable, that would not be a ground for disqualification. Here, of course, in an abundance of caution, the Court made clear it was not expressing his views on the film or agreeing with the view of the panelists. As such, disqualification would clearly be inappropriate.[3]

The government further misstates the law when it argues that the recusal inquiry must be limited to consideration of the alleged grounds for recusal in isolation from the rest of the case. *See* Gov't Reply at 4 & n.1. The only case it cites for that proposition, *Home Placement Service, Inc. v. Providence Journal Co.*, 739 F.2d 671, 675 (1st Cir. 1984), provides no support at all since it did not even address that issue. In that case, there were two separate circumstances asserted as disqualifying. The circuit court found one wanting, but because they had been "lumped together," the second ground for disqualification, an interview of the court leading to a

---

[3] This leads to a separate point, the government's complaint that the panel discussion was one-sided. In the first instance, as Gabriel London pointed out, the film was a character study not a cause film, and thus he would not know how to get a person with a different view. London Tr. at 39-40. As it relates to the issues Mark DeFriest faced in prison, it is hard to imagine who would speak out in favor of rape in prison or prison violence to articulate another "side" for the panel discussion. Nor will there be two sides of prison abuse presented by this case for the Court to hear. The government is not calling any witnesses to testify that the abuse Mr. Sampson alleges is not abuse; rather presumably the government will argue, as it did previously, that the claims are overstated and in any case do not excuse the killings.

favorable article by the newspaper that was a party defendant before the trial court, had to be assessed separately. *Id*. at 675-76. In fact, in finding this second recusal ground meritorious, the appellate court considered it in the context of the record of the case, relying on the fact that the interview had occurred just as the trial court was in the decisionmaking process of the case. *Id*. at 666–67.

Not only is *Home Placement Service* no support for the government's "isolation argument," the law is actually quite the opposite. The governing standard is "whether a reasonable person, *were he to know all the circumstances*, would harbor reasonable doubts about the judge's impartiality." *El Fenix de Puerto Rico v. M/Y JOHANNY*, 36 F.3d 136, 141 (1st Cir. 1994) (emphasis in original) (internal quotation omitted); *see also United States v. Sampson*, 12 F. Supp. 3d 203, 213 n.7 (D. Mass. 2014) ("*Sampson*") ("fully informed, reasonable person") (citation omitted). In accord with this standard, courts routinely look beyond the limited alleged recusal facts to put them into the context of the entire record to determine how the relevant facts would appear to the reasonable knowledgeable person. *See, e.g.*, *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989); *In re U.S.*, 666 F.2d 690, 695 (1st Cir. 1981); *In re U.S.*, 158 F.3d at 31; *Sampson*, 12 F. Supp. 3d at 208-11 (discussing involvement and rulings in the history of this case since its inception in 2001). For example, to determine if a given motion for recusal would give the appearance of a tactic to obtain a more favorable judge, *Allied-Signal* requires resort to the record of the case as necessary. *See* 891 F.2d at 970; *Sampson*, 12 F. Supp. 3d at 212 (quoting *id*). Thus, the government's position that its earlier Hafer-related actions and the complaints of the families of the victims[4] are irrelevant is flatly contrary to the controlling law.

---

[4] *See* Resp. at 3–4, 26–27; exhibits cited therein.

These are relevant contextual facts as are the oft-voiced complaints by government counsel with respect to various past rulings of this Court.[5]

The government ignores the undisputed facts and instead seeks to support its argument for recusal on suspicion and speculation. This too is contrary to controlling law that requires the recusal inquiry to be grounded in fact. In *Allied Signal*, the court quoted *In re United States*, 666 F.2d at 690, adding emphasis as follows: "a charge of partiality must be supported by a *factual basis*." 891 F.2d 970. It also bears repeating that the average person in this inquiry is a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person." *United States v. Jordan*, 49 F.3d 153, 156 (5th Cir. 1995); *see Allied-Signal*, 891 F.3d at 970, 972; *Ricci*, 111 F.R.D at 374.

The government's reply memorandum is replete with cynical suspicions, often directly contrary to the undisputed facts. Gov't Reply at 6-11. For example, the facts disclosed by the Court and confirmed by the government investigation are that the judge's participation in the screening and the panel discussion was to assist a longtime family friend, that Dr. Gilligan's participation at the request of Mr. London was by the happenstance of him also being a family friend of the filmmaker and being in Martha's Vineyard for the summer, and that the pre-screening event was a casual lobster roll dinner with no significant substantive discussion. *See* Resp. at 4-8. Yet the government seeks to contravene these facts with what the average person might "reasonably suspect." Gov't Reply at 6. Not only is the average person for the recusal

