UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Cr. No. 01-10384-MLW |
| GARY LEE SAMPSON | ) | |

MEMORANDUM AND ORDER REGARDING
AMENDMENT OF OCTOBER 28, 2015 DECISION

WOLF, D.J. December 2, 2015

On October 28, 2015, the court denied twenty-five of defendant Gary Sampson's motions seeking to preclude, on constitutional grounds, the death penalty as a sentencing option in this case. See Memorandum and Order (the "Constitutional Decision") (Docket No. 2097). On November 10, 2015, defendant Gary Lee Sampson filed a Motion for Clarification and/or Reconsideration of the Constitutional Decision. See Docket No. 2109 (the "Clarification Motion"). Sampson also filed a supporting Memorandum. See Docket No. 2109-1 (the "Clarification Memorandum"). Arguing that "[a] mistake in apprehension found its way into the Court's opinion due to less than perfect citation work by the defense," Sampson clarifies the evidence on which he was relying, some of which was not in the record, and provides new sources for his arguments regarding the frequency with which juries have imposed death sentences in recent decades. Clarification Memorandum at 5. Sampson has not argued that the court made any legal error.

Rather, he seeks to correct, clarify, and supplement the sources for his factual assertions. On November 30, 2015, the government opposed reconsideration and reversal of the Constitutional Decision, but did not oppose amending it to reflect more accurately the statistics concerning jury verdicts on which Sampson relies.

For the reasons explained below, the Constitutional Decision is being withdrawn and an amended version, reflecting minimal alterations that do not affect the legal analysis or conclusions, is being entered with this Order. See Docket No. 2114 (the "Amended Constitutional Decision").

I. BACKGROUND

On August 4, 2014, Sampson filed a Motion to Preclude the Death Penalty as a Violation of the Eighth Amendment as Evidenced by Evolving Standards of Decency. See Docket No. 1456 (the "Evolving Standards Motion"); see also Recer Declaration in Support of Evolving Standards Motion (the "Recer Decl.") (Docket No. 1558). Sampson argued that the death penalty is contrary to evolving standards of decency and asked the court to preclude it as a potential sentence in this case. Among other things, Sampson argued that juries have, in recent years, imposed death sentences less often than in the past. Specifically, Sampson argued that "79 new death sentences in 2012 and 2013" is "less than a quarter

of the number of death sentences in 1994 (330)." Recer Decl., ¶13.

The government's opposition to Sampson's Evolving Standards Motion did not address this evidence. See Docket No. 1590. Arguing that Sampson's constitutional arguments were foreclosed by Supreme Court precedent, the government contended that Sampson's evidence did not "raise[] a question of fact that may entitle Sampson to relief in this court." Id. at 12.

In the Constitutional Decision, the court stated that "Sampson's characterization of the statistics concerning the number of defendants sentenced to death annually is not reliable." Constitutional Decision at 28. The court noted that "[t]he 330 death sentences Sampson attributes to 1994 appear in his source material as the total for 1992, 1993, and 1994." Id. at 29-29 (citing U.S. Department of Justice, Bureau of Justice Statistics, Capital Punishment, 2012--Statistical Tables, at 18 t.15 (Docket No. 1558-20) (the "DOJ 2012 Statistics")). A total of 330 death sentences was not included elsewhere in the DOJ 2012 Statistics.

The court also found that Sampson's statement that "[t]here were 79 new death sentences in 2012 and 2013," Recer Decl. at 6, was supported by "neither of his sources," Constitutional Decision at 29. The court noted that the two sources Sampson cited in support of that statement "indicate[d] that either 78 or 82 death

sentences were imposed in 2012, and another 83 were imposed in 2013." Id. (citing DOJ 2012 Statistics at 18 t.15, and Death Penalty Information Center, Death Sentences in the United States (the "DPIC Statistics")).

In his Clarification Memorandum, Sampson provides further context and additional sources for his arguments concerning the frequency with which jurors have imposed the death penalty. Sampson states that the statistic that there were 330 death sentences imposed in 1994 was "accurately reported from a different spreadsheet published by the [Bureau of Justice Statistics] . . ., [] which was not cited or included as an exhibit." Clarification Memorandum at 3. Sampson has now provided that spreadsheet. See Docket No. 2109-3. Sampson notes that the DOJ 2012 Statistics include a similar statistic, 315, for the number of death sentences imposed in 1994. See id. at 2-3 (citing DOJ 2012 Statistics, at 19 t.16). Sampson explains that he did not intend to refer to table 15 of the DOJ 2012 Statistics, in which 330 appeared as the number of defendants sentenced between 1992 and 1994 who were still on death row on December 31, 2012. Rather, he intended to rely on the total number of defendants sentenced to death in 1994, regardless of whether they were still alive and under a sentence of death on December 31, 2012.

