UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal Action No. 01-10384-LTS |
| GARY LEE SAMPSON | ) ) ) | |

ORDER ON UNRESOLVED PORTIONS OF GOVERNMENT'S
MOTION IN LIMINE (DOC. NO. 1889) AND DEFENDANT'S MOTION
FOR RECONSIDERATION BASED ON *HURST v. FLORIDA* (DOC. NO. 2171)

June 2, 2016

SOROKIN, J.

Gary Lee Sampson pled guilty to two counts of carjacking resulting in death and was sentenced to death in 2004. In 2011, the Court (Wolf, J.) vacated the death sentence in light of juror misconduct, and the First Circuit affirmed, ruling that Sampson is entitled to a new penalty phase trial pursuant to 28 U.S.C. § 2255. Sampson v. United States, 724 F.3d 150, 170 (1st Cir. 2013).

The case was reassigned to this session of the Court on January 6, 2016. At that time, one of several pending motions was the government's Omnibus Motion in Limine. Doc. No. 1889. The Omnibus Motion contained requests to preclude seven separate categories of evidence or argument. Previous rulings have resolved the government's requests as to five of those categories. See Doc. No. 2259 at 15-16 (regarding the scope of mitigation evidence and execution impact evidence); Doc. No. 1992 at ¶¶ 6-8 (regarding comparative proportionality evidence, the unavailability of the death penalty under Massachusetts law, and evidence regarding other executions).

1

Two issues raised in the Omnibus Motion remain outstanding and are resolved in this Order: 1) whether to preclude defense counsel from arguing that the government "must prove beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors or . . . that a sentence of death is justified"; and 2) whether to preclude Sampson from making an unsworn statement of allocution to the jury during his penalty phase retrial.  Doc. No. 1889 at 10-13, 28-29.  Sampson opposed both of these requests.  Doc. No. 1918 at 17-26, 50-63.  He supplemented his opposition to the first request after the Supreme Court decided Hurst v. Florida, 136 S. Ct. 616 (2016), and also sought reconsideration of two prior rulings he suggests were inconsistent with Hurst.  Doc. No. 2171.  The government opposed Sampson's supplemental filing.  Doc. No. 2212.

For the reasons that follow, the two unresolved requests presented in the government's Omnibus Motion are DENIED, as is Sampson's motion for reconsideration based on Hurst.

I.  Motion to Preclude Arguments That "Beyond a Reasonable Doubt" Standard Applies to Weighing Process, and Motion for Reconsideration Based on *Hurst v. Florida*

   A.   *Background*

Citing the First Circuit's opinion disposing of Sampson's direct appeal, the government urges the Court to preclude Sampson from suggesting during jury selection, or arguing during trial, that the "beyond a reasonable doubt" standard governs the jurors' weighing of aggravating and mitigating factors during the "selection phase" of the capital sentencing process pursuant to the Federal Death Penalty Act ("FDPA").  Doc. No. 1889 at 28-29 (citing United States v. Sampson, 486 F.3d 13, 32 (1st Cir. 2007)).

Relying on Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, including two Supreme Court decisions that post-date the First Circuit's resolution of Sampson's direct appeal, Sampson argues that application of the reasonable doubt standard to the jury's determination of

2

whether death is justified is not only prudent, but constitutionally mandated.  Doc. No. 1918 at 50-63; Doc. No. 2171-1 at 15.  This is so, Sampson asserts, because the jury's determination that any aggravating factors "sufficiently outweigh" any mitigating factors and "justify a sentence of death," 18 U.S.C. § 3593(e), is a "determination increasing the maximum . . . statutorily-permissible sentence."  Doc. No. 1918 at 56.

