UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal Action No. 01-10384-LTS |
| GARY LEE SAMPSON | ) ) ) | |

ORDER ON DEFENSE REQUEST FOR AN ORDER THAT ALL FACT-SPECIFIC IN LIMINE MOTIONS BE FILED UNDER SEAL (Doc. No. 1884), AND DEFENSE MOTION IN LIMINE TO EXCLUDE IRRELEVANT AND PREJUDICIAL ACTS OF CUSTODIAL MISCONDUCT BY OTHERS (Doc. No. 1891-1)

August 26, 2016

SOROKIN, J.

   Gary Lee Sampson pled guilty to two counts of carjacking resulting in death and was sentenced to death in 2004.  The First Circuit affirmed the judgment.  United States v. Sampson, 486 F.3d 13 (1st Cir. 2007).  In 2011, the Court (Wolf, J.) vacated the death sentence in light of juror misconduct, and the First Circuit affirmed, ruling that Sampson is entitled to a new penalty phase trial pursuant to 28 U.S.C. § 2255.  Sampson v. United States, 724 F.3d 150, 170 (1st Cir. 2013).  The case was reassigned to this session of the Court on January 6, 2016.

   The Court now addresses two pending defense motions:  (1) Motion for Clarification Regarding Motions in Limine, and Request for an Order That All Fact-Specific In Limine Motions Be Filed Under Seal (Doc. No. 1884), and (2) Motion In Limine to Exclude Irrelevant and Prejudicial Acts of Custodial Misconduct by Others From Any Cross-Examination of Experts or Government Rebuttal Testimony As It Relates to Future Dangerousness (Doc. No. 1891-1).

I.  Discussion

    A.  Motion for Clarification Regarding Motions in Limine, and Request for an Order That All Fact-Specific In Limine Motions Be Filed Under Seal

The first motion raises two issues, both of which are moot. For one, Sampson seeks clarification regarding the types of motions in limine that were, and were not, subject to a filing deadline of May 15, 2015 that Judge Wolf imposed. Doc. No. 1884 at 1-3. Given that this deadline has long since passed, and that this session of the Court set a separate schedule for pretrial motion practice (Doc. No. 2146 at 1), Sampson's request for clarification is MOOT. Second, Sampson's request for "an order that all fact-specific in limine motions initially be filed under seal" also is MOOT in light of the guidance the Court has previously provided the parties.

    B.  Motion In Limine to Exclude Irrelevant and Prejudicial Acts of Custodial Misconduct by Others From Any Cross-Examination of Experts or Government Rebuttal Testimony As It Relates to Future Dangerousness

Turning to the second motion before the Court, the government at Sampson's first penalty phase trial advanced the non-statutory aggravating factor of "Future Dangerousness of the Defendant While Incarcerated." Doc. No. 103 at 5, 8-9. The government alleged in this factor that Sampson was "likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of prison officials and inmates." Id. To defend against the future dangerousness factor, the defense at the first trial called an expert, Dr. Mark Cunningham, who was permitted to testify to conditions of confinement in the Bureau of Prisons (BOP). United States v. Sampson, 335 F. Supp. 2d 166, 226-27 (D. Mass. 2004). Judge Wolf, however, limited the scope of Dr. Cunningham's testimony in a manner relevant to the present motion. Although he permitted Dr. Cunningham to testify *generally* "about the ability of the BOP to control inmates, including gross statistics regarding assaults and other misconduct," he "did not permit testimony regarding *specific* other prisoners." Id. at 227 (emphasis added).

That is to say, Judge Wolf prohibited Dr. Cunningham from testifying about BOP's ability to control specific inmates other than Sampson.  Judge Wolf reasoned that "[e]ach person in the custody of the BOP is unique," and that "the probative value of information about the BOP's ability or inability to control a particular other prisoner was outweighed by the danger of misleading the jury into thinking that the BOP would have a similar experience with Sampson." Id.

In the new penalty phase trial, the government again will assert the future dangerousness aggravating factor, Doc. No. 2197 at 4, 6, and Sampson again intends to defend against this factor by calling an expert witness who likely will testify that BOP can manage Sampson safely such that he will not pose a risk of danger in the future.  Doc. No. 2318 at 44-47.  The defense foresees that the government may respond to such testimony by attempting to show that BOP is not always capable of safely managing violent offenders, and that the government may seek to do so by eliciting evidence concerning specific instances, not involving Sampson, in which BOP inmates have committed violent acts in BOP facilities.  Id. at 45.  Therefore, by way of the motion before the Court, Sampson seeks an order precluding the government from eliciting testimony regarding specific violent acts committed by BOP inmates ***other than Sampson***, particularly during cross-examination of his future dangerousness expert(s) and in the government's rebuttal case.  Doc. No. 1891-2 at 1-2.  The government objects.[1]  Doc. No. 1922 at 1.  For the reasons that follow, the motion is ALLOWED.

As this Court has said before, as a general matter it intends to adhere to Judge Wolf's rulings from the first penalty phase trial regarding the exclusion of evidence.  Doc. No. 2189 at

---

[1] The government, however, does not intend to introduce evidence of specific acts of violence committed by other BOP inmates in its case-in-chief.  Doc. No. 1922 at 2.

35-36.  And, as noted, supra, Judge Wolf "did not permit testimony regarding specific other prisoners," reasoning that "the probative value of information about the BOP's ability *or inability* to control a *particular* other prisoner was outweighed by the danger of misleading the jury into thinking that the BOP would have a similar experience with Sampson."  Sampson, 335 F. Supp. 2d at 227 (emphasis added).  That ruling stands.[2]  Veering from Judge Wolf's ruling would detract from the Court's objective of reaching an individualized sentence for Sampson by transforming the new penalty phase trial into a series of mini-trials regarding the facts of specific violent acts by other inmates.  See United States v. Sampson, 486 F.3d 13, 44-45 (1st Cir. 2007) (affirming Judge Wolf's exclusion of evidence of other capital prosecutions and approving of his reasoning that admission of such evidence would result in distracting mini-trials).

In sum, neither party is permitted to elicit testimony regarding the specific conduct of BOP inmates other than Sampson.  Therefore, the government may not elicit testimony, on cross-examination or in rebuttal, regarding BOP's inability to control a specific prisoner who is not, and has nothing to do with, Sampson.  However, either side, of course, may offer general information concerning the success or failure of BOP policies and procedures aimed at preventing serious acts of violence, as well as information regarding the frequency – or lack thereof – of such acts, and the factors that do or do not correlate with such acts.

II.   Conclusion

In short, the Motion for Clarification Regarding Motions in Limine, and Request for an Order That All Fact-Specific In Limine Motions Be Filed Under Seal (Doc. No. 1884) is DENIED AS MOOT, and the Motion In Limine to Exclude Irrelevant and Prejudicial Acts of

---

[2] Other courts in non-binding jurisdictions have ruled differently from Judge Wolf on this issue, but the Court finds their reasoning unpersuasive in the circumstances of this case.  See, e.g., United States v. Johnson, 223 F.3d 665, 674 (7th Cir. 2000).

Custodial Misconduct by Others From Any Cross-Examination of Experts or Government Rebuttal Testimony As It Relates to Future Dangerousness (Doc. No. 1891-1) is ALLOWED.

        SO ORDERED.

          /s/ Leo T. Sorokin
        Leo T. Sorokin
        United States District Judge