UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 01-10384-LTS |
| ) | |
| GARY LEE SAMPSON ) | |

ORDER ON MOTION FOR A COMPTENCY EVALUATION AND HEARING

January 30, 2017

SOROKIN, J.

Near the end of jury selection in defendant Gary Lee Sampson's new capital penalty phase trial, defense counsel raised concerns about Sampson's ability to assist in his own defense and moved for a competency evaluation and hearing. See Doc. No. 2627. The defense subsequently submitted a report by a defense expert opining Sampson was then incompetent to stand trial based on his inability to assist counsel. Doc. No. 2698. Thereafter, the Court appointed an independent expert to assess Sampson's competency to stand trial and other related questions. Doc. No. 2726. That expert, Dr. Debra Pinals, completed her evaluation, concluded Sampson is competent (and was competent throughout the trial), and submitted her report and supporting documents to the Court on January 25, 2017. Doc. No. 2879. Having reviewed and carefully considered all relevant submissions, the defense motion is ALLOWED insofar as it requested a court-ordered competency evaluation, but DENIED in all other respects.

I. LEGAL STANDARDS

A defendant is competent to stand trial if he has "a rational as well as factual understanding of the proceedings against" him, and also "has sufficient present ability to consult his lawyer with a reasonable degree of rational understanding." Indiana v. Edwards, 554 U.S.

1

164, 170 (2008). Competence to stand trial is a functional inquiry. United States v. Widi, 684 F.3d 216, 220 (1st Cir. 2012). A defendant may have serious mental illness, but still retain the ability to understand the proceedings and rationally assist his counsel. Id. at 221. "The starting point" of any competency inquiry "is the notion that a criminal defendant is presumed to be competent to stand trial and bears the burden of proving otherwise." United States v. Morgano, 39 F.3d 1358, 1373 (7th Cir. 1994); cf. Medina v. California, 505 U.S. 437, 449 (1992). Not every attorney-client rift supports a finding that a defendant is incapable of rationally assisting his counsel. See United States v. Brown, 669 F.3d 10, 18 (1st Cir. 2012) (finding no error in district court's decision not to hold competency hearing, despite the fact that the attorney-client relationship "might not have always been genial"); see also Robidoux v. O'Brien, 643 F.3d 334, 340 (1st Cir. 2011) (reasoning that competency standard "does not require that the defendant go along with his lawyer's advice").

Pursuant to 18 U.S.C. § 4241(a), a federal trial court "shall order . . . a [competency] hearing if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." Accord United States v. Brown, 669 F.3d 10, 17 (1st Cir. 2012). Factors to consider in determining whether a competency hearing is warranted include "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." Johnson v. Norton, 249 F.3d 20, 26 (1st Cir. 2001). In addition, the court may consider its own interactions with the defendant, as well as observations by counsel and the defendant himself, in ruling on competency related motions. United States v. Muriel-Cruz, 412 F.3d 9, 13 (1st Cir. 2005); United States v. Curtis, 520 F.2d 1300, 1304 (1st Cir. 1975); see Widi, 684 F.3d

at 220 (noting defense counsel's assessment "is generally given great weight because of counsel's 'unique vantage'"); see also United States v. Metcalfe, 698 F.2d 877, 882 (7th Cir. 1983) (explaining that "[a] defendant's intelligent responses to . . . an interrogation" by the court "may demonstrate that probable cause" to justify a competency examination "does not exist"). "The exact quantum of evidence necessary to establish 'reasonable cause' [for a competency hearing] is difficult to describe with any certitude, though the reasonableness aspect of the inquiry clearly places the focus on the facts viewed objectively . . . rather than analyzing the subjective propriety of the district court's decision." Morgano, 39 F.3d at 1373-74.

The obligation to determine competency to stand trial is continuing, and persists through the sentencing phase of a criminal proceeding. United States v. Ahrendt, 560 F.3d 69, 74 (1st Cir. 2009). If a defendant has been found competent at an earlier time in the proceedings, "a significant change in circumstances in the midst of trial" may justify a second competency inquiry. Yeboah-Sefah v. Ficco, 556 F.3d 53, 82 (1st Cir. 2009); but see United States v. Maryea, 704 F.3d 55 (1st Cir. 2013) (finding no cause to reevaluate midtrial after defendant was injured in a car accident, where a pretrial evaluation found her competent, aberrant behavior after the accident was temporary, and general conduct after the accident was similar to her pre-accident conduct).

II. DISCUSSION

The current competency issues raised by the defense must be considered against the backdrop of all that has come before them in this case. No competency issues were raised by Sampson's counsel during his first penalty phase trial. In Sampson's motion for a new trial under 28 U.S.C. § 2255, he alleged his first trial counsel had been ineffective for failing to assert his incompetence during his first trial. That claim was not adjudicated, as Sampson was granted

3

a new trial based on juror misconduct. However, in anticipation of the new penalty phase trial, and in light of Sampson's § 2255 claim related to his competency, Judge Wolf ordered a competency evaluation in 2014. That evaluation was conducted over the objection of counsel for the government <u>and</u> defense counsel, all of whom then urged that Sampson was competent and no examination was necessary. Consistent with the perception of all counsel, the examiner from the Bureau of Prisons concluded that Sampson was competent. No further proceedings related to competency were pursued at that time. <u>See generally</u> Doc. No. 1664.

Sampson's current defense team raised no concerns about Sampson's competency as his second penalty phase trial approached. This was so, despite the fact that they possessed a brief, four-paragraph letter from defense-retained expert Dr. Bhushan S. Agharkar summarily stating that in early 2015 he believed Sampson was incompetent to stand trial based on an inability to rationally assist counsel. Doc. No. 2620. The Court views defense counsel's decision not to raise a competency issue with the Court at that time as an indication that they did not then share Dr. Agharkar's cursory opinion. Indeed, Sampson's experienced capital defense counsel, from their "unique vantage," proceeded with trial preparations and with weeks of jury selection before making a motion for a competency examination – and their motion is specifically tied to an event that transpired during individual voir dire of a particular juror, and counsel's concerns about Sampson's ability to maintain the ability to assist his counsel they had worked to preserve at all times previous to that moment were specific to the stresses inherent in a capital penalty phase trial setting.

In this context, the Court elected to entertain the competency motion while also proceeding with trial, as it concluded that staying the trial and eliminating the source of stress

that gave rise to the incompetency claim would be counterproductive to a fair and accurate assessment of the issues presented.

Sampson initially supported his oral motion for a competency evaluation and hearing with descriptions by counsel and Dr. Agharkar's 2015 letter opinion. The Court took the matter under advisement. After Sampson supplemented his oral motion with a more substantial written report prepared by defense expert Dr. George Woods, the Court concluded that an evaluation by an independent, court-appointed expert was warranted.

Dr. Pinals was appointed for that purpose. She conducted an evaluation that included four interviews of Sampson, observation of a meeting between Sampson and his counsel, interviews of defense and government counsel, interviews of prison mental health professionals, review of voluminous records related to Sampson's previous treatment and testing, and collaboration with two other independent court-appointed experts who rendered opinions interpreting Sampson's brain images and a new set of neuropsychiatric tests. Her meetings with Sampson occurred at different points in time from the start of the defense case through the time when the jury was deliberating. Her report is lengthy, careful, and thorough. Her conclusions accord with the Court's own observations of Sampson during the four months of jury selection and trial in this matter, as well as with the jury's apparent assessment of certain aspects of the defense mitigation presentation.[1] Accordingly, the Court credits Dr. Pinals's report and conclusions, and finds them persuasive.

The Court assigns no weight to Dr. Agharkar's letter opinion. The letter itself evidences it was not the result of a comprehensive competency assessment, nor does it set forth sufficient

---

[1] For example, both Dr. Pinals and the jury rejected the portions of the defense experts' testimony, including of Dr. Woods's, that suggested Sampson's brain impairment and/or mental illness rendered him unable to control his behavior. See Doc. No. 2834.

5

support for the conclusions Dr. Agharkar purports to have reached. Moreover, it presents a conclusion related to a period of time – early 2015 – that is eighteen months earlier than defense counsel asserts the issues they identified during jury selection finally rose to the level of a competency concern in their minds.

The Court does not find that Dr. Woods's report establishes reasonable cause to believe that Sampson was unable (vs. unwilling) to assist defense counsel at any point during the trial. His competency assessment was less comprehensive than Dr. Pinals's in both time and scope, and the Court is troubled by the fact that Sampson apparently was not informed of the purpose of Dr. Woods's evaluation. Furthermore, the jury's verdict reflects that no juror credited the central points made in Dr. Woods's trial testimony, a finding the Court is not inclined to second-guess.[2]

Finally, the Court's own observations of Sampson during the trial, which have included numerous colloquies with him related to his decision to waive his presence during portions of pretrial proceedings and trial, as well as several ex parte hearings in which issues related to his competency and his relationship with counsel were discussed, are consistent with Dr. Pinals's observations and conclusions. It also bears noting that Sampson himself has stated, including to Dr. Pinals, that he believes he is competent and able to work with his counsel.

In these circumstances, the Court is satisfied that there is not reasonable cause to warrant, let alone require, holding further proceedings on the issue of Sampson's competency. See

---

[2] The Court's conclusions do not depend upon rejecting Dr. Lipton's review of the brain scans in favor of the opinion of a neurologist (a type of doctor perhaps not in the position to reject a reading of a scan report made by a neuroradiologist). The type of scans at issue here are not, according to the court-appointed neurologist, the type ordinarily relied upon for the clinical diagnosis of an individual patient. And, Dr. Pinals's report makes clear, even assuming Sampson's brain scans reveal mild traumatic brain injury (as at least one juror found), such findings do not support a diagnosis leading to incompetence given the lack of sequelae revealed in original treatment records and the lack of a history of subsequent cognitive or behavioral changes linked to injury (subjects upon which Dr. Lipton did not opine).

United States v. Bruck, 152 F.3d 40 (1st Cir. 1998) (finding no abuse of discretion by district court in denying competency hearing based on court-ordered evaluation finding defendant competent, despite history of mental illness, erratic behavior and actions undermining defense as trial approached, and defense counsel's stated concerns about ability to assist).

III. CONCLUSION

Accordingly, Sampson's request for a court-ordered competency evaluation is ALLOWED, as Dr. Pinals was appointed to perform such an evaluation, and she performed her duties carefully and thoroughly. For the reasons set forth above, however, Sampson's request for a full competency hearing is DENIED. Sentencing in this case shall proceed as scheduled on Friday, February 3, 2017, at 9:30 AM in Courtroom 13.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge