1                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
2

3      - - - - - - - - - - - - - - - - - - x

4      UNITED STATES OF AMERICA,                :

5              Plaintiff,                        :    Criminal Action No.
                                                      1-01-cr-10384-LTS
6          v.                                    :

7      GARY LEE SAMPSON,                         :

8              Defendant.                        :

9      - - - - - - - - - - - - - - - - - - x

10

11         BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

12

13                          SENTENCING

14

15

                         Friday, February 3, 2017
16                            9:34 a.m.

17

18

                  John J. Moakley United States Courthouse
19                        Courtroom No. 13
                          One Courthouse Way
20                       Boston, Massachusetts

21

22

                         Rachel M. Lopez, CRR
23                      Official Court Reporters
                     One Courthouse Way, Suite 5209
24                    Boston, Massachusetts   02210
                           raeufp@gmail.com
25

1                      **A P P E A R A N C E S**

2

    On behalf of the Plaintiff:
3
        UNITED STATES ATTORNEY'S OFFICE - MASSACHUSETTS
4       BY:  ZACHARY R. HAFER AND DUSTIN CHAO
        John Joseph Moakley Courthouse
5       One Courthouse Way, Suite 9200
        Boston, Massachusetts  02210
6       (617) 748-3106
        zachary.hafer@usdoj.gov
7       dustin.chao@usdoj.gov

8

9   On behalf of the Defendant:

10      LAW OFFICE OF MICHAEL BURT
        BY:  MICHAEL N. BURT
11      1000 Brannan Street
        Suite 400
12      San Francisco, California  94103
        (415) 522-1508
13      mb@michaelburtlaw.com

14
        WILLIAMS & CONNOLLY, LLP
15      BY:  WILLIAM E. MCDANIELS AND JENNIFER G. WICHT
        725 12th Street, Northwest
16      Washington, D.C.  20005
        (202) 434-5055
17      wmcdaniels@wc.com
        jwicht@wc.com
18

19

20

21

22

23

24

25

1                    **P R O C E E D I N G S**

2                        (In open court.)

3            THE DEPUTY CLERK:  The United States District Court

4      for the District of Massachusetts is now in session, the

5      Honorable Leo T. Sorokin presiding.

6            Today is February 3rd, the case of United States

7      vs. Gary Lee Sampson, criminal action 01-10384, will now

8      appear before this Court.

9            Counsel, please identify themselves for the record.

10           THE COURT:  Go ahead.

11           MR. HAFER:  Good morning, Your Honor.  For the

12     United States, Assistant US Attorney Zach Hafer and Dustin

13     Chao.

14           MR. BURT:  Good morning, Your Honor.  Michael Burt,

15     William McDaniels, Jennifer Wicht for Mr. Sampson, who is

16     present.

17           THE COURT:  Good morning.  All right.  As you can

18     see, we have two of the jurors who are here.  They're here at

19     my invitation and with my permission.  They're seated in the

20     jury area, and that's really -- out of courtesy and respect

21     for the role that they played in this case.  They're

22     obviously not a jury or part of a jury anymore.

23           But nonetheless, I want to thank you again for the

24     service that you rendered in this case.

25           We're here to impose sentence today on Mr. Sampson,

1    pursuant to the jury's verdicts.  Because both of these

2    offenses are capital offenses, there's no presentence report

3    that's been prepared or one to review.  As counsel knows,

4    there was a presentence report prepared last time.  That was

5    done not for purposes of sentencing, but at the request of

6    the Bureau of Prisons.  The Bureau of Prisons, as far as I

7    know, has not requested an update, and I don't see any reason

8    why an update is required.

9              So unless someone has another request or something

10   different, we'll proceed in the following order:  First,

11   Government Counsel, the members of the victim's families that

12   wish to speak, may speak in whatever order, Mr. Hafer, you

13   choose.

14             And then Mr. Burt, you may speak.  And if he

15   chooses to do so, Mr. Sampson may say something or not.

16             Is there anything we need to do before we proceed

17   with that?

18             MR. HAFER:  No, Your Honor.

19             THE COURT:  All right.  Mr. Hafer, so from my

20   perspective, the family members may speak either from the --

21   here on my right, the sort of witness box, or from the

22   podium, whatever you and they feel more comfortable with.

23             MR. HAFER:  I think we were going to use this here,

24   if that works, Your Honor.

25             THE COURT:  That's fine.  That's absolutely fine.

1            MR. HAFER:  So Your Honor, I just have a few

2    minutes of remarks I'd like to make and then --

3            THE COURT:  Go right ahead.

4            MR. HAFER:  There will be four -- four members of

5    the families speaking.  Scott McCloskey will speak first,

6    Nick Rizzo, then Mike Rizzo, and then Mary Rizzo.

7            THE COURT:  Okay.

8            MR. HAFER:  Your Honor, we ask that you impose the

9    jury's sentence, and we ask that not just because the jury

10   sentence is required by law, although that, of course, would

11   be reason enough, but we ask that you impose the jury

12   sentence for the same reason that the Government has pursued

13   this case for the last 15 years, which is that for this

14   defendant, the death penalty is the just sentence.  It is

15   justice.  It is justice because what the defendant did to the

16   kind and loving Philip McCloskey, Jonathan Rizzo, and Eli

17   Whitney was pure evil, the acts of a man with no basic

18   humanity.

19            It is justice because, to this day, the defendant

20   has no remorse for the cruel murders he inflicted, the good

21   families he devastated.  He's not sorry.  Instead he remains

22   self-obsessed and entitled, continuing to demand respect and

23   special treatment for his acts of cowardice.  And when he is

24   not before --

25            MR. SAMPSON:  And you're a fucking asshole.

1              THE COURT:  Hey.  Quiet.

2              MR. SAMPSON:  Listen to this fucking bullshit.

3              THE COURT:  Mr. Sampson, be quiet now.  Shut up.

4              MR. SAMPSON:  Oh, fuck you, get out of here.

5              THE COURT:  No, Mr. Sampson, be quiet.

6              Go ahead, Mr. Hafer.

7              MR. SAMPSON:  Asshole.

8              MR. HAFER:  As proven, as stated, he continues to

9    demand respect and special treatment for his acts of

10   cowardice.  And they were cowardly.  And when he's not before

11   you, Your Honor, or a jury who is deciding his fate, just

12   like he just did, he brags and he gloats about what he's

13   done.  He says, "I'm a stone cold killer."

14             Finally, Your Honor, the death penalty is

15   appropriate in this case.  It is justice in this case,

16   because it will be imposed here in a courtroom, pursuant to

17   laws passed by Congress, and only after the defendant has

18   been afforded every single right, protection, and safeguard

19   required by law and the Constitution in this case.

20             As Your Honor knows, since 2001, the defendant has

21   been ably represented by over 20 attorneys, including several

22   learned counsel from across the country, distinguished

23   members of the Massachusetts bar, and one of the Nation's

24   premier law firms based in Washington, D.C.  These attorneys

25   have fought tooth and nail for the defendant at every turn.

1        Regarding the retrial of this case, which began

2    last September, the defendant was again able to mount a

3    vigorous defense, able to tell his life story to the jury

4    through fact witnesses he was able to subpoena to court, and

5    through dozens of experts he was able to retain.  And the

6    defendant was able, as the law requires, to present his case

7    to fair and impartial citizens, jurors who listen carefully

8    to all the evidence and who served at great personal

9    sacrifice, who saw and heard things they'll likely never

10    forget, and ultimately, who were asked to make a weighty,

11    moral decision, which they did.

12        And we thank the jurors sincerely and deeply for

13    their service in this case.

14        Now, the reason all the process and rights and

15    protections are important and worthy of mention today, Your

16    Honor, is because they were required by law in this case.

17    But the law also provides that if a jury of fair and

18    impartial citizens so decides that the death penalty for

19    defendants who are the worst of the worst is appropriate --

20    and make no mistake about it, they don't come any worse than

21    Gary Lee Sampson.

22        In the long history of this case, Your Honor, in

23    which the victims' families have persevered for over a decade

24    and a half, seeking justice to honor the loss of their

25    beloved family members, 24 citizens of Massachusetts have now

1    rendered a moral decision as to the proper sentence, as to

2    what is justice.  And each and every single one of those

3    Massachusetts citizens, 24 out of 24 has determined, beyond a

4    reasonable doubt, that the just punishment in this case,

5    justice in this case is the ultimate punishment.

6                We agree, Your Honor, and we ask that you impose a

7    sentence of death on Gary Sampson.

8                THE COURT:  Thank you, Mr. Hafer.

9                Is Mr. McCloskey going to speak?

10                MR. HAFER:  Yes.  Scott McCloskey will be first,

11   Your Honor.

12                THE COURT:  Go ahead, Mr. McCloskey.

13                MR. MCCLOSKEY:  Okay.  You know, I've sat quitely

14   here in this courtroom in not one, but two trials, and what I

15   would give to say hi to my father or hear his voice again,

16   is, you know, something that -- because he took that away

17   from me.  It's been a tough 16 years and no one should have

18   gone through what our families have gone through.  We have

19   had to go through this, because you took the life of our

20   fathers, whose life wasn't yours to take.

21                You showed no remorse and your apology was robotic.

22   My father deserved to retire and enjoy his remaining years.

23   You took that from him, you took that from us.  And because

24   you chose to kill three people and you had no problem doing

25   it, but you're afraid to die, shows how much of a coward you

1    really are.

2              You spent your whole life blaming everyone else for

3    their actions.  There's plenty of people whose father smacked

4    them around, plenty of people who knew when to keep their

5    mouth shut and get the crap kicked out of them, so these

6    excuses don't work for me.  For what you've done, you just

7    did what you did for attention.  You've gotten plenty of

8    that.  It seems like, to me, the center of attention, as long

9    as it's all about Gary.

10             Well, I hope when the day comes, you'll realized

11   that the price to be paid, as the Bible says, an eye for an

12   eye, a tooth for a tooth.  And, god bless my father,

13   Jonathan, Eli.

14             And last but not least, may you rot in hell, you

15   son of a bitch.

16             MR. SAMPSON:  I'm already there.

17             THE COURT:  Thank you, Mr. McCloskey.

18             Mr. Hafer, is Nick Rizzo next?

19             MR. HAFER:  Yes, Your Honor.  Nick Rizzo.  Thank

20   you.

21             MR. NICK RIZZO:  Good morning, Your Honor.

22             THE COURT:  Good morning.

23             MR. NICK RIZZO:  It's hard to explain how different

24   this iteration of the trial was for us.  I was just a boy in

25   2003, but in that trial, the judge tripped over himself to

1   make sure the defendant's rights were preserved.  The jury

2   couldn't see us, you know, what shame we felt for the most

3   human reactions.  And this was in the name of the law.

4        The strange thing is, to be wronged by an

5   institution is a special kind of pain.  It was a betrayal by

6   a system that is meant to protect us.  There is some

7   brilliant legal minds in here, I know.  And I have no doubt

8   that you can make an argument for how we were treated in the

9   first trial, but it felt -- it felt unreal.

10       All that is to say that your patience, grace, and

11  consideration during this trial was so important to us, and

12  I'll never forget it for the rest of my life.  So thank you.

13       I'm sorry -- I meant to say in the beginning, that

14  is on behalf of myself and Elliot.  I'm sorry.  I got caught

15  up.

16       THE COURT:  That's fine.  Thank you.

17       MR. NICK RIZZO:  There is the trauma of having lost

18  our brother.  It's well known and digested and publicly

19  understood, but it's an entirely separate trauma to listen to

20  the details of your brother's murder debated; for example,

21  there was a question of the color of Jonathan's hands due to

22  ligatures, and have to sit still.  Is that not torture?  Is

23  it not something unbearably inhumane to see pictures of the

24  decay of your brother's body and at the same time be asked to

25  keep quiet?  The pain of this murder seems to be perpetrated

1   against us over and over and over again.

2          I'm not sure, truly, that defense counsel was aware

3   of that.

4          And the strange thing about this trauma is that it

5   gets easier and harder at the same time.  It gets easier

6   because time creates distance between us and what happened,

7   the wounds feel less raw, but it gets worse because as time

8   goes on, I understand more.  I know more intimately the

9   relationship my parents had with Jonathan.  Because of my

10  time in the military, I know what it's like to be tied up and

11  helpless.

12         I reached milestones, and I feel the loss more

13  acutely.  I see patients and I compare their injuries to

14  Jonathan's, and I wonder, irrationally, if I could have saved

15  him.

16         I go to where Jonathan was killed and I feel the

17  heaviness of that place.  So when I hear testimony about how

18  much force it takes to drive a knife through a breastbone, or

19  worse, when I hear defense counsel and witnesses suggest that

20  these details don't matter, it's practically unbearable.

21         We watched you, Defense Counsel, rub Mr. Sampson's

22  back.  I sat next to a woman on your team who laughed and

23  joked with some seemingly distinguished visitors.  On our

24  side of the courtroom, we could barely even drink water.  I

25  wondered if you had any idea how closely we watched your body

1    language.  Even for our disagreement, we yearned for some

2    indication that you were aware of our suffering, yet only one

3    person on your team, Mr. McDaniels, ever offered us a show of

4    sympathy that was not perfunctory.

5         Mr. Sampson, we don't have much to say to you.  We

6    don't even know what to say to you.  After the verdict came

7    down, my father said to the press that this goes to show you

8    that we will never give up.  There's a small part of me that

9    hopes that you feel chilled by that.  We will never, ever,

10   ever give up.

11        I see we have a few members of the jury today.  I

12   don't even know how to thank you guys, honestly.  I watched

13   you and wondered how the weight of this trial would affect

14   you.  I felt it was so unfair that this had to be a part of

15   your lives.  At the end of the trial, after the suspense of

16   the verdict, the defense asked for you all to be polled.

17   That validation was overwhelming.  Time slowed down for us in

18   that moment.

19        The question was:  Do you agree with the verdict as

20   it was reported here today?  As we went down the line, this

21   is what we heard:  I agree that you are hurt.  I agree that

22   this was wrong.  I agree that you didn't deserve this.  I

23   agree that you will feel this pain for the rest of your life.

24   I agree that you shouldn't have had to take care of your

25   mother when you were in high school.  I agree that you

1    shouldn't have had to tell your mother that you could not

2    look inside Jonathan's casket, because his body was decayed.

3    I agree that you shouldn't have trouble answering simple

4    questions about how many siblings you had.  I agree that you

5    shouldn't be scared to have children of your own.  I agree

6    that Mr. Sampson somehow brings out the abhorrent in others,

7    even decent people.  I agree that Mr. Sampson deserves the

8    worst punishment that we can give.

9         This weekend a friend of mine had an accident while

10   I was doing some military training in Alaska, and I was his

11   medic.  He broke both of his feet and part of his back.  He

12   was in agony.  We treated a bleed, splinted his feet, and

13   managed his pain.  In the ambulance, on the way to the

14   hospital, he grabbed my hand and held it all the way to the

15   emergency room.  When he got out of surgery the next morning,

16   he thanked me, crying, for holding his hand because he was so

17   scared.  It pained me so much to remember, in his last

18   moments, how scared Jonathan must have been and how he had

19   probably wished for a hand to hold.

20        Thank you for the opportunity to speak today.

21        THE COURT:  You're welcome.

22        MR. HAFER:  Mr. Rizzo, Your Honor.

23        THE COURT:  Mr. Rizzo.

24        MR. MICHAEL RIZZO:  Good morning, Your Honor,

25   Members of the Court, Members of the Jury.

1          First, I would like to thank you, Your Honor, much

2   as Nick said, and your staff for the tremendous effort you

3   put in to manage these proceedings.  I'm sure it was a

4   daunting effort to keep this on track.

5          But secondly, and maybe more importantly, I want to

6   thank you for -- on behalf of the McCloskey, Whitney and

7   Rizzo families for your concern, your consideration, your

8   genuine human feeling for what we were going through.  Your

9   feelings in allowing us to be part of the process as much as

10  possible, included where we could, sharing information every

11  time you could.  And maybe even most important, creating a

12  safe space for -- in another courtroom, where the family

13  members could go out of the public eye to recompose ourselves

14  after listening, yet again, to evidence and testimony --

15  evidence and testimony that nobody should have to listen to

16  about their family members, even once, never mind twice.

17  This was such an 180-degree difference between this and what

18  we went through the last time that we thank you for that.

19          THE COURT:  Thank you.

20          MR. MICHAEL RIZZO:  The members of the jury who are

21  here, although the rest of them are not here and in the jury

22  box today, I'd like to go on the record to thank you for

23  investing the time and mental and physical energy to come in

24  here every day.  I know what it's like to muster that courage

25  and resolve every day, to come in and listen and see horrible

1    evidence and pictures and hear horrible testimony that will

2    probably stay with you for the rest of your life; and then

3    leave here at the end of the day and go back to your families

4    with some semblance of sanity.  I know what it's like to do

5    that, and I appreciate the fact that you were able to do it.

6                I hope that the things you saw and heard don't stay

7    with you and haunt you the rest of your life as they have for

8    us.  I do, however, hope that you remember the pictures we

9    painted of Jonathan and Eli and Phil and who they were, and

10   remember them for what they represented by how they led their

11   lives.

12               Our lives take some very strange twists, and we

13   certainly know that by now.  And I find myself standing here

14   for the second time, hoping that after 15 years, the justice

15   we have sought after for Phil, Eli, and Jonathan will finally

16   be delivered without additional frustrating delay and

17   frustrations.

18               You know, we've now had 15 years of living without

19   Jonathan.  Last time I stood up here, I had to assume or

20   project or imagine what life would be like without him.  Now

21   I have 15 years of doing that, and I understand what it's

22   like.  And he's not present at any of our family

23   celebrations.  He wasn't here a couple of years ago when Nick

24   got married.  He won't be here next year when Elliot gets

25   married.  There are things that we can't replace and can't

 1    fix.

 2              The pain and the mental anguish that Mr. Sampson

 3    has inflicted on our family is completely indelible.  It will

 4    never go away, we will never be able to erase those images

 5    from our heads.  The self-doubt that I have will continue and

 6    stay with me for the rest of my life.

 7              However, as I have said many times before and I say

 8    it again, we are stronger than him and people like him.  We

 9    are better than him and people like him.  And we refuse to be

10    beaten down by this horrific tragedy and the process it takes

11    to get to justice.

12              We have started a foundation in Jonathan's name to

13    help support the causes that he believed in through his life,

14    especially making sure that children, all children, have a

15    fair chance in life.  But maybe the most important thing out

16    of that foundation is for us to remember -- for us to not

17    have Jonathan be forgotten.  I think that's one of a parents'

18    worst thoughts, is that you have a child who lives with you

19    for 19 years and everybody else would forget him.  So we're

20    trying our best not to let that happen.

21              No doubt our other sons, Nick and Elliot, have

22    grown into men who have the same caring feeling for their

23    fellow men, love of their families, and dedication to being

24    good and moral people, and we are so proud of them.  It gives

25    us some insight into what kind of person Jonathan might have

1   grown up to be and -- if he had had the chance, and how

2   interesting it would be to see the three of them together as

3   men.

4          Through all this passage of time, the thought never

5   leaves my head that Mr. Sampson, despicable waste of human

6   life, still breathes.  Irrespective of the conditions that

7   he's forced to live in, which are of his choosing, he's able

8   to read, learn, watch television, and other things, have hope

9   that, no matter how slim, someday he may have a family.  All

10  things that Jonathan won't have the opportunity to do.

11         So this long journey has always been about never

12  giving up, never letting the absurdities of the process make

13  us quit in exasperation, which there were many opportunities.

14  And we heard many times throughout the trial that Mr. Sampson

15  was scared of being hurt or killed by policeman, scared of

16  prisoners or guards who actually fight back and have some

17  power.  While I can't make Mr. Sampson experience the sense

18  of terror, pain, and fear that all three of his victims felt

19  during their time with him, I'll have to be satisfied with

20  the knowledge that some day, hopefully soon, somebody else

21  will come to take Mr. Sampson's life, and there will be

22  nothing he can do about it.  And until then, I hope he

23  remains scared.

24         Thank you, Your Honor, for the time.  I appreciate

25  it.

1          THE COURT:  Thank you.

2          Ms. Rizzo.

3          MS. RIZZO:  Thank you, Your Honor, Judge Sorokin.

4   You have treated everyone in this courtroom with respect,

5   dignity, and kindness.  Our whole family and everybody here

6   appreciated it.

7          To the jurors, as I said at the press conference, I

8   will continue to pray for you.  I will pray that none of the

9   horror or the images stay in your mind, and you'll only

10  remember the love that was felt for our children, Philip and

11  Eli.

12          I came every day to this retrial only to represent

13  Jonathan's love and the love I have felt for the McCloskey

14  and Whitney families.  I did not come for any particular

15  verdict.  Mr. McDaniels, you were the only one on the entire

16  defense team who said you were sorry for our loss.  Thank you

17  for your decency.

18          It is so hard to believe that this retrial has been

19  more difficult than the first.  Many of us feel this way.

20  Maybe it's because of technology.  Every picture, video, or

21  voice seemed more vivid, graphic, and horrific.  Perhaps it's

22  been the many ludicrous excuses, one after another, for

23  Sampson's behavior.  But the hardest of all was Nick and

24  Elliot here witnessing all the details for the first time.  I

25  could see the pain in their eyes, and I wanted it so

1   desperately not to be there and not to be a part of their

2   life.

3           A million times I have apologized to Mike, Nick,

4   and Elliot for not being the wife or mother they deserved and

5   were entitled to those first years.  I never stopped loving

6   them, but I was in a dark hole, just struggling to find some

7   light.  I wasn't capable of anything, except just loving

8   them.  Even their sports at school seemed violent, and I

9   thought they might die, as well.  I waited up for them on the

10  couch, thinking if they also didn't come home, it would be my

11  fault and no one else, just as I first believed it was my

12  fault that Jonathan died.  I even questioned, should we have

13  raised him not to be so kind?  I lost those years not only

14  with Jonathan, but with his brothers, as well.  So much

15  unbearable pain.  But finally, I have realized, Sampson is

16  the one to blame, not me.

17          Excuse me.

18          Yet my nights continue to be haunted after all

19  these years.  Treatment after treatment I have tried, and I

20  will continue to try.  During the days, I am able to push you

21  out of my mind, as you do not deserve to be there.  But the

22  nights, the sleepless nights, I feel Jonathan's terror.  I

23  watch him die on that tree, but I can't help him.  And when I

24  see the disappointment in Jonathan's eyes, that his kindness

25  wasn't enough, it's all because of you.

1          On July 3, 1982, Jonathan took his first breath of

2    life, an almost ten-pound baby, placed on my heart, and I

3    thought the world would stop.  How was it possible to love

4    someone so deeply in just one moment of time?

5          On Tuesday, July 10, 2001, Jonathan stood in our

6    kitchen counter and exclaimed to Mike and I, "I just love my

7    life."  Mike and I looked at him in awe and we told him, "You

8    are blessed, as someone will never, ever feel that way in a

9    lifetime."  Even though it was 17 days later that you took

10   him from us, I thank god he felt this way.

11         Excuse me.

12         July 27, 2001, after the longest four days of our

13   life, searching for Jonathan, he took his last breath from

14   the hands of evil.  The world stopped for our family, his

15   friends and strangers, as well.  All my beliefs were thrown

16   into the wind.  As a mom, you always worry that your children

17   would get sick or get in an accident.  Jonathan had many

18   serious illnesses as a child, and I would hold him in my arms

19   and I would walk with him and say -- saying, "You are my

20   sunshine, please don't take my sunshine away."  Never, ever

21   did murder enter my mind.

22         You changed that, Mr. Sampson.  You took my

23   sunshine away.

24         Once July was my favorite month.  Now my family

25   just gets through it.

1          For 15 years, I have prayed you would show some

2     remorse.  Many times I even thought of visiting you or

3     writing to you, hoping you had some regret.  Gratefully, I

4     was talked out of both, because others knew better.

5          Now I know, without any doubt, you have no remorse.

6     You, as always, only think of yourself.  You even allowed the

7     defense to speak horribly of your parents, who you know loved

8     you.  You're nonemotional cold apology was pathetic.  I know

9     you squirmed when you listened to your fellow inmates and

10    expert witnesses when they talked about your sexual

11    orientation and your lack of tolerance of people of color.

12    It was good to know you were uncomfortable.

13          I don't know if you'll ever receive the death

14    penalty.  I don't really care.  I do care that you'll have

15    more restrictions on death row.

16          People say to me all the time, "Isn't life in

17    prison worse than the death penalty?"  I, too, once thought

18    this.  But I have been appalled at all you receive and all

19    the privileges given to you.  If people want to talk about

20    unconstitutional, maybe this is where they should begin.

21    Life in prison really isn't so bad, and I don't feel like you

22    are suffering at all.  In fact, many people, good, decent

23    people that we continue to help through Jonathan's

24    foundation, have much less in life than you.  It is unfair,

25    unjust, and inconceivable.

1         Many have asked, if you were put to death, if I

2    will attend.  I will not.  Death should be beautiful and

3    dignified.  Loved ones should surround you and comfort you as

4    you leave the world and return to heaven.  You could have had

5    this, but instead you choose to live a life of violence and

6    betrayed all those who loved you.  You took this away from

7    Jonathan, Philip, and Eli.  I hate that you were the last

8    person to see their eyes.  Jonathan had amazing, beautiful,

9    blue, soulful eyes.

10         It torments me that even after his death, I was not

11   allowed to hug him or even kiss the back of his hand.  I

12   begged everyone.  You killed and tortured Jonathan, and you

13   left him in the woods for four days of sweltering heat.  You

14   took away any chance of me being able to hold him.  I will

15   never forgive you for this, nor do I believe god will.

16         In one of the newspapers, somebody told me that I

17   was quoted as saying, "My family has been irreparably

18   damaged."  I don't believe I would ever say those words, but

19   how could this not be true?  At every family event, there's a

20   hole.  Most of his friends are married with children.  I

21   think of what a great husband and dad Jonathan would have

22   been.  We talk about Jonathan all the time.  But still after

23   all this time, I still just want him to come home.

24         I know you don't care about anything that I've said

25   today, but since this is the last time that I will ever see

1    your evil face, I'm doing it for me and not you.  Expressing

2    anger has always been hard for me, but after this trial, I

3    could now admit that I hate you.  I never thought in my

4    entire life that I could hate anyone, but I hate you.

5              After Jonathan's death, my biggest fear was that

6    Nick and Elliot would grow up to be cynical and angry to the

7    world.  This couldn't be further from the truth.  They are

8    caring, compassionate, and believe that giving is still a way

9    of life.  We are a family and a community of love and

10   goodness.  This you could not touch or take away from us.

11             You did not destroy us.  We will always miss

12   Jonathan.  I believe with my entire being that he is in

13   heaven, and we will some day be reunited as mom and son.  No

14   amount of pain will ever make me regret having him just for

15   19 years.  And I look forward to the day when I can hug my

16   sunshine again.

17             Thank you.

18             THE COURT:  Thank you, Mrs. Rizzo.

19             MS. RIZZO:  Sorry.

20             THE COURT:  Mr. Hafer, that concludes the

21   Government's presentation?

22             MR. HAFER:  Yes, Your Honor.

23             THE COURT:  All right.  Mr. Burt, do you have

24   anything to say?

25             MR. BURT:  Your Honor, I don't think Mr. Sampson

1    wishes to make a statement.

2              THE COURT:  Okay.

3              MR. BURT:  And on our part, I just wanted to

4    clarify.  It's our understanding the Court is going to impose

5    sentence and then consider the motions that are pending and

6    that will be filed after the judgment is pronounced?

7              THE COURT:  Yes.  The -- so I'll say, I issued, I

8    think a week ago, an order listing those motions that I

9    thought remain pending; that is, I thought I had resolved

10   everything that had been filed since the case was assigned to

11   me, plus all those motions that were pending at the time it

12   was assigned to me, that you identify -- that you and

13   Mr. Hafer had identified from prior times, and I listed them

14   for you -- there were a handful.  I don't have it right in

15   front of me.

16              And since then you filed, I think, two more.  And

17   you filed a joint -- the two of you filed a joint response,

18   listing -- I think you indicated there weren't any others,

19   other than what I had listed.

20              MR. BURT:  Correct.

21              THE COURT:  In any event, the two that you filed

22   the other -- two days ago, a day ago, I don't view either of

23   those motions as impediments to me imposing -- I've read

24   them.  I don't think either -- based on what I've read,

25   precludes imposition of sentence now.  I'm likely to issue an

1   order about them, but none of your rights or Mr. Sampson's

2   rights are waived by my proceeding now.  And I just haven't

3   had an opportunity to issue a ruling on them, but I don't

4   think that they preclude the imposition of sentence now.

5            MR. BURT:  Thank you for clarifying that, Your

6   Honor.

7            THE COURT:  All right.  And obviously, to the

8   extent -- I think it's clear on the written record, but I set

9   a schedule for filing post-trial motions, and that stands.

10  And obviously you can file those motions, and then whatever

11  oppositions come in.  And I'll review those motions at that

12  time and rule on them as a --

13           MR. BURT:  Thank you.

14           THE COURT:  And so you don't have anything else?

15           MR. BURT:  No, Your Honor.

16           THE COURT:  And nor does Mr. Sampson wish to speak?

17           MR. BURT:  Correct.

18           THE COURT:  All right.  Fine.  So we're here today

19  because of and for three kind, generous people:  Philip

20  McCloskey, Jonathan Rizzo, and Robert Eli Whitney.  Each was

21  murdered by Gary Sampson.  But for the defendant's horrific

22  acts, these three men wouldn't have suffered what must have

23  been terrifying ends to their kind and generous lives; but

24  for the defendant's horrific acts, we would not have had a

25  multistate police investigation, two trials, multiple

1   appeals, and 16 years of legal proceedings.  The entire

2   purpose of these proceedings has been to respond, under the

3   law, to the horrific acts of the defendant.

4          Back on July 31, 2001, the day that the Vermont

5   State Police arrested the defendant, he asked Trooper Ray

6   Keefe, "You're going to take me out and do me a favor and

7   shoot me?"

8          Trooper Keefe said, "No, can't do that."

9          Trooper Keefe was exactly right.  We live by the

10  rule of law.  No matter how strong the case, no matter how

11  clear the outcome appears, we follow our legal process and we

12  follow it properly.  Under our law, not Trooper Keefe, not

13  the police, not the prosecutor, not the judge, may impose a

14  death sentence on a defendant.  Only a jury, composed of

15  honest, ordinary citizens, may do that.  A jury verdict for

16  death requires agreement of all 12 of these jurors.

17         The rule of law is why we had a second trial, for

18  as it turns out, unfortunately, one juror in the first trial

19  was dishonest.  The application of the rule of law there was

20  clear, Judge Wolf so ruled, and the United States Court of

21  Appeals for the First Circuit agreed unanimously.

22         Retrying this case, no doubt, imposed an

23  incomprehensible burden on the families of Philip McCloskey,

24  Jonathan Rizzo, and Robert Eli Whitney.  The losses each

25  family suffered from the murders were monumental.  The

1    evidence at the trial was at times graphic and disturbing.

2    Living and reliving these experiences, throughout the course

3    of the legal proceedings these past 16 years, must have been

4    exceedingly painful.

5         Yet every day, you came to court.  You gave honest,

6    forthright, and heartwarming testimony.  Watching your stoic

7    heroism each day reminded me of the words of another murder

8    victim from Massachusetts.  He said, "We shall pay any price,

9    bear any burden, meet any hardship in order to assure the

10   survival and success of liberty."  That is what you have each

11   done.

12        You suffered a grievous loss at the hands of the

13   defendant.  Out of your commitment to lost family members and

14   your sense of justice, you have done what President Kennedy

15   described.  What you have done could not have been easy.

16   Adherence to the rule of law is not always easy and sometimes

17   it asks more of some than others, as it surely did here.  But

18   you bore those burdens, you met those hardships with courage

19   and with dignity.  The steely commitment to the rule of law

20   is -- that you demonstrated is what has distinguished our

21   nation throughout history.

22        Applying the rule of law in this case has resulted

23   in different sentences for the two crimes before the court.

24   However -- and this is an important however, the value of a

25   human life is not determined by the sentence imposed.  The

1    lives of Jonathan Rizzo and Philip McCloskey were different

2    in many ways.  Jonathan was a young man, venturing into an

3    adulthood, full of the promise of service, success,

4    friendship, family, and joy.  Philip was retired and

5    relishing a life full of kindness to others and deep family

6    relationships.  Despite these outward differences, both were

7    similar.  Each was admired, loved, and cherished by friends

8    and family alike.  Each was senselessly, thoughtlessly, and

9    heinously killed for no reason.

10          The same is true of Robert Eli Whitney.  Philip

11   McCloskey, Jonathan Rizzo, and Eli Whitney are equal before

12   the law.  They lived good lives, they touched many people,

13   and they live on in all of the goodness they brought to the

14   world and to others.

15          They live on in other ways, as well.  Philip

16   McCloskey's children are raising his grandchildren, inspired

17   by the example of hard work, good humor, and generosity he

18   demonstrated in his life.  The members of the Rizzo family,

19   each in their own way, have continued Jonathan's compassion

20   and service.  Together they created a foundation to help

21   others in Jonathan's name.  Elliot Rizzo has devoted his

22   career to the highest calling in our nation, public service.

23   Nick Rizzo, himself, has performed years of public service

24   and has taken great personal risks to save others facing

25   death.

1          Finally, the McCloskey, Rizzo, and Whitney families

2     have an enduring love for each other and for Philip,

3     Jonathan, and Eli, and this love will, I hope, sustain you.

4          There is something else you should know.  Judges

5     wear the black robe both as a reminder to one's self and as a

6     symbol to others, that the authority we wield is not our

7     personal authority as individual men and women, but public

8     authority bestowed upon us in a sacred trust as part of the

9     rule of law.  As part of that obligation, I have strived to

10    ensure that every aspect of this trial conforms scrupulously

11    to the rule of law, because that is what the law demands,

12    that is what the parties deserve, and that is what the

13    profound importance of this case required.

14         Nonetheless, at times, a personal comment is

15    appropriate and this is one such time.

16         While I doubt there's anything I've said or can say

17    that can offer any comfort of piece of mind to the victim's

18    family members, for what it's worth, I want you to know that

19    not a single day has gone by since the case was reassigned to

20    me on January 6, 2016, that I have not thought about your

21    loved ones, the last moment of their lives, or the heinous,

22    cruel, and senseless manner in which the defendant killed

23    them.

24         I want you to know that although the defendant's

25    acts infinitely and uniquely harmed you, you are not alone in

1    mourning Philip, Jonathan, and Eli.  I, and I think every

2    other person who has witnessed this trial, who has seen the

3    evidence of the defendant's horrific acts and who has heard

4    about the kindness of your loved ones, will carry those

5    thoughts forward long after we recess today.

6              I want you to know that in some small way your pain

7    is shared, your loved ones are remembered, their lives

8    mattered.

9              Now, Mr. Sampson, you had a first trial.  The judge

10   committed no error.  There was no fault by the prosecution,

11   nor ineffectiveness by defense counsel, but misconduct of a

12   juror required another trial.  So you had a second trial.

13   This trial was a fair trial.  You were accorded every right

14   secured to you by the law.  You were defended by an excellent

15   team of lawyers at public expense.  Invoking the Court's

16   authority, you called witnesses from near and far.

17             Your lawyers supported your defense, not only with

18   fact witnesses speaking of everything from your childhood to

19   your years in prison after the murders, but also with highly

20   credentialed medical and psychiatric experts.  The trial gave

21   meaning to the Supreme Court's admonition that the jury must

22   be able to consider and -- as they put it, quote, all

23   possible, relevant information about the individual

24   defendant, whose fate it must determine.

25             Throughout these proceedings, you were treated with

1    fairness, dignity, and humanity.

2            Now, a jury of your peers has spoken.  You are

3    condemned to death.

4            All that need be said about your life was said and

5    considered at the trial.  As you wait the implementation of

6    the jury's verdict, for all the remainder of your days, you

7    will live in a maximum security federal prison.  You will

8    live with the horrific acts you committed.  You will live

9    with the purposeless devastation you caused.

10           Now, stand for the imposition of sentence.

11           Pursuant to the jury's verdicts and Title 18,

12   United States Code Section 3594, on Count 2, I hereby

13   sentence you to death for the carjacking resulting in death

14   of Jonathan Rizzo.

15           And on Count 1, I hereby sentence you to

16   imprisonment for life without the possibility of release for

17   the carjacking resulting in death of Philip McCloskey.

18           You must also pay, by law, a $200 special

19   assessment.

20           There is no fine, forfeiture, or restitution, as

21   none was imposed originally.

22           You have a right to appeal this sentence within

23   14 days of judgment.  If you would like to appeal but cannot

24   afford a lawyer, one will be appointed to represent you at

25   public expense.

1               I hereby commit you to the custody of the attorney

2     general until the exhaustion of the procedures for appeal,

3     pursuant to Title 18, United States Code Section 3596(a).

4     When the sentence of death is to be implemented, the attorney

5     general shall release you to the custody of the United States

6     Marshal, who shall supervise the implementation of the

7     sentence, in a manner prescribed by the law of the State of

8     Indiana, where your execution shall take place.

9               Court is adjourned.

10              THE DEPUTY CLERK:  All rise.  This matter is

11    adjourned.

12              (Court in recess at 10:16 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4          I, Rachel M. Lopez, Certified Realtime Reporter, in

5    and for the United States District Court for the District of

6    Massachusetts, do hereby certify that pursuant to Section

7    753, Title 28, United States Code, the foregoing pages

8    are a true and correct transcript of the stenographically

9    reported proceedings held in the above-entitled matter and

10   that the transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

12

13                    Dated this 17th day of February, 2017.

14

15

16

17               /s/ RACHEL M. LOPEZ

18

19

20          _____
                 Rachel M. Lopez, CRR
21               Official Court Reporter

22

23

24

25