---

[5] For example, the government has repeatedly and vehemently objected to several of the Court's rulings, such as the Court's handling of the competency report, Govt's Mot. for Reconsideration & Memo. in Support, D.E. 1580 (09/25/2015); Govt's Resp. to Court Orders Concerning Competency, D.E. 1622, at 1 n.1 (10/23/2014); the Court's decision to continue the trial from February to September, Hr'g Tr. at 15-16 (02/04/2015) the Court's intent to conduct voir dire of Terre Haute witnesses, *see* Govt's Reply at 17 (citing D.E. 1991); and the Court's decision to allow BOP discovery on botched executions, Govt's Resp. to Court's Order Regarding Executions, D.E. 1527 (09/08/2014).

inquiry not a suspicious person, but also the recusal decision must be based on facts, not conjecture or speculation.

It also cannot be disputed that Dr. Gilligan is a leading expert on prison conditions. The government does not dispute this in its briefing nor does it suggest that Dr. Gilligan's qualifications will be a contested issue in the upcoming hearing. Similarly, the government will not be eliciting testimony that prison abuse is acceptable, so this will not be a contested issue either. Moreover, the government's dismissal of the Court's explanation of its closing thanks to the panel and argument instead that the remarks could reasonably be taken as an endorsement of Dr. Gilligan's views, once again ignores the undisputed facts. *See* Gov't Reply at 10. The reasonable person, being fully informed of all the circumstances, would be aware that the Court on no less than three occasions expressly stated that it was not endorsing any of the panelists' opinions or comments.

The government's rejection of the facts candidly disclosed by the Court and fully confirmed by its ensuing investigation is particularly unwarranted given that allowing such investigation in the first place is most unusual if not unprecedented. It is a disputed issue whether in recusal situations discovery is even to be allowed. *See Ricci v. Key Bancshares of Maine, Inc.*, 111 F.R.D. 369, 373, 374 n.4 (D. Me. 1986). But, if allowed, discovery would at least present both sides an opportunity to attend any depositions. Here, however, the interviews of Mr. London and Mr. Paradise were decidedly one-sided affairs, and conducted in law enforcement facilities, by multiple law enforcement officers, including the U.S. Attorney's Office, the FBI, the IRS, and Massachusetts State Police, and without any notice to the defense. Even though Dr. Gilligan is a defense Rule 12.2 expert, he was initially contacted to come to the

police station for an interview without notice to defense counsel, who were only informed of the contact by Dr. Gilligan.

It is telling, therefore, that despite the unique opportunity afforded to the government, it does not rely on the confirming facts developed in the investigation, but instead cites to suspicions, speculation and conjecture.[6] As the Court stated in *In re United States*, 158 F.3d at 31, this simply cannot support a recusal effort.

> As we have explained, section 455(a) requires that we ask whether a reasonable person, *fully informed of all the relevant facts,* would fairly question the trial judge's impartiality. The facts proven below must dictate the answer to this question, not the unverified suspicions harbored by the government or the innuendo interspersed throughout both its recusal motion and its mandamus petition.

*Id.* (emphasis in original).

Because this is not a close case, the duty to sit doctrine remains in effect. *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir. 1979). This doctrine provides that a "trial judge must

---

[6] The government's efforts to cast aspersion on certain of these facts— which are equally now part of the recusal record—as things only a "judicial insider" and not a "reasonable person on the street" would know, goes nowhere. First, *Home Placement Service* itself, on which the government relies, in discussing the judge's connections to a Senator observed, "[i]t is common knowledge, or at least public knowledge, that the first step to the federal bench for most judges is either a history of active partisan politics or strong political connections or, as in the case of Judge Selya, both." 739 F.2d at 675. Similarly, the recusal issue in *Allied-Signal* was a judge's law clerks' connection to attorneys. In finding no appearance of bias, the First Circuit made multiple observations about the nature of the roles and use of judicial clerks. *See* 891 F.2d at 971 ("Ordinarily, it would not be difficult for a judge to assign some other clerk to work on the case"); ("Both bench and bar recognize, moreover, that judges, not law clerks, make the decisions.); ("[i]t is not necessarily easy, from an administrative perspective, for a judge to find and to deal in advance with all 'suspect' relationships of staff and parties, particularly in a legal world where the country's 25 biggest law firms together now employ more than 10,000 lawyers.") (internal quotation omitted). The First Circuit further made observations about the nature of the Puerto Rican legal community: "the federal bar in Puerto Rico is small; fewer than 500 lawyers practice in the federal district court. The number of Puerto Rican lawyers involved in this case is large; 51 Puerto Rican law firms (including 12 of the largest 20) represent defendants; at least 48 Puerto Rican lawyers represent plaintiffs."). *Id*. Here too, the inquiry must consider *all* the relevant record facts of this case, from the perspective of a *knowledgeable* person, not an uninformed one.

hear cases unless some reasonable factual basis to doubt the impartiality or fairness of the tribunal is shown by some kind of probative evidence." *Id*. Accordingly, contrary to the government's Reply, the burden on the Court's colleagues that would be created by a transfer of this case to another court on at this point is a most appropriate consideration. *See Sampson*, 12 F. Supp. 3d at 212 (discussing burden of transfer); *United States v. Salemme,* 164 F. Supp. 2d 49, 83 (D. Mass. 1998) ("*Salemme I*"); *Salemme II*, 164 F. Supp. 2d at 111 (same). The Court has heard argument or briefing on a large number of issues awaiting decision. All this work would have to be duplicated by another judge. This duplicative work only could even be considered after the new judge becomes knowledgeable about the previous sentencing hearing and the decisions made there, the appeal of that hearing, the 2255 proceeding and that appeal and the almost two year history of the new resentencing. Where, as here, there is no claim of actual bias and the facts fairly viewed by the fully informed average person do not rise to an appearance of bias, the duty to remain sitting in this particularly complex case is a weighty factor in the recusal analysis and "fortif[ies]" the conclusion that recusal is unwarranted. *Allied-Signal*, 891 F.2d at 971.

As argued previously, the salient facts related to the *DeFriest* screening and panel discussion are a far cry from the facts that determined the outcome in *In re School Asbestos Litigation,* 977 F.2d 764 (3d Cir. 1992). The government reply argues otherwise, Gov't Reply at 13-15, but both overlooks a key distinction and also misstates the defense position on the pre-screening argument. In the *In re School Asbestos* case, there were two sides to the science issues that were to be litigated at the heart of the upcoming trial. The trial judge there spent several days hearing multiple plaintiffs' experts present their side of the story, thereby obtaining a comprehensive pre-screening of one side of the upcoming battle of the experts over the science.

*Id*. at 780-82.  The trial court's expenses and the conference itself were funded by a plaintiffs' fund that the trial judge himself had created.  *Id.* at 779-82.

Here, by contrast, the Court participated in a screening and panel discussion of a film that was a character study of an unrelated man, convicted of an unrelated crime, and imprisoned in a state system unrelated to any at issue in this case.  The defense had nothing to do with the event, and at no time in the evening was this case mentioned or discussed.  Nor are there two sides to the abusive prison conditions that were part of the film and that do overlap to some extent with one aspect of Mr. Sampson's defense.  Unlike *In re School Asbestos*, the government is not going to argue at this resentencing that any of the abusive acts depicted in the film that are also a part of Mr. Sampson's history are either good or to be tolerated.

Moreover, the pre-screening issue has no meaningful application here.  The government first mischaracterizes the point made by the defense in its Response.  The defense did not argue that the Gilligan § 2255 declaration gave the Court a pre-screening before the *DeFriest* film, as the government contends, Gov't Reply at 13.  The point is that prior to this new sentencing the Court received a true pre-screening when the defense announced that Dr. Gilligan's testimony would be akin to his earlier declaration.  Resp. at 16 & n.7; Hr'g Tr. at 19 (06/19/2015).  In other words, the *DeFriest* film and the subsequent discussion was not a pre-screening of Dr. Gilligan's testimony, whereas his declaration is and there is nothing amiss in the Court being privy to it prior to this resentencing.

Accordingly, the Court should deny the government's motion for recusal.

*   *   *

In compliance with the Court's Order, by the signatures below, Ms. Recer, Mr. Burt, Mr. McDaniels and Ms. Wicht certify that they have read this submission.  *See* Amended Order

Regarding Scheduling, D.E. 1756 (12/26/2014).

Respectfully Submitted,

| /s/ Danalynn Recer | /s/ Michael Burt | /s/William E. McDaniels |
|---|---|---|
| Danalynn Recer, Esq. | Michael Burt, Esq. | William E. McDaniels, Esq. |
| Gulf Region Advocacy Center | Law Office of Michael Burt | Jennifer G. Wicht, Esq. |
| 2307 Union Street | 1000 Brannan Street | Williams & Connolly LLP |
| Houston, TX 77007 | Suite 400 | 725 Twelfth Street, NW |
| (713) 869-4722 | San Francisco, CA 94103 | Washington, D.C. 20005 |
|  | (415) 522-1508 | (202) 434-5055 |

Date:  August 13, 2015

## CERTIFICATE OF SERVICE

I, Jennifer G. Wicht, hereby certify that a true copy of the above document was filed electronically on August 13, 2015, which will cause the government to be served electronically with a copy of the document.

/s/ <i>Jennifer G. Wicht</i><br>Jennifer G. Wicht, Esq.