Sampson also explains his sources for the statement that "[t]here were 79 new death sentences in 2012 and 2013." Recer Decl. at 6. Table 15 of the DOJ 2012 Statistics, on which the 330 number discussed earlier appears, lists 78 as the total number of prisoners who were sentenced to death in 2012 and still on death row on December 31, 2012, but Table 16 lists 79 as the total number of death sentences imposed in 2012. Sampson further states that the DPIC Statistics cited in the Recer Declaration now show that 82 death sentences were imposed in 2012 and 83 were imposed in 2013, but "[a]t the time the Recer Declaration was prepared in September 2014, DPIC reported 79 sentences in 2012 and 2013." Clarification Memo. at 3-4. This online source was not submitted as an exhibit to the Recer Declaration.

Sampson also discusses a new Bureau of Justice Statistics Report, Capital Punishment, 2013. See Docket No. 2109-4 (the "DOJ 2013 Statistics"). The updated statistics in that report show that 311 new death sentences were imposed in 1994, 82 new death sentences were imposed in 2012, and 83 new death sentences were imposed in 2013.

In its November 30, 2015 response to Sampson's Clarification Motion, the government stated that it did not oppose the motion "[t]o the extent Sampson merely seeks clarification of the statistics this Court relied upon in reaching its decision."

Docket No. 2110 at 1. However, the government opposed reconsideration and reversal of the Constitutional Decision. Id. Arguing that Sampson had not met "the demanding standard for reconsideration," the government stated that the differences in the statistics were "insubstantial" and that "jury verdicts are not the paramount factor" in an evolving standards of decency analysis. Docket No. 2110 at 2-3. "[E]ven accepting Sampson's adjusted facts as true," the government concluded, "he is not entitled to relief." Id. at 3.

## II. LEGAL STANDARD

"[D]istrict courts have the inherent authority to reconsider their interlocutory orders outside the sentencing context." United States v. Bravo-Fernandez, 790 F.3d 41, 61 n.14 (1st Cir. 2015). The First Circuit has articulated a three-part test to be employed by district courts in deciding motions to reconsider. A district court may grant a motion for reconsideration "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Cintron, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)); see also Memorandum and Order Regarding Reconsideration at 5-9 (Docket No. 2107).

Motions for reconsideration should not be granted based on new evidence when "[a]ll of the evidence [offered in support of the motion for reconsideration] was available to [the movant] at the time the original motion was filed." Allen, 573 F.3d at 54. In addition, any new evidence must be capable of causing the court to alter its original decision. See Melendez v. Autogermana, Inc., 622 F.3d 46, 56 (1st Cir. 2010) (affirming denial of reconsideration where movant "failed to point to any newly discovered evidence capable of altering [the original] conclusion"). However, a "motion for reconsideration should be granted if the court '. . . has made an error not of reasoning but [of] apprehension'" of a party's arguments or evidence. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008) (quoting Sandoval Diaz v. Sandoval Orozco, No. 01-1022, 2005 WL 1501672, at *2 (D.P.R. June 24, 2005)).

III. ANALYSIS

As the court has previously observed, it is difficult to "put[] together jigsaw puzzles," especially where, as here, some of the pieces were previously missing. Constitutional Decision at 55 (quoting Dec. 3, 2014 Tr. at 76). The court has reviewed Sampson's submissions, and concludes that it is appropriate to amend the Constitutional Decision's discussion of Sampson's evidence concerning the frequency with which juries impose the

death penalty. The court has also considered whether the new and clarified evidence requires altering any of the legal analysis or conclusions and finds that it does not.

Sampson's Clarification Memorandum explains how "less than perfect citation work by the defense" resulted in inconsistencies between Sampson's briefing and his sources, and an incomplete evidentiary record as to the frequency with which jurors have imposed the death penalty in recent years. These issues illustrate the important role of district court fact-finding in Eighth Amendment litigation. As the court wrote in the Constitutional Decision, "[f]actfinding is, in the first instance at least, typically done based on evidence presented in the district courts, where the adversary process operates to test that evidence and material disputes are decided by a trial judge or jury." Constitutional Decision at 9-10. Sampson's Clarification Memorandum is a part of that process, and contributes to a more complete and reliable evidentiary record.

The court now finds that the discussion in the Constitutional Decision of the evidence concerning the frequency at which jurors impose death sentences should be amended. In Eighth Amendment litigation, the district court must "examine[] the alleged facts on which [a defendant] relies and decide[] whether they are significantly different than the facts in the cases in which the

Supreme Court or the First Circuit decided the analogous issue." Constitutional Decision at 10. This requires identifying and analyzing the most reliable and current evidence available. The court is persuaded that the Constitutional Decision, which analyzed statistics provided by Sampson with inaccurate or confusing citations, or without providing the source relied on to the court, is not based on such evidence.

Sampson's Clarification Memorandum discusses four possible sources of evidence concerning jury verdicts. First, it discusses Table 16 of the DOJ 2012 Statistics, which shows that 315 defendants were sentenced to death in 1994 and 79 were sentenced to death in 2012. See DOJ 2012 Statistics, at 19 t.16. Second, it discusses the "raw data" supporting a figure in the DOJ 2012 Statistics, which show that 330 defendants were sentenced to death in 1994 and 79 were sentenced to death in 2012. See U.S. Department of Justice, Bureau of Justice Statistics, National Prisoner Statistics (NPS-8) (Docket No. 2109-3). These statistics, which Sampson relied upon with improper attribution in the Recer Declaration, are available on the Bureau of Justice Statistics web page and were provided as an exhibit to Sampson's Clarification Motion. Id. Third, in the Recer Declaration, Docket No. 1558 at ¶13, Sampson discussed the DPIC Statistics as they existed on October 2, 2014, which show that 79 defendants were sentenced to

death in 2012 and 79 were sentenced to death in 2013. See Docket No. 2109-4. Sampson did not provide this online source as an exhibit to the Recer Declaration, and states that the statistics reported in it have changed since he cited them in the Recer Declaration. Sampson has now provided the DPIC Statistics as an exhibit, which shows the source as it existed on October 2, 2014. See Docket No. 2109-4. Fourth, Sampson has provided the DOJ 2013 Statistics report, which shows that 311 defendants were sentenced to death in 1994, 82 were sentenced to death in 2012, and 83 were sentenced to death in 2013. See Docket No. 2109-5. That report was issued in December 2014, after Sampson's motion was filed, but before it was decided. Id.

Sampson argues that the DOJ 2013 Statistics report is "the most definitive source of death sentences imposed in the United States per year." Clarification Memo. at 4. He further states that this report "obviates any need for reference to DPIC data," noting that the Bureau of Justice Statistics is not a "defense-leaning organization." Id. at 5. The court understands Sampson to be relying principally on the 2013 DOJ Statistics, as well as the DOJ 2012 Statistics and the "raw data" supporting that report. Each of these three sources shows that the number of new death sentences in either 2012 or 2013 was approximately one quarter the number of new death sentences in 1994.

It is appropriate, therefore, to amend and update the statistics discussed in the Constitutional Decision. Such amendments require revising the court's statement that the data cited by Sampson "indicate that the number of death sentences being imposed by jurors has been declining, but not as substantially as Sampson claims." Constitutional Decision at 30 (emphasis added). Instead, it is appropriate to conclude only that the number of death sentences being imposed by jurors has been declining.

This amendment concerning the facts is not material to any of the legal conclusions previously reached. In the Constitutional Decision, the court found that despite perceived errors in Sampson's calculations, "the number of death sentences being imposed by jurors has been declining." Id. at 30. This factual finding contributed to the conclusion that "[t]he objective indicia of evolving contemporary standards of decency show that support for the death penalty is eroding in the United States." Id. at 32.

However, the court noted that "a majority of states and the federal government still have statutes authorizing the imposition of the death penalty." Id. The court explained that "the number of states that have statutes authorizing capital punishment is important to assessing the objective indicia of contemporary values" because "[s]ince Gregg in 1976, the Supreme Court has found

that imposition of the death penalty violated contemporary standards of decency only when a majority of states had statutes that prohibited capital punishment in the circumstances at issue." Id. at 20-21.

Despite the erosion of support for the death penalty evidenced by, among other things, the decline in death sentences imposed annually, the court ultimately concluded that:

> [A] majority of the states and the federal government still have statutes authorizing the imposition of the death penalty, and juries in the past decade have imposed death sentences in most jurisdictions that authorize it. In these circumstances, . . . the record does not include sufficient objective evidence to prove that the [Federal Death Penalty Act] provides for cruel and unusual punishment in violation of the Eighth Amendment.

Id. at 32.

The clarified and updated statistics presented in the Clarification Memorandum do not alter the court's analysis or conclusion. Therefore, the court is not reversing the Constitutional Decision. However, the court is withdrawing the original October 28, 2015 Memorandum and Order, and replacing it with an amended version that includes clarified and updated statistics concerning jury verdicts to make the decision more accurate and complete.

The Amended Constitutional Decision shall serve as the record of the court's decision on the motions it addresses. The original discussion states in pertinent part:

> Sampson [] contends that the number of death sentences imposed each year has declined since the 1990s. For example, Sampson argues that statistics show that the "79 new death sentences in 2012 and 2013" is "less than a quarter of the number of death sentences in 1994 (330)." See Recer Decl., ¶13 (Docket No. 1558).
>
> However, Sampson's characterization of the statistics concerning the number of defendants sentenced to death annually is not reliable. The 330 death sentences Sampson attributes to 1994 appear in his source material as the total for 1992, 1993, and 1994. See U.S. Department of Justice, Bureau of Justice Statistics, Capital Punishment, 2012--Statistical Tables, at 18 t.15 (Docket No. 1558-20). In addition, neither of Sampson's sources supports the contention that there were "79 new death sentences in 2012 and 2013." Rather, they indicate that either 78 or 82 death sentences were imposed in 2012, and another 83 were imposed in 2013. See id.; Death Penalty Information Center, Death Sentences in the United States, available at http://www.deathpenaltyinfo.org/death-sentences-united-states-1977-2008.
>
> Nevertheless, the court has considered the evidence of jury verdicts Sampson offered in support of his Evolving Standards Motion. While not as influential as legislative action and the direction of it, the court continues to understand that jury verdicts provide valuable, objective evidence of contemporary community values. They indicate that the number of death sentences being imposed by jurors has been declining, but not as substantially as Sampson claims.

Constitutional Decision at 28-30 (footnotes omitted). The Amended Constitutional Decision states in pertinent part:

> Sampson [] contends that the number of death sentences imposed each year has declined since the 1990s. Sampson first provided evidence of jury verdicts through 2012 to support this assertion in the September 16, 2014 Recer Declaration. See Docket No. 1558 ¶13. After the October 28, 2015 Memorandum and Order was issued, Sampson submitted additional statistics concerning jury verdicts through 2013. Motion for

> Clarification and/or Reconsideration & Ex. C (Docket No. 2109); see also Memorandum and Order Regarding Amendment of October 28, 2015 Decision (Docket No. 2113). This evidence shows that the number of new death sentences imposed in 2012 or 2013 is approximately one quarter the number of new death sentences imposed in 1994. See U.S. Department of Justice, Bureau of Justice Statistics, Capital Punishment, 2012 -- Statistical Tables, at 19 t.16 (Docket No. 1558-20) (315 new death sentences in 1994; 79 new death sentences in 2012); U.S. Department of Justice, Bureau of Justice Statistics, National Prisoner Statistics (NPS-8) (Docket No. 2109-3) (330 new death sentences in 1994; 79 new death sentences in 2012); U.S. Department of Justice, Bureau of Justice Statistics, Capital Punishment, 2013, at 19 t.16 (Docket No. 2109-5) (311 new death sentences in 1994; 82 new death sentences in 2012; 83 new death sentences in 2013). The court has considered the evidence of jury verdicts Sampson has offered in support of his Evolving Standards Motion. While not as influential as legislative action and the direction of it, the court continues to understand that jury verdicts provide valuable, objective evidence of contemporary community values. They indicate that the number of death sentences being imposed by jurors has been declining.

Amended Constitutional Decision at 28-30 (footnotes omitted).[1]

---

[1] In addition to the amendment made in response to Sampson's motion, the Amended Constitutional Decision includes a minor change to the discussion of Sampson's Motion to Bar the Imposition of the Federal Death Penalty Due to Unconstitutional Delay (Docket No. 1434). In the original decision, the court noted that with one exception, federal courts have rejected arguments that the time it takes to execute prisoners violates the Constitution. The exception was Jones v. Chappell, 31 F. Supp. 3d 1050, 1053 (C.D. Cal. 2014), which the court distinguished on factual grounds. In Jones, the district court held that systemic delays in California's capital punishment system made the petitioner's death penalty unconstitutionally arbitrary. Id. at 1062-63. After the Constitutional Decision was issued, the Ninth Circuit reversed the district court's decision in Jones. See Jones v. Davis, --- F.3d ---, 2015 WL 6994287 (9th Cir. Nov. 12, 2015). The Ninth Circuit held that because the district court's "systemic delay" conclusion was not dictated by Supreme Court precedent, it constituted a new

## IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Defendant's Motion for Clarification and/or Reconsideration (Docket No. 2109) is ALLOWED to the extent that it seeks factual clarifications, but DENIED to the extent that it seeks the alteration of any legal conclusions.

2. The October 28, 2015 Memorandum and Order (Docket No. 2097) is WITHDRAWN.

3. The December 2, 2015 Memorandum and Order (Docket No. 2114) shall serve as the record of the court's decisions on the motions it addresses.



UNITED STATES DISTRICT JUDGE

---

rule of constitutional law. Id. at *6-11. The Ninth Circuit concluded that under Teague v. Lane, 489 U.S. 288 (1989), the district court could not consider this novel theory on habeas review. Jones, 2015 WL 6994287, at *12. The Amended Constitutional Decision adds a footnote reporting this subsequent history. See Docket No. 2114 at 82 n.28. As the reversal supports the court's original analysis and conclusion, no alteration to the body text of that discussion has been made.