Following this view to its logical conclusion, Sampson seeks reconsideration of prior decisions denying two other motions presenting Apprendi-based challenges to the FDPA and the indictment in this case.  Doc. No. 2171; see Doc. No. 1450 ("Motion to Dismiss the Indictment for Failure to Include Non-Statutory Aggravating Factors"); Doc. No. 1452 ("Motion to Prohibit the Government from Seeking Death Through the Application of an Unconstitutional Statute, Which Fails to Require the Government to Prove Beyond a Reasonable Doubt that Death is the Appropriate Punishment"); see also United States v. Sampson, No. 01-cr-10384, 2015 WL 7962394, at *28-*30 (D. Mass. Dec. 2, 2015) (Wolf, J.) (denying both previous Apprendi challenges).

During Sampson's first trial, Judge Wolf instructed the jury, in relevant part, as follows:

> If . . . you decide that the prosecution has proven that the aggravating factor or factors outweigh the mitigating factors, you must decide if the prosecution has also ***proven beyond a reasonable doubt that those aggravating factors sufficiently outweigh the mitigating factors to make death the appropriate penalty*** for Mr. Sampson's crime rather than life in prison without possibility of release. . . . However you personally define sufficiency, the prosecution must ***convince you beyond a reasonable doubt that the aggravating factor or factors sufficiently outweigh the mitigating factors to make death the appropriate penalty*** in this case.  As I told you earlier, this is a heavy burden.  More than a strong probability is required.  You must be ***certain beyond any reasonable doubt that a death sentence should be imposed*** before voting for it.  Death is, of course, the ultimate irreversible punishment.  You must not sentence Gary Sampson to die unless you are ***convinced beyond a reasonable doubt that death is the appropriate punishment***. . . . If you decide that the prosecution has not ***proven beyond a reasonable doubt that the death penalty is justified***, you do not have to give a reason for that decision.

Doc. No. 1870 at 57-59 (emphasis added); accord Sampson, 486 F.3d at 29.

In a post-trial opinion, Judge Wolf explained his view that neither the FDPA nor the Constitution "impose a reasonable doubt requirement on the weighing process." United States v. Sampson, 335 F. Supp. 2d 166, 234-38 (D. Mass. 2004). He reasoned that "the sentencing decision in a capital case is, in its most important respects, fundamentally different than any other task that a jury is called upon to perform in our criminal justice system," as capital sentencing juries "exercis[e] discretion in sentencing that is ordinarily exercised by judges." Id. at 238. Judge Wolf concluded that "[w]hether a jury's sentencing decision is right or wrong is not something that is capable of proof in the traditional sense," and he "initially" intended "to not only leave the determination of what is sufficient to justify a death sentence to the jurors, but also to permit the jurors to decide how certain they must be to impose a death sentence." Id.

Ultimately, though, "the government [in 2003] *withdrew its objection* to jurors being instructed that the weighing process carries a reasonable doubt burden provided that the court did not permit the defendant to argue that the jurors should impose a stricter burden on the government." Id. (emphasis added). "Relying on the government's revised position and viewing it as prudent," Judge Wolf "incorporated a reasonable doubt standard in the instructions relating to the weighing process" as set forth above. Id.

On appeal, the First Circuit agreed with Judge Wolf's initial view, holding that "Congress did not intend the reasonable doubt standard to apply to the weighing process" under the FDPA, and that the "weighing constitutes a process, not a fact to be found," making Apprendi and its requirements inapplicable to that final stage of a capital jury's determination. 486 F.3d at 31-32. The First Circuit found no error in Judge Wolf's instructions, though, concluding the instructions "clearly communicated to jurors the relatively straightforward proposition that they, as

4

individuals, had to be certain that death was the appropriate punishment before imposing it," and that any confusion which arguably could have arisen based on the inclusion of "both a personal notion of sufficiency and a reasonable doubt standard" was harmless error.[1]  Id. at 33.

      B.      *Relevant Legal Principles*

Resolution of the parties' motions related to the reasonable doubt standard turns on the application of Apprendi and its progeny in the capital sentencing context.  In Apprendi, the Supreme Court held, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.  The Court explained that it was not "impermissible for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment *within the range* prescribed by statute" for a particular crime, as "judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case."  Id. at 481 (emphasis in original).  However, "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system" occurred where the trial judge's determination that Apprendi's crime (possessing a firearm for an unlawful purpose) was motivated by racial bias doubled the range of permissible sentences.  Id. at 497.

Two years later, the Supreme Court considered Apprendi's impact in a capital case and held the Sixth Amendment requires that "an aggravating circumstance necessary for imposition of the death penalty" be found by a jury, and not a sentencing judge.  Ring v. Arizona, 536 U.S.

---

[1] According to the First Circuit, there was "no reasonable likelihood that jurors may have interpreted [Judge Wolf's] instruction in a way that could have harmed Sampson." 486 F.3d at 33.  The Court of Appeals discerned "only two possibilities: either the jurors eschewed the reasonable doubt standard vis-à-vis the weighing process (which . . . would have comported fully with the law) or they applied the reasonable doubt standard (which would have *benefitted* Sampson by imposing a more onerous burden on the government)."  Id. (emphasis in original).

584, 609 (2002). The Ring Court reasoned that "[t]he right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death." Id.

The First Circuit considered both Ring and Apprendi in rejecting Sampson's claim regarding the reasonable doubt standard on direct appeal. See 486 F.3d at 31-32. Since then, though, the Supreme Court has issued two more decisions interpreting the scope of Apprendi, and Sampson suggests both support his position. In Alleyne v. United States, the Court concluded "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. 2151, 2155 (2013). This is so because "a finding of fact [which] alters the legally prescribed punishment so as to aggravate it . . . necessarily forms a constituent part of a new offense and must be submitted to the jury." Id. at 2162. The Alleyne Court, however, admonished that its "ruling . . . does not mean that any fact that influences judicial discretion must be found by a jury." Id. at 2163.

This year, the Supreme Court invalidated Florida's capital sentencing scheme, finding it violated the Sixth Amendment because it "allow[ed] a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty." Hurst, 136 S. Ct. at 624. The Florida statute at issue, quoted by the Hurst majority, required the sentencing judge to find the "facts" that "sufficient aggravating circumstances exist," **and** that "there are insufficient mitigating circumstances to outweigh the aggravating circumstances" in order to impose a death sentence. Fla. Stat. § 921.141(3); accord 136 S. Ct. at 622. The Supreme Court, however, focused its analysis and its ultimate statements of the holding in Hurst on the first of those "facts" – the finding of aggravating factors – and, besides

6

quoting the statutory language, included no discussion of the second – the weighing of mitigating and aggravating factors. See generally 136 S. Ct. at 620-24. Looking only to Hurst, then, it is at best unclear whether the Supreme Court would extend its reasoning and apply Apprendi in such a manner that would require application of a reasonable doubt standard to the weighing portion of a capital sentencing determination.

However, another decision issued just a week after Hurst undermines Sampson's position. See generally Kansas v. Carr, 136 S. Ct. 633 (2016).[2] Although Carr presented a different set of issues and is not an Apprendi-based decision, the majority opinion authored by Justice Scalia contains the following passage which, though plainly dictum, is just as plainly pertinent to the issue presented here:

> [T]he ultimate question whether mitigating circumstances outweigh aggravating circumstances is mostly a question of mercy – the quality of which, as we know, is not strained. It would mean nothing, we think, to tell the jury that the defendants must deserve mercy beyond a reasonable doubt; or must more-likely-than-not deserve it. It *would* be possible, of course, to instruct the jury that *the facts establishing* mitigating circumstances need only be proved by a preponderance, leaving the judgment whether those facts are indeed mitigating, and whether they outweigh the aggravators, to the jury's discretion without a standard of proof. . . . In the last analysis, jurors will accord mercy if they deem it appropriate, and withhold mercy if they do not, which is what our case law is designed to achieve.

136 S. Ct. at 642 (emphasis in original).

C.   *Discussion*

Having carefully considered the prior decisions of Judge Wolf and the First Circuit in this case, as well as the line of Supreme Court cases summarized above, the Court is not persuaded that the Constitution mandates application of the reasonable doubt standard of proof to the jury's

---

[2] Hurst was argued six days after Carr, and the decision in Carr was issued eight days after the decision in Hurst. Six of the same justices were in both majorities; five of them remain on the Court today.

weighing of aggravating and mitigating factors under the FDPA.  For the reasons explained by Judge Wolf for his initial inclination not to require the jury to make its final determination of whether death is justified "beyond a reasonable doubt," 335 F. Supp. 2d at 234-38, by the First Circuit in finding that a reasonable doubt instruction was not required as to the weighing "process," 486 F.3d at 31-33, and by Justice Scalia in positing that the jury's decision whether to afford mercy is not susceptible to any standard of proof, Carr, 136 S. Ct. at 642, the Court rejects Sampson's assertion that the Sixth Amendment requires a capital sentencing jury to find that the aggravating factors "sufficiently outweigh" the mitigating factors and justify a death sentence "beyond a reasonable doubt."  Once a jury reaches the point where it must weigh aggravating and mitigating factors and determine whether a death sentence is justified, "it is exercising discretion in sentencing that is ordinarily exercised by judges." Sampson, 335 F. Supp. 2d at 238.  At that point, the jury is "imposing a judgment *within the* range prescribed by statute" for the relevant capital offense (viewing that "range" as life imprisonment without possibility of release, or death), a process which Apprendi itself excepts from its reach.  530 U.S. at 481; accord Alleyne, 133 S. Ct. at 2163.  Accordingly, Sampson's motion for reconsideration of his prior Apprendi-related motions is DENIED.

However, resolution of the government's motion does not end with the Court's conclusion that the Sixth Amendment does not mandate application of the reasonable doubt standard to the weighing process.  As the Court has emphasized previously, e.g., Doc. No. 2259 at 5, Sampson's penalty phase retrial will be conducted pursuant to 28 U.S.C. § 2255.  As such, the Court has broad equitable discretion "to restore [Sampson] to the circumstances that existed before the violation" of his rights that necessitated the new trial.  United States v. Sampson, 82 F. Supp. 3d 502, 505-06 (D. Mass. 2014).  Not only did Judge Wolf instruct the jury to apply a

reasonable doubt standard to its ultimate determination of whether a death sentence was justified for Sampson, he did so ***with the government's consent***.  Sampson, 335 F. Supp. 2d at 238. Although the First Circuit ruled the reasonable doubt instruction was not constitutionally mandated, it found no error in Judge Wolf's inclusion of the standard in his instructions regarding the weighing process.  486 F.3d at 33.

With the purpose of § 2255 in mind, then, the Court DENIES the motion to preclude Sampson from arguing that the government must prove beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors, or that a sentence of death is justified.  In short, the Court here, as it has elsewhere, will follow the path laid out by Judge Wolf at the first trial.

II.     Motion to Preclude Unsworn Allocation by Sampson

The government also seeks to preclude Sampson from offering unsworn allocution during his penalty phase retrial.  Doc. No. 1889 at 10-13.  According to the government, Sampson has no constitutional or statutory right to allocute, the Federal Rules of Criminal procedure do not permit allocation in a capital case before a sentencing jury, any allocution would fail the balancing test in 18 U.S.C. § 3593(c) governing admission of evidence under the FDPA, and if Sampson wishes to address the jury he may testify on his own behalf, under oath and subject to cross-examination.  Id.

Sampson urges the Court to find that capital defendants – like all other criminal defendants – have a constitutional, common-law, and/or statutory right to allocute; that even if no such right exists, the FDPA grants the Court the discretion to permit allocation; and that some other federal courts have permitted capital defendants to offer allocution before sentencing juries. Doc. No. 1918 at 17-26.

9

Allocution is "[a]n unsworn statement from a convicted defendant to the sentencing judge *or jury* in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else *in an effort to lessen the impending sentence*. This statement is not subject to cross-examination." Black's Law Dictionary 91 (10th ed. 2014) (emphasis added). Permitting criminal defendants to allocute before they are sentenced is a tradition "[a]ncient in law" and "deeply embedded" in our criminal justice system. United States v. De Alba Pagan, 33 F.3d 125, 129 (1st Cir. 1994). It "is both a rite and a right." Id. The practice is incorporated in the Federal Rules of Criminal Procedure, which provide that, "[b]efore imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information *to mitigate the sentence*." Fed. R. Crim. P. 32(i)(4)(A)(ii) (emphasis added).

Whether allocution is a constitutionally protected right is a complicated question that the Court need not resolve here. Compare United States v. Hall, 152 F.3d 381, 395-96 (5th Cir. 1998) (finding no constitutional due process right to allocution),[3] with United States v. Chong, 104 F. Supp. 2d 1232, 1234-36 (1999) (finding that Ninth Circuit law supports finding a constitutional basis for the right to allocution). It is enough for present purposes to note that the weight of authority suggests whether to permit allocution by a capital defendant before the jury presiding over his penalty phase trial is within the discretion of the judge presiding over the trial. See United States v. Lawrence, 735 F.3d 385, 406-08 (6th Cir. 2013) (suggesting the FDPA permits allocution but finding denial thereof was not an abuse of discretion "[c]onsidering the record as a whole"); United States v. Caro, 597 F.3d 608, 635 n.24 (4th Cir. 2010) (noting "the

---

[3] Hall was abrogated on grounds not relevant to the allocution question by United States v. Martinez-Salazar, 528 U.S. 304 (2000).

decision of whether to allow [a capital defendant] allocution fell within the district court's discretion," but finding no abuse of discretion where request to allocute was denied based on FDPA balancing test); United States v. Wilson, 493 F. Supp. 2d 509, 511 (E.D.N.Y. 2009) ("What is clear, however, is that this court has the discretion to permit [the capital defendant] to allocute."); United States v. Henderson, 485 F. Supp. 2d 831, 845-47 (S.D. Ohio 2007) (recognizing the court "has discretion to permit [allocution] pursuant to Rule 32" and granting capital defendant's motion to allow allocution during penalty phase); cf. Hall, 152 F.3d at 397 n.8 (deeming it "at least arguable that the district court may have discretion to admit an unsworn statement of remorse" by a capital defendant); Chong, 104 F. Supp. 2d at 1233 (finding a right to allocute under Rule 32 and the Constitution); but cf. United States v. Honken, 541 F.3d 1146, 1172 (8th Cir. 2008) (finding denial of motion to allocute before sentencing jury did not violate constitutional or statutory right, without addressing whether trial courts are otherwise vested with discretion to allow allocution).

The Court is satisfied that allowing Sampson to allocute before the penalty phase jury would be consistent with the language and purpose of Rule 32,[4] would be permissible under the

---

[4] Although the relevant subsection of Rule 32 requires "the court" to "address the defendant personally," it does not prohibit the court from allowing a defendant "to speak or present any information" to a jury in a case where the jury, rather than the judge, will select the appropriate sentence. As other courts have reasoned, the purpose of this provision, which permits a defendant the opportunity "to mitigate the sentence" before it is imposed, would be defeated if allocution were not permitted at a time when it might have some effect on the sentencing determination. See Henderson, 485 F. Supp. 2d at 846 ("A right to allocute only before the judge reads the jury's sentence would be an empty formality."); cf. United States v. Buckley, 847 F.2d 991, 1002 (1st Cir. 1988) (finding "generous allocution opportunity" at time of provisional sentencing did not eliminate the need to permit allocution at time of final sentencing). Nothing in the FDPA conflicts with or suggests abrogation of this provision of Rule 32 in the context of a capital case. Cf. 18 U.S.C. § 3593(c) (dispensing only with Rule 32's requirement that a presentence report be prepared).

FDPA,[5] and would avoid the "anomalous effect" of prohibiting defendants facing execution from doing what every other criminal defendant is permitted to do (i.e., offering allocution before the entity determining their fate), <u>Chong</u>, 104 F. Supp. 2d at 1234 n.6.[6] Accordingly, the government's motion to preclude unsworn allocution is DENIED.

Other courts to confront the issue and permit allocution, though, have done so pursuant to various reasonable conditions deemed necessary to avoid running afoul of the balancing test governing admission of information under the FDPA. <u>See</u> § 3593(c) (requiring that probative value be weighed against "the danger of creating unfair prejudice, confusing the issues, or misleading the jury"). Such conditions have included instructions to the jury regarding the nature of allocution, limitations on the timing of allocution and the defendant's positioning in the courtroom, and advance notice to the court and the government about whether the defendant will allocute and what he intends to say. <u>See, e.g.</u>, <u>Wilson</u>, 493 F. Supp. 2d at 511 (imposing five conditions, including advance notice, a restriction on the content of the allocution, and a requirement that the defendant remain at the defense table); <u>Chong</u>, 104 F. Supp. 2d at 1234 (requiring "an appropriate limiting instruction").

---

[5] The FDPA permits admission of "information . . . as to any matter relevant to the sentence," and specifies that "[t]he defendant may present any information relevant to a mitigating factor." 18 U.S.C. § 3593(c). It further allows for admission of such information "regardless of its admissibility under the rules governing admission of evidence at criminal trials," so long as the information satisfies the FDPA's balancing test. <u>Id.</u> Allocution by a capital defendant appears to fall squarely within the sort of "information" permitted by the FDPA. <u>See</u> <u>Lawrence</u>, 735 F.3d at 408 (noting "the probative value of the sound of the defendant's own voice, explaining his conduct and subsequent remorse in his own words, as information relevant to mitigation, can hardly be gainsaid").

[6] It also would be anomalous to require a capital defendant to select between exercising his constitutional right to have a jury determine his sentence, and waiving that right (and hoping the government consents to a bench trial for sentencing as well) in order to gain the opportunity to offer allocution pursuant to Rule 32. <u>See</u> <u>Henderson</u>, 485 F. Supp. 2d at 846 (noting the same problem and refusing to "apply a rule in such a way that would have a chilling effect on [a capital defendant's] exercise of his fundamental right to a jury trial").

In the first instance, the parties shall propose appropriate conditions to govern Sampson's allocution in this case in light of this Order and considering the procedures employed in the cases cited herein.  The parties shall confer in this regard and file a joint report describing the conditions they agree should apply to Sampson's allocution (or, to the extent they are unable to agree, describing their differing views and the reasons therefor).

III.    CONCLUSION

Accordingly, the government's Omnibus Motion in Limine (Doc. No. 1889) is DENIED insofar as it seeks to preclude Sampson from arguing that the reasonable doubt standard should apply to the jurors' weighing of aggravating and mitigating circumstances and their related determination of whether the death penalty is justified.  The specific manner in which the Court will instruct the jury as to burden of proof, the weighing process, and the determination of whether a death sentence is justified for Sampson will be resolved at a later date.

The government's Omnibus Motion (Doc. No. 1889) is further DENIED insofar as it seeks to prevent Sampson from making unsworn allocution.  On or before June 17, 2016, the parties shall file the joint report described above regarding the conditions they propose to govern Sampson's allocution.

Finally, Sampson's Motion to Reconsider Certain Rulings in Light of Hurst (Doc. No. 2171) is DENIED.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge